UNITED STATES DISTRICT COURT
for the District of Columbia

|  |  |  |
|---|---|---|
| ELIZABETH B. SCOTT, | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 1:06CV01661 (CKK) |
| v. | ) ) ) | |
| Office of Congressman RODNEY ALEXANDER, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS COUNT III OF PLAINTIFF'S SUPPLEMENTAL COMPLAINT**

On July 12, 2007, Defendant Office of Congressman Rodney Alexander (hereinafter "Defendant") filed a Motion to Dismiss Count III and for Summary Judgment as to Counts I and IV of Plaintiff's Supplemental Complaint. Defendant's motion to dismiss (as distinct from his motion for summary judgment) invokes the Speech or Debate Clause of the United States Constitution; Plaintiff's response to his arguments are set forth herein. Plaintiff's response to Defendant's motion for summary judgment is set forth in a separate opposition and motion under Fed. R. Civ. P. 56(f) and is being filed contemporaneously herewith.

**I.**

Defendant argues that Ms. Scott's retaliation claim should be dismissed because the Speech or Debate Clause of the United States Constitution prohibits inquiry into the acts of a Member of Congress. Defendant proposes as well that Ms. Scott will be unable to prove her case because she is prohibited from even inquiring (i.e., obtaining discovery) about some aspects of

her case and therefore will be unable to successfully prove her claim. Defendant reads too much into the clause and its motion should be denied.

## II.

**A.    The Text and Interpretation of the Speech or Debate Clause.**

In responding to Defendant's arguments, it is helpful to start with an overview of the Speech of Debate Clause, upon which Defendant relies, and caselaw reflecting its interpretation.

The Clause sets forth the following:

> The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

U.S. Const., art. I § 6. Supreme Court jurisprudence interpreting this clause has historically found that its application is extremely narrow.

It is important to note what the Clause, on its face, does not protect: not every activity that a Member of Congress may undertake is immunized from scrutiny. The issue in this case is whether the Clause should be construed to reach routine personnel decisions, such as the hiring and firing of staff. Notably, Congress itself – in passing the Congressional Accountability Act – determined that the Clause does not extend to such activities.[1]

---

[1]    The Supreme Court has noted a special deference to the legislative intent of Congress in passing legislation which impacts upon the Clause. For example, in United States v. Brewster, 408 U.S. 501, 515-16 (1972) (discussed in greater detail infra), the Court noted that the criminal statute under which Senator Brewster was prosecuted, 18 U.S.C. § 201(g), expressly applied to Members of Congress and that Congress had "deliberately allowed [it] to remain on the books for over a century." 408 U.S. at 524.

### 1. The Supreme Court's Treatment of the Speech or Debate Clause

The Supreme Court has held that, assuming that the Clause applies, it confers absolute immunity: "once it is determined that Members are acting within the 'legitimate legislative sphere,' the Speech or Debate Clause is an absolute bar to interference." Eastland v. United States Servicemen's Fund, 421 U.S. 491, 503 (1975). But "[i]n no case has this Court ever treated the Clause as protecting all conduct relating to the legislative process. In every case thus far before this Court, the Speech or Debate Clause has been limited to an act which was clearly a part of the legislative process – the due functioning of the process." United States v. Brewster, 408 U.S. 501, 515-16 (1972). Indeed,

> [t]he Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions. . . . The only reasonable reading of the Clause, consistent with its history and purpose, is that it does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself.

Id. at 528. Furthermore, the Court has emphasized that

> [l]egislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

Gravel v. United States, 408 U.S. 606, 625 (1972).

Notable within the Supreme Court jurisprudence are those acts which the Court has found to be without the scope of the Clause. The prosecution of a Senator for "accepting a bribe in exchange for a promise relating to an official act" did not offend the Clause, Brewster, 408 U.S.

at 502, because "no inquiry into legislative acts or motivation for legislative acts is necessary for the Government to make out a prima facie case," id. at 525.  However, the Court has been careful not "to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process."  Id. at 516.

In Gravel, Senator Gravel and an aide were indicted for several acts relating to the publication of the Pentagon Papers.  The Court was called upon to decide which acts could be prosecuted without offending the Speech or Debate Clause.  In analyzing the various acts underlying the prosecution, the Court noted that its recent cases "reflect a decidedly jaundiced view towards extending the Clause so as to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive control of legislative speech or debate and associated matters such as voting and committee reports and proceedings."  408 U.S. at 620.  The Court then held that the Senator's reading from the Pentagon Papers in a committee meeting (which was thereafter recorded in the Congressional Record) was protected by the Clause, but the Senator's arranging for the subsequent republication of the Papers by a private third party was not.

Doe v. McMillan, 412 U.S. 306 (1973), and Hutchinson v. Proxmire, 443 U.S. 111 (1979), both involved defamation suits against Members of Congress.  In McMillan, the Court distinguished between the official publication of allegedly defamatory congressional report – which was afforded Speech or Debate immunity – and distribution to the public.  In doing so, the Court rejected arguments that the public distribution should be privileged because it further legitimate congressional function of informing the public of its business.  The Court "[did] not doubt the importance of informing the public about the business of Congress," but held that such conduct "is not an essential part of the legislative process and is not part of that deliberative

process 'by which members participate in committee and House proceedings.'" 412 U.S. at 314-15 (citation omitted).

In <u>Proxmire</u>, the plaintiff sought defamation damages as the result of being singled out by a Senator for alleged abuse of public funds. In deciding whether the Senator's actions were constitutionally actionable, the Court proclaimed that "[c]laims under the Clause going beyond what is needed to protect legislative independence are to be closely scrutinized." 443 U.S. at 127. Applying this close scrutiny, the Court held that speeches that the Senator made from the floor of the Senate (and therefore republished in the Congressional Record) were entitled to protection, but the statements made by the Senator outside the congressional forum were not: "neither the newsletters nor the press release was 'essential to the deliberations of the Senate' and neither was part of the deliberative process." <u>Id.</u> at 130.

### 2.     The <u>Fields</u> Opinion.

The D.C. Circuit's opinion in <u>Fields v. Office of Eddie Bernice Johnson</u>, 459 F.3d 1 (D.C. Cir. 2006), discussed at length by Defendant in his brief at 10-15, provides an important framework for this Circuit's interpretation of the Supreme Court precedent described above. However, some slight tweaking of Defendant's presentation of the holding in <u>Fields</u> is necessary.

It is true that the <u>Fields</u> case expressly rejected the prior law of the circuit as had been expressed in <u>Browning v. Clerk, United States House of Representatives</u>, 789 F.2d 923 (D.C. Cir. 1986). The <u>Browning</u> case had held that an African-American woman's termination from the House of Representatives could not be scrutinized where "the [affected] employee's duties were directly related to the due functioning of the legislative process." 729 F.2d at 929. The D.C. Circuit abandoned that test in light of <u>Forrester v. White</u>, 484 U.S. 219 (1988), which held

that judicial immunity did not insulate a state-law judge from suit under 42 U.S.C. § 1981 for sexual harassment under the Equal Protection Clause, because the act complained of – termination of the plaintiff's employment – was an administrative, not a judicial act, and therefore simply did not enjoy immunity.  484 U.S. at 229-30 ("Such decisions, like personnel decisions made by judges, are often crucial to the efficient operation of public institutions. . ., yet no one suggests that they give rise to absolute immunity from damages. . . .").

The Court in Fields, acknowledging some tension between the Forrester case and the Browning test, went on to reject the Browning test for application of the Speech or Debate Clause.  Instead, it held, "[l]egislative immunity under the Speech or Debate Clause is limited to matters that are a part of, or integral to, the due functioning of the legislative process.  It is not enough that a Member's conduct is within the outer perimeter of the legislative process."  Fields, 459 F.3d at 12-13.

As such, the test, as apparently formulated in Fields, is whether the actions upon which the plaintiff seeks to base liability are "legislative acts."  Id. at 13, quoting McMillan, 412 U.S. at 318 (quoting in turn Gravel, 408 U.S. at 618).  Without spelling out a test, the Fields Court wrote that both of the underlying cases which were the subject of the appeal[2] could be adjudicated because it was not "necessary to inquire into how [the Member] spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation" of the Congressional Accountability Act.  459 F.3d at 13, citing Brewster, 408 U.S. at 526, and Bastien v. Office of Senator Ben Nighthorse Campbell, 390 F.3d 1301, 1315-16 (10th Cir. 2004).

---

[2]  Fields was a consolidated appeal of two cases alleging employment discrimination under the Congressional Accountability Act against two different members of Congress.

Instead, the <u>Fields</u> case sets forth a (non-exclusive) list of actions which would be deemed "legislative acts":

> delivering an opinion, uttering a speech, or haranguing in debate; proposing legislation; voting on legislation; making, publishing, presenting, and using legislative reports; authorizing investigations and issuing subpoenas; and holding hearings and introducing material at Committee hearings.

459 F.3d at 10-11 (footnotes and quotation marks omitted). Notably, "managing office personnel" did not make this list.[3]

### III.

Against this backdrop, Defendant's argument that Ms. Scott's retaliation claim must be dismissed (Def.'s Mtn. at 18-21) must fail. Although Defendant has provided an affidavit consistent with the <u>Fields</u> plurality purporting to set forth the legislative nature of Ms. Scott's demotion, his assertions do not survive scrutiny.

**A.    Ms. Scott's Allegations and Defendant's Response to Them**

Ms. Scott alleges that she was demoted from her position as Scheduler in retaliation for her complaints of sexual harassment in the office. Defendant, by way of response, submits that Ms. Scott's performance as Scheduler was so related to Defendant's legislative duties as to bring her demotion within the scope of legislative activity protected by the Clause. Defendant's argument must fail.

While Ms. Scott does not question that voting and attending committee meetings is an

---

[3] The <u>Fields</u> Court focused upon the actions that a legislator could take which would qualify as "legislative acts" immune from scrutiny. In contrast, Defendant's affidavit highlights the actions that Ms. Scott assisted Defendant in performing, which assistance she purportedly provided poorly.

important part of the legislative process, Defendant would expand the definition of "legislative act" beyond the narrow limitations defined by the Supreme Court, such that not only would Defendant's votes and deliberations be immune from scrutiny, but the very logistics of how he physically gets to those locations would likewise be inscrutable.  This is not what the Constitution protects.  Were Defendant's position accepted, it would vastly expand the scope of the term "legislative act" beyond recognition.  Any action undertaken by a Member of Congress to get to the chamber would be protected and immune from scrutiny; for example, driving under the influence or exceeding the speed limit en route to a vote would be deemed a "legislative act" under Defendant's formulation.

**B.      The <u>Forrester</u> Case and Its Application to The Facts of This Case**

The Supreme Court has taken care to draw a fine line between those acts which may be deemed "legislative" and those which are not.  Personnel decisions (such as the decision to demote Ms. Scott) are not legislative acts.

Indeed, this case closely parallels <u>Forrester v. White</u>, <u>supra</u>, in terms of the relevant analysis.  In <u>Forrester</u>, a female probation officer brought suit under 42 U.S.C. § 1983 against the judge who hired her, claiming sexual harassment in violation of the Equal Protection Clause of the Fourteenth Amendment.  In reversing the lower courts (which had dismissed the suit on grounds of judicial immunity), the Supreme Court emphasized:

> This Court has generally been quite sparing of its recognition of claims to absolute official immunity.  One species of such legal protection is beyond challenge: the legislative immunity crated by the Speech or Debate Clause. . . .  Even here, however, the Court has been careful not to extend the scope of the protection further

8

>than its purposes require.

484 U.S. at 224 (citing, among other cases, Gravel, Proxmire, McMillan, and Brewster).

On the merits, the Court observed that "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts" giving rise to immunity. Id. at 228. Accordingly, the Court held that

> Judge White was acting in an administrative capacity when he demoted and discharged Forrester. Those acts – like many others involved in supervising court employees and overseeing the efficient operation of a court – may have been quite important in providing the necessary conditions of a sound adjudicative system. The decisions at issue, however, were not themselves judicial or adjudicative.

Id. at 229. Moreover, the Court concluded, "[t]o conclude that, because a judge acts within the scope of his authority, such employment decisions are brought within the court's 'jurisdiction,' or converted into 'judicial acts,' would lift form above substance." Id. at 230.

The principles of law for which the Forrester case stands are ineluctably in line with those at issue in this case. Indeed, the simple substitution of "legislative" for "judicial" in the Forrester holdings demonstrates why Defendant's attempt to raise the Speech or Debate Clause as a per se bar to Ms. Scott's retaliation claim must fail.[4] Immunity does not apply to all official acts: for a Member of Congress, the protection extends only to "legislative acts"; for a judge, only "judicial acts" are protected. For a judge, personnel decisions are "administrative" -- not "judicial" -- so there is no immunity if, for example, a discharged employee challenges her termination.

---

[4] The analysis of Forrester is particularly applicable to this matter because the Supreme Court "ha[s] generally equated the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution." Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 733 (1980).

Defendant's position in this respect contravenes the logic expressed in Forrester. The Supreme Court specifically noted that even though the functions performed by the judge were "quite important in providing the necessary conditions of a sound adjudicative system," Forrester, 484 U.S. at 229, they nonetheless were still not entitled to the protection of judicial immunity. Here, while scheduling Defendant for meetings may be an "important" part of a "sound [legislative] system," this alone does not mean the act of demoting a scheduler is necessarily immune from scrutiny under the Speech or Debate Clause.

## C.    The Fields Case and Its Application to the Facts of This Case

In deciding whether the to dismiss the claims presented in the Fields case, the Court reviewing the pleadings in the appealed cases and responded in the negative:

> In these cases, it does not appear from Fields' or Hanson's complaints that either sought to predicate liability on protected conduct. Fields alleges that the Office of Representative Johnson discriminated against her because of her race and gender and retaliated against her when she objected to discriminatory treatment of her co-worker, Elizabeth Howie, and when she filed a complaint with the Office of Compliance. Hanson alleges that Senator Dayton himself discriminated against him because of his heart condition and that the Office denied him deserved overtime compensation. In neither case is it "necessary to inquire into how [the Member] spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation" of the Accountability Act. Brewster 408 U.S. at 526; compare Bastien, 390 F.3d at 1315-16.

459 F.3d at 13.

That analysis returns the same result in this case. Ms. Scott alleges that she was retaliated against for complaining about sexual harassment. No inquiry into how Defendant spoke, debated, or voted, or what he did in the chamber or in committee is implicated. Ms. Scott's

retaliation claim is not barred on its face.

To the extent that Defendant relies upon his affidavit in support of this argument in his brief, he is mistaken. Defendant improperly conflates two issues and attempts to use this amalgam to support his claim. The act in question here is Defendant's decision to demote Ms. Scott from Scheduler to Staff Assistant. It is this "act" which must be evaluated as either a "legislative act," or a non-"legislative act." The fact that Ms. Scott's duties were tangentially related to Defendant's attending committee meetings and voting does not render the act of demoting her a "legislative act." If Defendant's argument were accepted as true -- that acts even tangentially related to the logistics of a Member of Congress's legislative activities constitute "legislative acts" -- then, for example, a Member who exceeds the speed limit while en route to an emergency vote would be immune from prosecution, for the decision to speed en route to a vote would become a "legislative act" relating to the arrival of the Member in time for a floor vote. Indeed, under Defendant's formulation, if the Congressman were being driven to said vote by an aide, that aide would then be immune from prosecution as well.

## IV.

Consistent with Fields, Defendant next argues that Ms. Scott's lawsuit necessarily involves inquiry into his "legislative acts." Because such an inquiry is also barred by the evidentiary component of the Speech or Debate Clause, he argues, this case should be dismissed. Factually, this is incorrect; Defendant may be immune from inquiry into legislative acts, but the acts which are at issue in this case do not involve such inquiry. The inquiry of concern here goes toward Defendant's staffing priorities, and therefore are unrelated to core legislative acts which the Constitution shields.

A.      The Fields Framework

As discussed in Fields, absent direct evidence of discrimination, workplace discrimination cases follow the familiar burden-shifting scheme outlined in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that scheme, a plaintiff first presents her prima facie case of unlawful discrimination, after which the employer has an opportunity to articulate a legitimate, non-discriminatory reason for the challenged action; following that, the plaintiff has an opportunity to prove that the stated reason is pretextual. Id.; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-56 (1981). A plaintiff may show pretext in many ways; among them, she may demonstrate that the employer's proffered reasons for demoting her are "unworthy of credence," thereby giving rise to an inference of unlawful discrimination which will support a jury verdict in the plaintiff's favor. Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003); Reeves v. Sanderson Plumbing, 530 U.S. 133, 143 (2000); George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2005).

B.      **Whether Prosecution of Ms. Scott's Retaliation Claim Necessarily Requires Inquiry Into a "Legislative Act"**

Here, Defendant offers that inquiring into the alleged non-discriminatory reason would be unconstitutional.

But again, Defendant extends the reach of the Clause beyond the narrow contours in which it currently resides. According to Fields, an affected Member of Congress should submit an affidavit "recounting facts sufficient to show that the challenged personnel decision was taken because of the plaintiff's performance of conduct protected by the Speech or Debate Clause."

459 F.3d at 16 (plurality opinion of Randolph, J.).[5]  Although Defendant purports to have done just that, he has not.

Defendant's affidavit with respect to Ms. Scott basically complains that Ms. Scott failed to perform her job as a Scheduler adequately.[6]  Defendant faults Ms. Scott for several errors in scheduling, resulting in problems with Defendant's attendance at meetings and at votes.  See generally Def.'s Motion, at 18-21.

The problem with Defendant's analysis, however, is that, again, the Clause protects inquiry into "legislative" activities.  Demoting one's scheduler does not fall within that class of protected activities.  Although a properly-maintained schedule would certainly be "quite important in providing the necessary conditions of a sound adjudicative system," Forrester, 484 U.S. at 229, its importance does not mean every act necessary to maintain a well-oiled legislative chamber becomes a "legislative act."

Defendant's reliance upon Gravel v. United States, 408 U.S. 606 (1972),  for the proposition that aides are integral to the proper functioning of a legislative office, is inapposite.  As Defendant himself acknowledges, Def.'s Motion at 21 n.19, the discussion in that case arises out of a analysis of whether an aide is entitled to invoke Speech or Debate Clause immunity on

---

[5]  Judge Randolph's opinion was joined by three other judges.  Although Judge Rogers concurred in Judge Randolph's opinion (with two other judges joining her), she believed that "[a]ttempts to signal" how to approach the evidentiary issues presented by the Clause and the McDonnell-Douglas scheme were "fraught with problems," and therefore did not join that section of Judge Randolph's opinion.  Id. at 18 (opinion of Rogers, J.).  Judge Tatel (who joined in Judge Rogers's concurrence) also made clear that he preferred to express "no blanket rule" on how the cases should proceed without encroachment into protected activity.  Id. at 21 (opinion of Tatel, J.).

[6]  In addressing the substance of Defendant's affidavit, Ms. Scott does not by any means intend to acknowledge that the assertions contained therein are true.

behalf of his employing office in defense of his own actions.  The Court held that the Clause may extend to aides, because the duties performed by those aides may very well become legislative in character.  408 U.S. at 616-17.  This analysis, however, is a far cry from holding that personnel decisions affecting only the Member's office and having little impact upon the overall legislative process are immune from scrutiny under the Clause.

The fact remains that, in the process of proving that Defendant's stated criticisms of Ms. Scott's performance are pretextual (or "unworthy of credence"), it will not be "necessary to inquire into how [Defendant] spoke, how he debated, how he voted, or anything he did in the chamber or in committee. . . ."  Fields, 459 F.3d at 13.

## V.

Because The Clause does not operate to protect all activity related to a sound functioning of the legislative chamber, and because prosecuting Ms. Scott's case would not require impermissibly questioning anything that Defendant may have done during the course of an actual vote or hearing, Defendant's arguments are erroneous and his motion to dismiss this court should be denied.

WHEREFORE, because the Speech or Debate Clause's narrow confines do not mandate its application to this case, either as a facial challenge to the complaint or as a matter of evidentiary privilege, Defendant's motion to dismiss should be denied.

Respectfully Submitted,


By___/s/_____
Michael J. Hoare [D.C. Bar #206979]
Dennis Chong [D.C. Bar #471131]
MICHAEL J. HOARE, P.C.
1101 14th Street, N.W.
Suite 710
Washington, D.C. 20005
(202) 408-7901
(202) 408-7903 (fax)

Attorney for Plaintiff Elizabeth Scott


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 24th day of August, 2007, I caused to be served, by email a copy of the foregoing upon:

    Russell F. Gore
    Office of the House Employment Counsel
    1036 Longworth House Office Building
    Washington, DC 20515-5532
    Russell.gore@mail.house.gov


_____s/s_____
Michael J. Hoare

UNITED STATES DISTRICT COURT
for the District of Columbia

|  |  |
|---|---|
| ELIZABETH B. SCOTT, | ) |
| Plaintiff, | ) Civil Action No. 1:06CV01661 (CKK) |
| v. | ) |
| Office of Congressman RODNEY ALEXANDER, | ) |
| Defendant. | ) |

## **ORDER**

Upon consideration of Defendant's Motion to Dismiss (addressing Plaintiff's claim of retaliation, Count III of her Supplemental Complaint) based upon the Speech or Debate Clause of the United States Constitution, and Plaintiff's opposition thereto, it is this _____ day of _____, 2007

ORDERED that the motion is DENIED.

_____
Hon. Colleen Kollar-Kotelly