UNITED STATES DISTRICT COURT
for the District of Columbia

|  |  |
|---|---|
| ELIZABETH B. SCOTT, | ) |
|  | ) |
| Plaintiff, | ) Civil Action No. 1:06CV01661 |
|  | ) (CKK/AK) |
| v. | ) |
|  | ) |
| Office of Congressman RODNEY ALEXANDER, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

**PLAINTIFF SCOTT'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND
PLAINTIFF'S RULE 56(f) REQUEST FOR RELIEF**

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 56, 56(f) and LCvR 7(b) and 7(h), Plaintiff Scott, by her

undersigned counsel, submits this memorandum in opposition to Defendant's motion for

summary judgment.[1]

Defendant's motion for summary judgment should be denied for any of several reasons.

First, Defendant filed the pending motion in contravention of the Court's directive that the

parties not file motions for summary judgment until after the close of discovery in accordance

with a schedule that was to be set by the Court and not without first contacting the Court.

---

[1] Defendant's Motion, filed on July 12, 2007, requested summary judgment on two counts of Plaintiff's Supplemental Complaint and dismissal of a third count. Plaintiff's opposition with respect to the motion to dismiss the third count is filed separately and contemporaneously herewith.

Second, Defendant filed the pending motion after a stay of discovery was ordered and before

Plaintiff had the opportunity to conduct discovery. Finally, Defendant's motion should be denied

because Defendant relies on facts that are disputed and require resolution by a jury; "genuine

issue[s] for trial" exist within the meaning of Rule 56(e) with respect to Plaintiff's claims of

hostile environment and hostile environment constructive discharge.

## I.
### THE COURT'S DIRECTIVE REGARDING
### SUMMARY JUDGMENT MOTIONS

Defendant filed its motion for summary judgment in contravention of the Court's request

that dispositive motions not be filed except in accordance with the Court's directives.

The Court gave the parties specific directives regarding motions for summary judgment at

the March 16, 2007 Initial Scheduling Conference. Indeed, when Defendant inquired about the

Court's wishes with respect to the filing of any summary judgment motion, the Court was

explicit:

> THE COURT: I'm not going to [schedule the filing of motions for
> summary judgment] yet. I have learned that -- what I'm going to
> do is I'm going to set a status in September after the discovery
> presumably is closed. At that point I'll bring you back. We'll have
> a discussion of any motions that would be filed. You'll have a
> much better idea of the nature of them at that point. And then we
> can discuss what -- it's not a motions hearing, but what kinds of
> motions so I can set out a reasonable schedule for you and a
> timetable for it.
> **I would ask that you not just simply file motions
> beforehand. You need to contact the court.** Because what
> happens is, especially motions for summary judgment, is the other
> side usually claims 56(f), and they are very hard frankly to tell
> whether they are accurate or not, and our Court of Appeals has a
> very lenient view in terms of completing discovery. I don't mean
> this critically. **So I would ask that you not file something before
> discovery is done.**

2

On the speech and debate, if you will call -- once we get some
decision in there -- and have some discussion, if it looks like it is
going to impact the case, then I don't have a problem with it.
We'll discuss it at that point, either for depositions or otherwise.
**But otherwise, I'd wait until we finish the discovery, you come**
**back, and then I'll set a motions schedule.**

(Transcript, Initial Scheduling Conference before the Honorable Colleen Kollar Kotelly, United

States District Judge, March 16, 2007, 19-20, attached as Pltf's Ex.1) (emphasis added).

Plaintiff is unaware of any contact Defendant may have had with the Court in compliance

with the above directives.

Defendant's disregard of the Court's directive has caused Plaintiff and her counsel (and

now the Court) to expend additional scarce attorney time and incur unnecessary expenses.

Defendant's motion should be denied for its disregard of the Court's directive.

## II.
## FED. R. CIV. P. RULE 56(f)

Defendant filed its motion for summary judgment after the Court stayed discovery and

before Plaintiff could take any depositions or pursue the outstanding discovery issues raised by

Defendant's responses to Plaintiff's Rule 34 discovery.[2]  Additional time for Plaintiff to conduct

discovery is required. Fed. R. Civ. P. 56(f).  Plaintiff Scott's Declaration is filed herewith.

Defendant seeks summary judgment with respect to Plaintiff's claim of sex based hostile

work environment (Count I) and her claim of hostile environment constructive discharge (Count

---

[2]      This case was filed on September 27, 2006 (before the decision in Bell Atlantic
Corp. v. Twombly, 129 S.Ct. 1955 (May 21, 2007). The Initial Scheduling Conference was held
on March 16, 2007 at which time an appropriate discovery schedule was established. Defendant
deposed Plaintiff on May 21, 2007. Before any scheduled depositions by Plaintiff could be
taken, discovery was stayed by Order entered on June 29, 2007. The discovery stay was intended
to allow for the reasoned resolution of Defendant's interest in the Speech or Debate Clause issue.
Nothing was said about a motion for summary judgment or a motion regarding any other issue.

IV).  Defendant contends that Plaintiff's sex based claim of hostile work environment must be

dismissed now and before any discovery is taken by Plaintiff because on the evidence developed

at Plaintiff's seven-hour deposition, the conduct she testified about is neither severe nor

pervasive and Plaintiff will be unable to provide any supplemental information because her

memory is deficient.  (Def.'s Memorandum in Support of its Motion (hereinafter "Def.'s

Memo.") at 30-38).  Defendant argues that Plaintiff at her deposition was unable to remember

sufficient facts for a jury to conclude that the conduct she complains about constitutes unlawful

sexual harassment.  According to Defendant, "[f]urther discovery will do nothing to enhance

Plaintiff's memory of the conduct she . . . experienced" (Def.'s Memo., at 2).

      Defendant offers scant evidence to support its contention that further discovery will do

nothing to enhance Plaintiff's memory - only its counsel's unsupported speculation.  In fact, there

is nothing to preclude the enhancement of Plaintiff's memory.  Plaintiff's memory could be

refreshed, for example, via deposition testimony of other witnesses who are believed to have

knowledge about Royal Alexander's behavior or those to whom she complained regarding his

behavior (Pltf.'s Declaration, ¶¶ 5-6).  These individuals were scheduled for depositions at the

time the stay of discovery was entered.  They include Defendant's two female District

Representatives (Linda Blount and Tommie Seaton), Congressman Alexander's spouse (Nancy

Alexander), Plaintiff's coworker (Danielle Savoy), as well as Royal Alexander and Congressman

Rodney Alexander.  Plaintiff's memory of her experiences with Royal Alexander could be

enhanced with testimony from any of these witnesses.

      In addition, Plaintiff could likely benefit from reviewing of the Day Planner she used in

2006 (Pltf.'s Declaration, ¶¶ 3-4).  Defendant has steadfastly refused to return to Plaintiff her

2006 Day Planner, which she left at her workstation and has attempted to retrieve without success since even before this litigation commenced. Her Rule 34 request for its return has been similarly thwarted. The Day Planner could possibly refresh Plaintiff's memory regarding events relevant to this litigation.

Defendant is also withholding and refuses to produce its pre-litigation investigative response to Plaintiff's claims. Plaintiff should have access to Defendant's investigation of her claims conducted in connection with its affirmative defenses under Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). That investigation was conducted by attorneys from Mintz, Levin, Cohn, Ferris, Glovsky and Popeo. Their interviews conclusions, determinations, etc. could assist Plaintiff to develop in a more complete recall of relevant events. (Pltf.'s Declaration, ¶ 7). However, Defendant has refused to produce these documents asserting, instead, that Defendant is evaluating the situation and, upon completion of its assessment, "as appropriate, [will] produce responsive documents in advance of the first deposition Plaintiff counsel intends to take in this matter. (Def.'s Resp. to Pltf.'s Request to Produce, Request No. 21, attached as Pltf.'s Ex. 2).[3]

In addition to the foregoing, in order to make her case generally, Plaintiff should be allowed to pursue other discovery requests to which Defendant objected by way of motions to compel.

Recent decisions from courts in this jurisdiction are entirely consistent with this Court's

---

[3]     Plaintiff's Requests and Defendant's Responses are contained in Plaintiff's Ex. 2. Defendant's position means, of course, that if Defendant decides to withhold any documents pertaining to its internal investigation, it is unlikely the documents will be available for use at any deposition.

March 16 observations about the role Rule 56(f) plays in protecting the non-moving party from

an aggressive movant.  To "prevent railroading," when accompanied by an appropriate

declaration from a party or her counsel (Lowe v. Winter, 2007 U.S. Dist. LEXIS 49962, *2-3

(D.D.C. July 12, 2007)), a Rule 56(f) request for discovery is granted "almost as a matter of

course unless the nonmoving party has not diligently pursued discovery of the evidence." (Id. at

*4) (quoting Berkley v. Home Ins. Co, 68 F.3d 1409, 1414 (D.C. Cir.1995)).

Plaintiff Scott has been diligent but has not yet had an opportunity to take any

depositions.  Moreover, her timely requests for documents as referenced above (e.g., her Day

Planner and Defendant's investigation of her complaints) have been met with objections, but no

documents, and, with discovery stayed, Plaintiff presently has no means to compel production.

Under these circumstances, additional discovery should be allowed.  Richardson v.

Gutierrez, 477 F. Supp.2d 22, 29 (D.D.C. 2007); Hudert v. Alion Sci & Tech. Corp. 429 F.

Supp.2d 99, 109 (D.D.C. 2006).

### III.
### THE HOSTILE WORK ENVIRONMENT CLAIM

Defendant seeks summary judgment with respect to Plaintiff Scott's claim of sexual

harassment by Defendant's Chief of Staff, Royal Alexander.  Significantly, Defendant does not

offer any evidence to the effect that Royal Alexander denies sexually harassing Plaintiff Scott.

Nor does Defendant's motion challenge other important aspects of Plaintiff's sexual harassment

claim (e.g., her status as a member of a protected class, the unwelcomeness and sexual nature of

Royal Alexander's misconduct or Defendant's responsibility for that misconduct).

According to Defendant, Plaintiff's sex based hostile environment claim must be

dismissed because particular aspects of Royal Alexander's offensive sex-based behavior (i.e., groping Plaintiff while she was standing on a chair and trapping her at her work station with his arms) are not "severe" (Deft.'s Memo at 32-34) and his incessant comments about Plaintiff's sex appeal, his leering/staring, touching and hugging are not "pervasive" (id. at 34-38). Thus, after separating Royal Alexander's misconduct into two categories, Defendant argues that because one category of conduct is not severe and the other is not pervasive, Royal Alexander's conduct *vis a vis* Plaintiff Scott cannot be said to have created a hostile work environment.

Defendant's analysis is entirely arbitrary and unrealistic. Royal Alexander's misconduct is not so easily segregated into neat categories. For example, Mr. Alexander's motive in putting his hands on Plaintiff, over her objections, and groping her, can be more easily discerned for what it was when it is considered in the context of his repeated comments regarding his view of her sex appeal (Def.'s Statement of Material Facts ("SMF") No. 8, Pltf.'s Response, ¶¶ (a)-(f)). It is wrong to view Mr. Alexander's conduct as a series of individual incidents. The totality of the circumstances must be considered. Harris v. Forklift Systems, Inc. 510 U.S. 17, 23 (1993). The Supreme Court recently provided guidance on this very proposition:

> A hostile work environment . . . typically comprises a succession of harassing acts, each of which "may not be actionable on its own." In addition, a hostile work environment claim "cannot be said to occur on any particular day." . . . In other words, the actionable wrong is the environment, not the individual acts that taken together, create the environment.

Ledbetter v. Goodyear Tire and Rubber, Co. 127 S. Ct. 2162, 2175 (2007) (citations omitted).

To properly evaluate Plaintiff Scott's position -- to determine whether a reasonable juror could find she was subjected to sex based hostile work environment -- one cannot view events as

isolated phenomena but as threads in the same tapestry. Royal Alexander knew (or should have known) that his conduct was unwelcome and offensive to Plaintiff, but he persisted.

During the six month period from December 2005 through May 2006, while Royal Alexander was in the District of Columbia (and not in Louisiana), he engaged in a variety of offensive and unwelcome sex based conduct that rendered Plaintiff's work environment hostile. That misconduct included the following: Referring to Plaintiff using gender-based pet names and phrases (SMF No. 8, Pltf's Response, ¶¶ (a)-(b)); converting otherwise simple office functions into opportunities to demean Plaintiff with sex based comments (SMF No. 8, Pltf's Response, ¶¶ (c), (i)); distracting Plaintiff with his preoccupation with her (SMF No. 8, Pltf's Response, ¶¶ (a)-(i)); embracing her (SMF No. 8, Pltf's Response, ¶ (g)); groping her (SMF No. 8, Pltf's Response, ¶ (h)); and kissing her (SMF No. 8, Pltf's Response, ¶ (i)); all against her will and over her objection (SMF No. 8, Pltf's Response, ¶ (m)). Plaintiff was present too when Royal Alexander commented on her coworker's "sexy legs." (SMF No. 8, Pltf's Response, ¶ (c)). The same coworker confided in Plaintiff that she was being sexually harassed by Royal Alexander (Pltf's Depo. (attached as Pltf.'s Ex. 3) at 207/20-208/25; 294/7-17).[4] In sum, Royal Alexanders conduct generated in Plaintiff "a lot of emotional distress; she never knew what to expect from him" (SMF No. 8, Pltf's Response, ¶ (j)).

There are other aspects to the sex based hostile work environment in addition to Royal Alexander's behavior. Plaintiff was advised by Congressman Alexander's wife that Royal

---

[4]    It is entirely appropriate in evaluating Plaintiff's claim of sex based hostile work environment to consider the general work atmosphere and the experiences of other employees. Vinson v. Taylor 753 F.2d 141, 146 (D.C. Cir. 1985), aff'd in relevant part and rev'd in part, 477 U.S. 57 (1986); Broderick v. Rider, 685 F. Supp. 1269, 1277 (D.D.C. 1988).

Alexander had been removed from the office for a period of time to separate him from one of Plaintiff's female coworkers with whom it was believed he had a sexual relationship (id. at 207/11-18). Thus, Plaintiff understood that in all likelihood, Congressman Alexander knew of Royal Alexander's sex based behavior in his office (Pltf's Declaration, ¶ 8). Plaintiff had complained to Congressman Alexander's Press Secretary, Adam Terry, that one of Congressman Alexander's colleagues in the House of Representatives had asked her for a date, which Plaintiff considered inappropriate as he was married (SMF No. 8, Pltf's Response, ¶ (t)). She requested that Mr. Terry convey her concern to the Congressman. Mr. Terry returned to Plaintiff to advise that Congressman Alexander did not believe the situation needed addressing (id. at 247/11-13).

██████████████████████████████████████████████████████████████
████████████████████████████████████

When Plaintiff complained to Congressman Alexander's female District Representatives regarding Royal Alexander's behavior, the District Representatives agreed Mr. Alexander's conduct was inappropriate (SMF No. 8, Pltf's Response,¶ (o)), but one ultimately counseled against bringing the matter to Congressman Alexander's attention because he had a very busy schedule (id. at 256/14-257/9).

Defendant relies primarily upon Akonji v. Unity Healthcare, Inc. No. Civ. A. 05-2102, 2007 WL 1207194 (D.D.C. Apr. 24, 2007) and Carter v. Greenspan, 304 F. Supp. 2d 13, 25 (D.D.C. 2004) to illustrate what is not severe misconduct. In Akonji there were "five discreet acts over a two-year period as well as infrequent inappropriate comments and staring." In Carter, the female harasser was alleged to have subjected the male Plaintiff to three incidents; caressed his knee, placed her breast on his arm and her fingers on his buttocks. Plaintiff's experience are

9

far different.  Royal Alexander did far more in far less time.

Defendant contends that Plaintiff's claim must fail because she could not at deposition recite precisely when Royal Alexander's misconduct occurred.  This is not to say, of course, that Plaintiff would not testify with greater clarity were she allowed to conduct discovery.  See Section II, supra.

Plaintiff respectfully submits that a reasonable jury could render a verdict in Plaintiff's favor.  The question of whether Plaintiff's environment was severe or pervasive should be decided in a jury room.  Martin v. Howard Univ., 1999 U.S. Dist. LEXIS 19516, at *14 (D.D.C. Dec. 16, 1999).  Defendant's motion should be denied.

## IV
## HOSTILE ENVIRONMENT CONSTRUCTIVE DISCHARGE

Defendant seeks summary judgment with respect to Plaintiff Scott's claims of hostile environment constructive discharge.  According to Defendant, Plaintiff's constructive discharge claim must fail because her working conditions were not so intolerable that reasonable persons would have felt compelled to resign (Def.'s Memo., at 39).  Defendant contends that Plaintiff's constructive discharge claim is predicated on nothing more than Royal Alexander's sex-based misconduct used to support her claim of sexual harassment (Def's Memo at 39-40).

Defendant argues that Plaintiff's deposition testimony limits the evidence available to her to support her constructive discharge claim.  According to Defendant's memorandum at 40, when asked about "alleged intolerable conditions identified in paragraph 11 of the Complaint" (id. at 41), Plaintiff Scott "regurgitate[d] . . . [her] hostile work environment claim" and nothing more Id.  Defendant's argument is misleading.  Some explanation is required to understand the

misdirection of Defendant's argument.

Counsel for Defendant based his question to Plaintiff ("What working condition was made so intolerable after you complained?") on paragraph 11 of Plaintiff's Supplemental Complaint (see Pltf.'s Depo. (Pltf.'s Ex. 3 hereto) at 151/8-9), which pleading Plaintiff was unable to identify (id. at 147/15-148/19).  Knowing that she had complained to multiple persons regarding Royal Alexander's conduct (SMF No.8, Pltf's Response, ¶ (o)), however, Plaintiff asked Defendant's counsel a legitimate question that went unanswered and the following exchange ensued at 151/10-152/2:

> A: Can you please explain who you are referring to that I complained to?
> Q: It's your complaint and I'm asking you.  You say "Defendant made Plaintiff's working condition so intolerable after she complained of unlawful discrimination." It's your complaint, and I am asking you: What working conditions were made so intolerable after your complaint?
> A: I had been complaining for months.
> Q: What working conditions were made so intolerable?
> A: The unnecessary comments, the leering that went on day after day, coming behind my desk, trapping me at my desk, kissing my head, putting - - when I made these comments, its in reference to all from Royal touching me up to the point of putting his hands near my breasts and enjoying it, making reference to my being sexy.

Thus, from what is apparent in the transcript, Defendant's counsel abandoned his pursuit of the rationale for Plaintiff's constructive discharge claim, refocused the witness on Royal Alexander's sex based misconduct, and Plaintiff responded accordingly.  In context, it is no wonder that Plaintiff responded by repeating aspects of Mr. Alexander's sex based misconduct. She understood the "intolerable" working conditions as a reference to what she had experienced from Royal Alexander by way of sexual harassment. Defendant's counsel never asked her to

distinguish the sexual harassment from whatever reason she may have had for leaving
Defendant's workforce.

The fact of the matter is that Plaintiff had legitimate reasons -- in addition to Royal
Alexander's sexual harassment -- for not returning to the Defendant's employ, and Defendant has
been well aware of them because they were explained to Defendant's representatives in writing
on June 9, 2006 (Pltf.'s Declaration, ¶ 8; Ex. 4).  Defendant's counsel, at deposition, elected not
to inquire of Plaintiff regarding these reasons.  Plaintiff's stated reason for her departure from
Defendant's workforce were set out in her counsel's correspondence of June 9, 2006, attached as
Exhibit 4.  They were as follows:

1.    Plaintiff emailed Congressman Alexander on Sunday, May 14, regarding her
concern and distress with Royal Alexander's misconduct and thereafter, took sick
leave until she was placed on administrative leave and ultimately left Defendant's
workforce on June 9.  Congressman Alexander did not communicate any
expression of concern for Plaintiff's well being.

2.    Defendant's counsel communicated to Plaintiff's counsel (in writing) that the
Congressman reportedly learned that Plaintiff "made rather forward statements to
a married Member of Congress" and had Congressman Alexander been aware of
this at the time, Plaintiff "would have been fired."

3.    Defendant's counsel communicated to Plaintiff's counsel (in writing) that
Congressman Alexander reportedly learned that Plaintiff "pursued, propositioned
and groped a staffer at an office party" and, had Congressman Alexander been
aware of this at the time, Plaintiff "would have been fired."

4.    Congressman Alexander refused to identify for Plaintiff the referenced "married Member of Congress" to whom she allegedly made "rather forward statements."

5.    Defendant offered no information about Royal Alexander's conduct or whether he would be in the workplace when Plaintiff returned.

6.    Defendant unilaterally changed Plaintiff's return to work date without consultation with her and without explanation.

7.    Plaintiff determined that because of the above circumstances, she could not trust that if she were to return to work in the Defendant's employ, an environment totally controlled by Congressman Alexander and where he could do to her whatever he pleased, that he would not resort to even more mischief in an attempt to discredit her.

8.    Plaintiff was consulting a therapist regarding her situation, who affirmed that it was not in Plaintiff's interest that she return to Defendant's workplace.

Plaintiff considered that because of Congressman Alexander prejudged her contacts with the "married Congressman" and "the staffer at an office party," and had determined that she should be "fired," that he had already determined her fate and were she to return, he would "fire" her. (Pltf.'s Declaration,¶ 11). Plaintiff's decision to avoid Congressman Alexander's office and his workplace was made on/about June 8 and communicated by her counsel to Defendant on June 9, 2006 (Pltf.'s Declaration, ¶ 8).

For the reasons outlined above, this case does not fit Defendant's argument that Plaintiff Scott left an unpleasant but tolerable job because there was available a more attractive alternative job (Def.'s Memo. at 43-44). Whether she did so or not is a question of fact that cannot be

13

decided on a motion for summary judgment. Defendant's motion should be denied.

## V.
## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment in all respects and enter an order requiring the parties to submit a proposed discovery schedule for the Court's approval.

Respectfully Submitted,

Michael J. Hoare [D.C. Bar #206979]
MICHAEL J. HOARE, P.C.
1101 14th Street, N.W., Suite 710
Washington, D.C. 20005
mjh@michaeljhoare.com
(202) 408-7901
(202) 408-7903 (fax)
Attorney for Plaintiff Elizabeth Scott

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of August, 2007, I caused to be served, by email a copy of the foregoing upon:

Russell F. Gore
Office of the House Employment Counsel
1036 Longworth House Office Building
Washington, DC 20515-5532
Russell.gore@mail.house.gov

s/s
Michael J. Hoare

14

UNITED STATES DISTRICT COURT
for the District of Columbia

| | |
|---|---|
| ELIZABETH B. SCOTT, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 1:06CV01661 |
| | ) (CKK/AK) |
| v. | ) |
| | ) |
| Office of Congressman RODNEY ALEXANDER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF ELIZABETH B. SCOTT

1.      Elizabeth B. Scott submits this Declaration for use in the above-captioned case pending in the United States District Court for the District of Columbia against the Office of Congressman Rodney Alexander.

2.      Elizabeth B. Scott is an adult.  She is competent to testify of her own personal knowledge regarding the propositions continued in this Declaration.

3.      I tried earnestly to get the Day Planner that I used in 2006.  I left it in Congressman Alexander's office when I was last there in May 2006.  The Congressman's office has refused to return that Day Planner.  I bought the Day Planner with my own monies.  It is my personal private property.

4.      It is likely that a meaningful review of that Day Planner would refresh my memory regarding dates and/or events relevant to this lawsuit.

5.      I have discussed Royal Alexander's behavior with Nancy Alexander, Linda Blount,

1

Tommie Seaton and Danielle Savoy. I reasonably expect that were I to review what they have to say regarding Royal Alexander and matters relating to his behavior vis a vis me and other females in the office, that review would likely refresh my memory regarding Mr. Alexander's behavior.

6.      I believe it would likely refresh my memory regarding Mr. Royal Alexander's conduct were I to review what he and Congressman Alexander have to say regarding these matters.

7.      I understand that the Defendant retained the firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo to interview other persons in Congressman Alexander's office regarding my claims and Royal Alexander's behavior. I reasonably expect that were I to review the results of that investigation, including the particulars of witness interviews, that my memory would likely be refreshed about such matters.

8.      The reasons stated in my counsel's correspondence of June 9, 2006 to Congressman Alexander's attorneys accurately stated my feelings at that time and my concerns with returning to that office. I made the decision to avoid Congressman Alexander's office on or about June 8, 2006. At some point I recognized that Congressman Alexander likely had information and knowledge about Royal Alexander's sex based behavior in his office with my coworker, but failed to curtail Royal Alexander's behavior.

9.      In addition to the reasons stated in the correspondence of June 9, 2007, I understood that ████████████████████████████████████████████████████ That made a difference to me as I was complaining about inappropriate sex based behavior.

10.     I went through Adam Terry to communicate with Congressman Alexander about another member of the House of Representatives who was married, but asked me out on a date. I was led

2

to believe by Mr. Terry that Congressman Alexander did not think the matter was very important.

11.     When I found out about Congressman Alexander's belief that I had "pursued, propositioned and groped a staffer at an office party" and that he would have fired me for that behavior, it was my expectation that should I return to his employ, he would fire me. I considered also that the Defendant had already turned off my email Blackberry service which I considered an indication of their attitude toward my return.

12.     I have a similar view with respect to his determination that I had "made rather forward statements to a married Member of Congress" and that he would have fired me for such statements.

13.     I understood from the above circumstances that if I returned to Congressman Alexander's office, he would fire me.

14.     On/about May 11, 2006 I contacted the Employee Assistance Counselor's Program to obtain professional services to help me cope with the stress generated by Royal Alexander's sex-based behavior.

15.     After I complained about Royal Alexander's behavior, I was transferred by him from my position as Scheduler to that of a Staff Assistant which was a lesser position with different duties and responsibilities.

16.     The following exhibits are authentic, meaning they are what they purport to be:

        Exhibits 4, 5, 6 and 7.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 24, 2007.

Elizabeth Scott

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELIZABETH SCOTT, | : | CV No. 06-1661 |
| | : | March 16, 2007 |
| Plaintiff, | : | |
| | : | 9:02 a.m. |
| v. | : | |
| | : | Washington, DC |
| RODNEY ALEXANDER, | : | |
| | : | |
| Defendant. | : | |

.............................:

TRANSCRIPT OF INITIAL SCHEDULING CONFERENCE
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:        MICHAEL J. HOARE, ESQ.
                          MICHAEL J. HOARE, P.C.
                          1101 14th Street, NW
                          Suite 710
                          Washington, DC  20005
                          (202) 408-7901

For the Defendant:        RUSSELL H. GORE, ESQ.
                          GLORIA J. LETT, ESQ.
                          OFFICE OF HOUSE EMPLOYMENT COUNSEL
                          U.S. HOUSE OF REPRESENTATIVES
                          1036 Longworth Building
                          Washington, DC  20515
                          (20) 225-7075

Court Reporter:           EDWARD HAWKINS, RMR
                          Official Court Reporter
                          Room 6806, U.S. Courthouse
                          Washington, D.C. 20001
                          (202) 354-3245

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription


PLAINTIFF'S
EXHIBIT

18

1  to sit up there publicly and have questions asked of them from

2  both sides.  So, it's not any more difficult for the plaintiff

3  than the defendant or vice versa.  They are just difficult

4  cases.

00:25:59  5          MR. GORE:  No.  Your Honor, I think that probably

6  Mr. Hoare and I both agree, particularly given the nature of the

7  allegations.

8          There are a couple of issues that I'd like to, if I

9  could, just address.  You mentioned two defendants, and that was

00:26:11  10  a little --

11          THE COURT:  No.  If I did, I'm wrong.  It's one.

12          MR. GORE:  Right.

13          THE COURT:  I've had a couple of cases this morning.

14          MR. GORE:  I totally understand.  I just wanted to

00:26:24  15  confirm that.

16          Two other points, if I could, just raise.  One, I just

17  wanted to let the court know that I spoke with Mr. Hoare before

18  we began, and when it comes to filing of documents that aren't

19  actually filed with the court, like discovery responses, we have

00:26:38  20  agreed, and we just wanted to let you know, that we would serve

21  those either by hand, electronically or fax.  Because the mail,

22  because of the eradiation process at the House, it takes us

23  many, many days sometimes to get all documents through the mail.

24  And so we've agreed to do that if the court -- we wanted to

00:26:54  25  inform the court of that, and if you feel like it might be

19

1  appropriate to put that in your wrap-up order.

2       And then lastly, I guess we hadn't -- I did want to

3  discuss what the court would like to discuss in terms of this

4  briefing schedule for summary judgment.

00:27:10  5       THE COURT:  I'm not going to do that yet.  I have

6  learned that -- what I'm going to do is I'm going to set a

7  status in September after the discovery presumably is closed.

8  At that point I'll bring you back.  We'll have a discussion of

9  any motions that would be filed.  You'll have a much better idea

00:27:28  10  of the nature of them at that point.  And then we can discuss

11  what -- it's not a motions hearing, but what kinds of motions so

12  I can set out a reasonable schedule for you and a timetable for

13  it.

14       I would ask that you not just simply file motions

00:27:42  15  beforehand.  You need to contact the court.  Because what

16  happens is, especially motions for summary judgment, is the

17  other side usually claims 56(f), and they are very hard frankly

18  to tell whether they are accurate or not, and our Court of

19  Appeals has a very lenient view in terms of completing

00:28:02  20  discovery.  I don't mean this critically.  So I would ask that

21  you not file something before discovery is done.

22       On the speech and debate, if you will call -- once we

23  get some decision in there -- and have some discussion, if it

24  looks like it is going to impact the case, then I don't have a

00:28:19  25  problem with it.  We'll discuss it at that point, either for

20

1  depositions or otherwise.  But otherwise, I'd wait until we

2  finish the discovery, you come back, and then I'll set a motions

3  schedule.

4         Okay.  So, let me -- the week of the 17th of September

00:28:34  5  it seems to me, do you have a particular day that's better for

6  you, or day of the week?

7         MR. HOARE:  Friday.

8         THE COURT:  I can do it -- we don't have anything the

9  21st, do we?

00:28:48  10        THE DEPUTY CLERK:  No.

11        THE COURT:  How about the 21st at nine?

12        MR. GORE:  That works for us, Your Honor, as well.

13        THE COURT:  All right.  I will do Magistrate Judge Kay

14  until September 21st, so that you can talk to him at any time.

00:29:06  15  You obviously can settle it on your own.  But you can talk to

16  him as well and request that the parties get back into

17  mediation.

18         You cannot grant yourselves a stay while you're doing

19  that, so you need to come back to the court.  I'm assuming if

00:29:19  20  you go back to them, that you're still working on the case.

21         If you do resolve it, what I do have, have done in

22  other instances is that if you will let me know you've resolved

23  it in principle, then I will dismiss the case without prejudice

24  for whatever period of time you need to get it finalized; at the

00:29:41  25  end of which it gets dismissed with prejudice automatically.

**REQUEST NO. 20**: Please produce those documents in the Defendant's possession, custody or control concerning any complaint or reports concerning any alleged sex-based misconduct by Plaintiff.

**RESPONSE TO REQUEST NO. 20**:

Defendant incorporates its Explanation and General Objections. Defendant objects to this request to the extent it seeks documents protected by the attorney-client privilege, the work product doctrine, and any other applicable privilege and/or that are immune from discovery under the Speech or Debate Clause.

Subject to the foregoing, Defendant refers to documents produced in response to Request Nos. 1 and 9.

**REQUEST NO. 21**: Produce those documents concerning any inquiry and/or investigative effort concerning Plaintiff, including, without limitation, any such effort by Rodney Alexander and/or the law firm Mintz Levin Cohn Ferris Glovsky and Popeo, and/or its representatives and those documents reviewed in connection with any inquiry or investigation effort.

**RESPONSE TO REQUEST NO. 21**:

Defendant incorporates its Explanation and General Objections. Defendant objects to producing documents protected by the attorney-client privilege, work product doctrine, the Speech or Debate Clause or any other applicable privilege or doctrine, including any documents generated by undersigned counsel in anticipation of litigation. Defendant has tentatively identified DEF01481-DEF01665 relating to the investigation conducted by Mintz Levin as potentially responsive to this request. However, Defendant is currently assessing the application of the attorney client privilege, attorney work product doctrine, Speech or Debate privilege,



and/or other applicable privileges to these documents and, for the interim period, expressly asserts these privileges with respect to all documents that might otherwise be responsive to this request, including DEF01481-DEF01665. Accordingly, Defendant objects to producing these documents at this time. Defendant intends to complete its assessment of these privilege issues regarding the Mintz Levin documents within the next few weeks and, depending on its conclusion may modify its objections and produce responsive documents. Defendant will complete its assessment and, as appropriate, produce responsive documents in advance of the first deposition Plaintiff's counsel intends to take in this matter.

**REQUEST NO. 22:** Produce those documents in Defendant's custody or control (or that of the Office of House Employment Counsel or its representatives, agents or employees) concerning correspondence to or from Defendant (or Defendant's representatives) and/or Mintz Levin Cohn Ferris Glovsky and Popeo and/or its representatives, concerning Plaintiff and/or any investigation or injury concerning Plaintiff.

**RESPONSE TO REQUEST NO. 22:**

Defendant refers to and incorporates its objections and responses to Request No. 21.

# MICHAEL J. HOARE, P.C.

| Michael J. Hoare | Dennis Chong | Cynthia Duffe |
|---|---|---|
| Admitted in D.C. | Admitted in D.C. and MD | Admitted in D.C. and MO |
| mjh@michaeljhoare.com | chongd@michaeljhoare.com | cduffe@michaeljhoare.com |

June 9, 2006
Via email: gloria.lett@mail.house.gov
And First Class Mail

Gloria J. Lett
Office of House Employment Counsel
U.S. House of Representatives
1036 Longworth Building
Washington, DC 20515

   Re: **Elizabeth Scott**

Dear Ms. Lett:

  I am writing in reference to Ms. Scott's return to Congressman Alexander's office scheduled for June 8 and rescheduled for June 12.

  Ms. Scott has conferred with her Employee Assistance Counselor regarding her return to Congressman Alexander's office. The Counselor advised Ms. Scott against returning to that workplace. In addition to the advice of the Employee Assistance Counselor, Ms. Scott considered also that:

   • Congressman Alexander has not communicated any expression of concern for her well-being.

   • Congressman Alexander, without any discussion with Ms. Scott, determined as fact that Ms. Scott "pursued, propositioned, and groped a staffer at an office party . . . and . . . made rather forward statements to a married Member of Congress that made the Congressman uncomfortable." Congressman Alexander has determined also that Ms. Scott should be fired for either one or both of the foregoing incidents.

   • Congressman Alexander asserts the above propositions as undisputed facts when they are untrue. They are also irrelevant to Ms. Scott's concerns regarding Chief of Staff Royal Alexander's conduct.

PLAINTIFF'S
EXHIBIT
4

Letter to Gloria J. Lett
Page 2

June 9, 2006

    •      Nothing has been said about Royal Alexander's conduct or whether he will be in the workplace with Ms. Scott.

    •      Her return date was changed from June 8 to June 12, without explanation, contributing to Ms. Scott's concern.

Congressman Alexander's position is troubling. The Congressman makes assertions but refuses Ms. Scott's request for the other Member's identity or to tell her what she reportedly said to him. These circumstances suggest to Ms. Scott that if she were to return to his office, Congressman Alexander may be willing to resort to even more mischief in an attempt to discredit her.

Ms. Scott is very uncomfortable putting herself in an environment totally controlled by the Congressman where he could do with her or attribute to her whatever he pleases.

Ms. Scott has determined that it would not be prudent for her to return at this time to Congressman Alexander's office. She has committed instead to alternative employment, while proceeding with her complaint as outlined in my correspondence of May 30, 2006.

I regret we were unable to resolve the matter.

Sincerely,

Michael J. Hoare

cc:    Elizabeth Scott

**Gore, Russell**

**From:**      Scott, Elizabeth
**Sent:**      Monday, May 15, 2006 8:09 AM
**To:**      Alexander, Royal
**Subject:**      Hey

Good morning.  I will be out sick today. But will touch base with Danielle to let her know
where all scheduling info is so she can continue where I have left off.

Thanks.

Elizabeth
Elizabeth Scott
U.S. Congressman Rodney Alexander (LA-05)
316 Cannon HOB
Washington, D.C. 20515
(202) 225-8490  office
(202) 225-5639  fax
------------------------
Sent from my BlackBerry Wireless Handheld



PLAINTIFF'S
EXHIBIT
5(e)

DEF-01051

**Gore, Russell**

**From:** Alexander, Royal
**Sent:** Tuesday, May 16, 2006 8:14 AM
**To:** Scott, Elizabeth
**Subject:** Re: Hey


Allright. Hope you feel better.


Royal Alexander
Chief of Staff
U.S. Congressman Rodney Alexander (LA-05)
316 Cannon HOB
Washington, D.C. 20515
(o) (202) 225-8490
(f) (202) 225-5639


-----Original Message-----
From: Scott, Elizabeth <Elizabeth.Scott@mail.house.gov>
To: Alexander, Royal <Royal.Alexander@mail.house.gov>
CC: Savoy, Danielle <Danielle.Savoy@mail.house.gov>
Sent: Tue May 16 08:07:55 2006
Subject: Hey

Taking a sick day.  Thanks.
Elizabeth Scott
U.S. Congressman Rodney Alexander (LA-05)
316 Cannon HOB
Washington, D.C. 20515
(202) 225-8490  office
(202) 225-5639  fax
-----------------------
Sent from my BlackBerry Wireless Handheld



PLAINTIFF'S EXHIBIT
5(b)

1

**From:**    Alexander, Royal [Royal.Alexander@mail.house.gov]
**Sent:**    Thursday, May 18, 2006 9:16 AM
**To:**      'EBScott47@aol.com'; Alexander, Rodney
**Subject:** RE: hey

Allright. Hope you feel better.

Royal Alexander
Chief of Staff
U.S. Congressman Rodney Alexander
316 Cannon HOB
Washington, D.C. 20515
202-225-8490 (office)
202-225-5639 (fax)

---

**From:** EBScott47@aol.com [mailto:EBScott47@aol.com]
**Sent:** Thursday, May 18, 2006 9:12 AM
**To:** Alexander, Royal; Alexander, Rodney
**Subject:** hey

I will not be in today. I am seeing my counselor today to discuss my returning to work next week. I will follow up with you later today. Thank you.

Elizabeth

P. 0260



**From:** EBScott47@aol.com
**Sent:** Friday, May 19, 2006 5:12 PM
**To:** royal.alexander@mail.house.gov; Rodneyhr3164@mail.house.gov
**Subject:** hello

I made an attempt to email this to you from my Blackberry, but it appears it has been blocked, so you did not receive it.

The message below was sent this morning at 9:24am:

I am not yet feeling well enough to come to the office. I will contact you later today.

I appreciate your patience.

Thank you.

Elizabeth

P. 0261



**From:** Terry, Adam [Adam.Terry@mail.house.gov]
**Sent:** Wednesday, May 24, 2006 6:17 PM
**To:** 'EBScott47@aol.com'
**Subject:** Elizabeth

Elizabeth:
The Congressman told me to tell you that you will be on two week paid administrative leave. This is just to allow the attorneys to complete the investigation, interview Jonathan, and wrap up any other loose ends.

See you in two weeks.

AT

Adam Terry
Press Secretary/Legislative Assistant
Office of U.S. Rep. Rodney Alexander
202-225-8490

P. 0263



## Michael J Hoare

**From:** Lett, Gloria [Gloria.Lett@mail.house.gov]
**Sent:** Thursday, June 01, 2006 3:53 PM
**To:** 'Michael J Hoare'
**Subject:** RE: Elizabeth Scott

Michael,

    Elizabeth is expected to return to work on Thursday, June 8, 2006. I am sorry that I was unable to call you before 3:30 today. When I called a few minutes ago, I was told that you were on your way to a meeting but may be able to call me some time this afternoon.

    If you could call me before 5:15 today that would be great. Otherwise, I will be in the office tomorrow.

-Gloria

-----Original Message-----
From: Michael J Hoare [mailto:mjh@michaeljhoare.com]
Sent: Thursday, June 01, 2006 12:39 PM
To: Lett, Gloria
Subject: Elizabeth Scott

Dear Gloria:

    Congressman Alexander's Press Secretary, Adam Terry, emailed Ms. Scott on May 24, 2006 indicating that she will be on paid administrative leave for two weeks. We are uncertain as to when Ms. Scott's administrative leave expires and when she will be expected to return to work. I would appreciate that information at your soonest convenience.

    I have your letter of May 31, 2006 and am available between 1-3:30 PM to talk. If you are available, please give me a call.

Michael J. Hoare
Law Offices of Michael J. Hoare, P.C.
1101 14th Street, N.W. - Suite 710
Washington, DC 20005
Telephone: 202.408.7901
http://www.michaeljhoare.com

---
The information contained in this email is intended for the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately at 202.408.7901. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege.

P. 0290



1

## Michael J Hoare

**From:**        Lett, Gloria [Gloria.Lett@mail.house.gov]
**Sent:**        Thursday, June 08, 2006 5:33 PM
**To:**          'Michael J Hoare'
**Subject:**     · RE: Elizabeth Scott


The office is preparing for Elizabeth's return. As I indicated in my e-mail, she will be reporting to Adam and assuming new job responsibilities.

-Gloria

-----Original Message-----
From: Michael J Hoare [mailto:mjh@michaeljhoare.com]
Sent: Thursday, June 08, 2006 3:33 PM
To: Lett, Gloria
Subject: RE: Elizabeth Scott

Gloria,  Can you please explain to me (so I can explain it to my client) why Ms Scott's return date was switched from June 8th to June 12th. Thanks,
      Michael Hoare

-----Original Message-----
From: Lett, Gloria [mailto:Gloria.Lett@mail.house.gov]
Sent: Wednesday, June 07, 2006 10:45 AM
To: 'Michael J Hoare'
Subject: RE: Elizabeth Scott


Michael,

      Please advise Elizabeth that she will be expected back in the office on Monday, June 12th (and not this Thursday). Elizabeth will remain on administrative leave until that time. Upon her return to the office, Elizabeth will be assuming the position of Staff Assistant at her current rate of pay. She will be reporting to Adam Terry.

Thank you,
Gloria Lett

-----Original Message-----
From: Michael J Hoare [mailto:mjh@michaeljhoare.com]
Sent: Monday, June 05, 2006 4:26 PM
To: Lett, Gloria
Subject: Elizabeth Scott

Ms. Lett:

      Please see the enclosed letter, which was also mailed today.

      If you are having any problems opening, please call my assistant, Tracy Hollenback, to make arrangements to get a copy to you immediately.


Michael J. Hoare
Law Offices of Michael J. Hoare, P.C.
1101 14th Street, N.W. - Suite 710
Washington, DC  20005
Telephone:  202.408.7901
http://www.michaeljhoare.com

P. 0292



---
The information contained in this email is intended for the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination or copying of this communication is strictly prohibited.

1

UNITED STATES DISTRICT COURT
for the District of Columbia

| | |
|---|---|
| ──────────────────────────────── | ) |
| ELIZABETH B. SCOTT, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 1:06CV01661 |
| | ) (CKK/AK) |
| v. | ) |
| | ) |
| Office of Congressman RODNEY ALEXANDER, | ) |
| | ) |
| Defendant. | ) |
| ──────────────────────────────── | ) |

## PLAINTIFF'S RESPONSES TO DEFENDANT'S
## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiff Scott, pursuant to Rule L.Cv.R. 7(h) and 56.1 of the United States District Court

for the District of Columbia, submits the following responses to Defendant's Statement of

Material Facts which it contends are not in dispute. As indicated below, Defendant asserts as

undisputed, facts that are disputed. Moreover, Defendant has omitted crucial facts which render

summary judgment inappropriate. It should be noted here also that Plaintiff's opposition filed

this date includes a request under Rule 56(f) for the opportunity to conduct discovery which is

presently unavailable because of the Order entered on June 8, 2007 staying discovery.

1.     Elizabeth Scott began working for Defendant in the fall of 2005, initially as an

intern. Pltf's Dep. at 18:6-12. [Defendant's footnote omitted]

**Plaintiff's Response:**

Undisputed.

2.     Shortly after Plaintiff began working for the Office, Congressman Alexander

personally offered Plaintiff the job of Scheduler.  Pltf's Dep. at 240:15-21; 241:17-19

**Plaintiff's Response:**

Disputed.

Plaintiff testified that "[T]he Congressman offered me the job and said Royal [Alexander] would let me know how much the job would pay" (Plf.'s Dep. at 241/19-21).[1]

3.     Plaintiff began work as the Office's Scheduler in the Congressman's Washington, D.C. Capitol Hill Office in late 2005, making $30,000 per year.  Plf.'s Dep.  at 239:23-25; 240:1; 18-20.

**Plaintiff's Response:**

Undisputed.

4.     One of Plaintiff's primary responsibilities as Scheduler was "to ensure that the meetings for the Congressman in D.C. and in the district were on his calendar and that he was kept informed of where he needed to be in session and out of session."  Plf.'s Dep.  at 284:9-12.

**Plaintiff's Response:**

Plaintiff objects to this proposition as immaterial to Plaintiff's claim of sex-based hostile environment and her claim of hostile environment constructive discharge.

5.     Royal Alexander was the Chief of Staff during the time of Plaintiff's employment with the Office.  [Defendant's footnote omitted].  Compl.  at ¶ 7.

**Plaintiff's Response:**

Undisputed.

_____

[1]     Portions of Plaintiff's deposition designated herein and in Plaintiff's opposition memorandum are compiled in Plaintiff's Ex. 3

2

6.      Plaintiff contends that Royal Alexander sexually harassed her.  Compl.  at ¶ 7.

**Plaintiff's Response:**

Undisputed.

7.      Plaintiff testified that Royal Alexander was the only person in the Office who allegedly engaged in sexually harassing behavior.  Plf.'s Dep.  at 152:7-13; 285:19-23.

**Plaintiff's Response:**

Undisputed.

8.      The conduct Royal Alexander allegedly engaged in that Plaintiff contends was sexual harassment is:

(a)     On one occasion, when Plaintiff was standing on a chair to retrieve items from a shelf, Royal allegedly placed his hands around her middle and proceeded to move them up and down, touching the underwire of her bra in the vicinity of her breasts, while helping her step down off a chair.  Plf.'s Dep. at 196:11-25; 197:1-2; 171-173; 182, 184:16-19; 185-186, 189-190; 272-275.

(b)     On once occasion, Royal allegedly looked at the work schedule on Plaintiff's computer screen and, in so doing, leaned his arms on the desk and kissed the top of Plaintiff's head.  Plf.'s Dep.  at 269:11-16.

(c)     Royal would hug Plaintiff and call her "Sweet Elizabeth."  Plf.'s Dep.  at 154:11-17; 168:10-25.

(d)     Royal would leer/stare at Plaintiff and asked Plaintiff out to lunch.  Plf.'s Dep.  At 151:21; 153:2-7; 251:12.

(e)     Royal would comment on Plaintiff's clothing, tell her and a co-worker that they were sexy, and told her sisters that they were sexy.  Plf.'s Dep.  at 154:7; 154:23-24; 157:8-25; 158; 163-164.

**Plaintiff's Response:**

Disputed.

Defendant's recitation is incomplete and misleading.

3

During the six month period from December 2005 through May 2006, while Royal Alexander was in the District of Columbia (and not in Louisiana), he engaged in a variety of offensive and unwelcome sex based conduct that rendered Plaintiff's work environment hostile. That hostile environment was a product of the following:

(a)    Royal Alexander frequently called Plaintiff "Sweet Elizabeth" (Pltf.'s Depo. (Pltf.'s Exh. 3) at 154/13).

(b)    Royal Alexander would tell Plaintiff that the office was not the same when she was not present (id. at 154/11-12).

(c)    Royal Alexander "often" called out to Plaintiff from his office to request that she get him a cup of coffee or papers from the printer, and when she brought the coffee/paper to him he would "make a sexual comment about [her] legs or [her] being sexy" (id. at 154/19-25).

(d)    Royal Alexander's gratuitous comments about Plaintiff's "sexy" appearance were repeated on "numerous occasions" (id. at 165/11-14).

(e)    Royal Alexander told Plaintiff that she and her two sisters were the "sexiest sisters he had ever seen" (id. at 157/11-158/2).

(f)    Royal Alexander stared at Plaintiff to the point that she had to inquire whether he needed something (id. at 153/2). She considered his behavior "leering" (id. at 151/21-22).

(g)    Royal Alexander frequently wrapped his arms around Plaintiff's body, pulled her "very close to his body" and kissed her on the head or the forehead and gave her a "big squeeze" (id. at 168/13-16) while "moving his hands around [her] . . ." (id. at 170/13). Plaintiff was concerned that these embraces went "well beyond" the hug of a friend (id. at 168/8-11); he "enjoyed" the contact (id. at 168/10).

(h)    Royal Alexander, notwithstanding the absence of any requests for assistance and when assistance was both unnecessary and unwanted (id. at 186/23-24; 195/13-14; 196/2-3), gratuitously and over Plaintiff's objection (id. at 173/5-13), approached Plaintiff while she was standing on a chair to retrieve something from an upper shelf, put his two hands on her body as though to assist her to get off the chair. However, he kept his hands on Plaintiff's body and "caressed" it, long enough "to move his hands all down [Plaintiff's] midriff and feel the area around [her] bra where [her] breasts are" (id. at 186/5-7).

4

(i)    Royal Alexander had a practice of approaching Plaintiff's work station from behind, placing his arms on either side of Plaintiff trapping her at her computer; at times he kissed her head (Id. at 151/19-24; 269/11-16). (Defendant's submission suggests Royal Alexander did this on only one occasion but the deposition testimony is to the contrary.  Plaintiff testified that once when this happened, she called Congressman Alexander's District Director to report it.  (Id. at 269/11-19)).

(j)    Royal Alexander's conduct caused Plaintiff to experience "a lot of emotional distress and a very hostile work ". . . [because she] never knew what to expect from [him]" (Id. at 317/11-18).  Working in the environment made her "emotional distraught and physically ill" (Id. at 40/2-7).

(k)    Plaintiff consulted an Employee Assistance Counselor Program and was assigned a therapist for assistance regarding Royal Alexander's behavior while she was yet employed by Defendant (Pltf.'s Declaration, ¶ 14).

(l)    Plaintiff considered Royal Alexander's "sexual behavior . . . non-consensual and so frequent that it made working very intolerable" (Pltf.'s Depo. (Pltf.'s Exh. 3) at 265/15-16.  When pressed as to the frequency, Plaintiff responded to the effect that it was "very, very frequent" but otherwise was unable to recall the frequency with the requested specificity because she "didn't count" (id. at 265/15-266/3).

(m)    Plaintiff at all times resisted Royal Alexander's advances telling him that his comments and "touching me" were inappropriate. (id. at 153/2-8).

(n)    Plaintiff discussed Royal Alexander with Congressman Alexander's wife, who expressed to Plaintiff her concern that Royal Alexander "quite possibly [had] a relationship" with one of Plaintiff's female co-workers. (Id. at 280/9-10).  Mrs. Alexander referred Plaintiff to one of Defendant's two District Director to discuss what Plaintiff "didn't feel comfortable coming to [Mrs. Alexander] with." (Id. at 280/5-6).

(o)    Plaintiff complained to each of Defendant's two female District Representatives regarding aspects of Rodney Alexander's misconduct (Id. at188/3-15 and 269/5-271/13).  The women agreed that Royal Alexander's conduct was inappropriate (Id. at 192/12-194/10 and 269/25-270/15).

(p)    After Plaintiff expressed her interest in talking directly with Congressman Alexander about Royal Alexander's conduct, one of the District Representatives emailed Plaintiff requesting that she "hold off talking to [Rodney] Alexander this week.  His schedule looks pretty loaded." (Id. at 257/3-8).

(q)    After Plaintiff complained regarding Royal Alexander's behavior to Defendant's

two District Representatives, she was subjected to a tangible employment act by Royal Alexander who removed Plaintiff from her position as Scheduler and transferred her to the lesser position of staff assistant with lesser duties and responsibilities (Pltf.'s Declaration, ¶ 15).

(r)    Royal Alexander reportedly pursued one of Plaintiff's female coworkers for dates and told her that there were "too many women in the office." (Pltf's Depo. (Pltf.'s Exh. 3) at 207/23-24).

(s)    Plaintiff was present with the female coworker when Royal Alexander said that she too had "very sexy legs." (Id. at 285/5-7).

(t)    Plaintiff was uncomfortable also with the environment because when she reported to Congressman Alexander's Press Secretary, Adam Terry, that one of Defendant's married colleagues, a Member of the House of Representatives, had approached her for a date (id. at 204/21-206/12), Mr. Terry, after conferring with Congressman Rodney Alexander (id. at 205/6-10), conveyed to Plaintiff the Congressman's uncertainty about what could be done (id. at 205/13-18) and conveyed Congressman Alexander's belief that it was not "anything that needed addressing" (id. at 247/11-13).

(u)    Plaintiff was uncomfortable too with information she had been told by one of the District Representatives (among others) about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9.    Plaintiff testified that the alleged conduct identified at paragraph 8(a)-8(e) of this Statement of Material Facts Not in Dispute is the full extend of the alleged conduct Plaintiff claims constituted sexual harassment.  Pltf.'s Dep.  At 158/25; 159:1-9; see also Pltf.'s Dep at 153-159; 285-288.

**Plaintiff's Response:**

Disputed.

Plaintiff incorporates herein by reference as though fully set out her response to the Defendant's Statement of Material Facts No. 8.

10.    On Friday, May 12, 2006, Royal Alexander informed Plaintiff that she was being

removed from the position as Scheduler.  <u>Plaintiff's May 14, 2006 email to Congressman</u>

<u>Alexander, page 1, third paragraph (attached hereto as Attachment 2 (also identified as an exhibit</u>

<u>to Plaintiff's deposition)); Plaintiff's Responses to Defendant's Requests for Admissions Nos. 2,</u>

<u>3, 4 (attached hereto as Attachment 3 (also identified as an exhibit to Plaintiff's deposition)).</u>

**Plaintiff's Response:**

>  Undisputed.

11.    Two days after being informed of her removal as Scheduler--on Sunday, May 14,

2006-- Plaintiff advised Congressman Alexander by email that she believed Royal Alexander had

sexually harassed her, discriminated against her based on sex, and retaliated against her.  <u>Id.;</u>

<u>Plf.'s Dep.  at 20-21</u>.

**Plaintiff's Response:**

>  Undisputed.

12.    The May 14, 2006 email referred to in paragraph 11 was the first time Plaintiff

advised Congressman Alexander personally that Royal Alexander had acted in a manner she

believed was sexually-harassing, discriminatory or retaliatory.  <u>Plaintiff's Responses to</u>

<u>Defendant's Requests for Admissions Nos. 2, 3, 4 (attached hereto as Attachment 3 (also</u>

<u>identified as an exhibit to Plaintiff's deposition)); Pltf's Dep.  at 21:16-23</u>.

**Plaintiff's Response:**

>  Undisputed.

13.    After sending the May 14, 2006 email to Congressman Alexander, Plaintiff called

in sick the following week.  <u>Pltf's Dep.  at 32:22-25; 33:7-19; 38:20-25; 39:1-16</u>.

**Plaintiff's Response:**

Disputed. Plaintiff emailed Defendant on Monday, May 15, and Tuesday, May 16, and

Wednesday, May 17, to the effect that she would be out sick. (Email compilation (attached as

Pltf.'s Ex. 5)).

On Thursday, May 18, 2006, Plaintiff emailed Defendant stating:

> I will not be in today. I am seeing my counselor today to discuss
> my returning to work next week. I will follow up with you later
> today. Thank you.

(Id.).

On Friday, May 19, 2006, Plaintiff emailed Defendant stating

> I made an attempt to email this to you from my Blackberry, but it
> appears it has been blocked, so you did not receive it. The message
> below was sent this morning at 9:24 a.m.: I am not yet feeling well
> enough to come to the office. I will contact you later today. I
> appreciate your patience. Thank you.

(Id.).

14.     On Monday, May 15, 2006, Plaintiff sent an email to the Office's information

technology assistant inquiring about the ability to restore files she had recently deleted. Pltf's

Dep. at 223; May 15, 2006 Email from Plaintiff (attached hereto as Attachment 4) (also

identified as an exhibit to Plaintiff's deposition).

**Plaintiff's Response:**

Plaintiff objects to this proposition as immaterial to Plaintiff's claims.

15.     Plaintiff testified that, at the time she sent the May 15 email referred to in

paragraph 14, she "most definitely" intended to return to work in the Office. Pltf's Dep. at

233:21.

**Plaintiff's Response:**

8

Undisputed.

16.     On Wednesday, May 24, 2006, Plaintiff contacted the Office by an email to Royal

Alexander containing the subject line "hey," and asked "Please call me so we can arrange for my

return to the office tomorrow." Pltf's Dep. at 40-42; Plaintiff's May 24, 2006 Email (attached

hereto as Attachment 5) (also identified as an exhibit to Plaintiff's deposition). Plaintiff testified

that the purpose of her May 24 email was "to arrange for my return to work." Pltf's Dep. At

41:16-17; see also Pltf's Dep. at 42:12-17.

**Plaintiff's Response:**

Undisputed.

17.     In response, the Office communicated to Plaintiff that she should not return on

Thursday, May 25 but, instead, she would be placed on paid administrative leave for two weeks

while the investigation of her allegations could be completed. Pltf's Dep. at 42:18-25; 431-16.

**Plaintiff's Response:**

Disputed.

Plaintiff had been on paid administrative leave since at least May 19, 2006 as

Defendant's Press Secretary, Adam Terry, emailed Plaintiff on Wednesday, May 24, 2006 at 6:17

p.m. and reported that "you will be on two week paid administrative leave" (Email from A. Terry

to E. Scott (attached as Pltf.'s Ex. 6)). There is no evidence, however, that this continuation of

Plaintiff's administrative leave was in response to Plaintiff's communication of May 24, 2006.

18.     On June 1, 2006, the Office advised Plaintiff that it expected her to return to work

on June 8, 2006. Plaintiff's Responses to Defendant's Requests for Admissions No. 10

(Attachment 3).

9

**Plaintiff's Response:**

Disputed as incomplete.

Defendant's counsel advised Plaintiff's counsel on June 1, 2006 that Plaintiff was expected to return to work on Thursday, June 8, 2006 (Pltf.'s Ex. 7(a)). Later, on June 7, 2006, Defendant's counsel advised Plaintiff's counsel that the return to work date had been changed to June 12, 2006. (Pltf.'s Ex. 7(b)) (the relevant portions of the referenced exhibits are highlighted).

19.    On or before June 5, 2006, Plaintiff signed a letter stating that she "accept[s] this offer of employment" as Administrative Assistant at JBG Companies at a salary of $42,000 (plus a $5,000 signing bonus), with a start date of June 12, 2006. Pltf's Dep. at 100-101; Copy of offer letter signed by Plaintiff (attached hereto as Attachment 6) (also identified as an exhibit to Plaintiff's deposition).

**Plaintiff's Response:**

Undisputed.

20.    On June 6 and 7, 2006, the Office advised Plaintiff that her exact return to work date with Defendant was being extended to June 12, 2006. Plaintiff's Responses to Defendant's Requests for Admissions No. 10 (Attachment 3).

**Plaintiff's Response:**

Undisputed.

21.    It was not until at least June 6 or June 7 that Plaintiff decided not to return to work at Defendant. Pltf's Dep. at 238; 239:5-16.

**Plaintiff's Response:**

Disputed.

10

Plaintiff's decision to avoid Congressman Alexander's office and his workplace was made on/about June 8 and communicated by her counsel to Defendant's counsel in writing on June 9, 2006 (Pltf.'s Declaration, ¶ 8; Pltf.'s Ex. 4). Plaintiff had legitimate reasons -- in addition to Royal Alexander's sexual harassment -- for not returning to the Defendant's employ. Plaintiff's stated reasons for her departure from Defendant's workforce were set out in her counsel's letter of June 9, 2006 to Defendant's counsel (Pltf.'s Ex. 4), as follows:

(a)     Plaintiff emailed Congressman Alexander on Sunday, May 14, regarding her concern with Royal Alexander's misconduct and thereafter, took sick leave until she was placed on administrative leave and ultimately left Defendant's workforce on June 9. Congressman Alexander did not communicate any expression of concern for Plaintiff's well being.

(b)     Defendant's counsel communicated to Plaintiff's counsel (in writing) that the Congressman reportedly learned that Plaintiff "made rather forward statements to a married Member of Congress" and had Congressman Alexander been aware of this at the time, Plaintiff "would have been fired."

(c)     Defendant's counsel communicated to Plaintiff's counsel (in writing) that Congressman Alexander reportedly learned that Plaintiff "pursued, propositioned and groped a staffer at an office party" and, had Congressman Alexander been aware of this at the time, Plaintiff "would have been fired."

(d)     Congressman Alexander refused to identify for Plaintiff the referenced "married Member of Congress" to whom she allegedly made "rather forward statements."

(e)     Defendant offered no information about Royal Alexander's conduct or whether he would be in the workplace when Plaintiff returned.

(f)     Defendant unilaterally changed Plaintiff's return to work date without consultation with her and without explanation.

(g)     Plaintiff determined that because of the above circumstances, she could not trust that if she were to return to work in the Defendant's employ, an environment totally controlled by Congressman Alexander and where he could do to her whatever he pleased, that he would not resort to even more mischief in an attempt to discredit her.

11

    (h)     Plaintiff was consulting a therapist regarding her situation, who agreed that it was not in Plaintiff's interest that she return to Defendant's workplace.

    22.    When asked at her deposition how it was possible for her to have committed to a new job at a new employer on Monday, June 5, 2006, but to have waited until at least June 6 or June 7 to decide not to return to work with Defendant, Plaintiff testified: "Because I could always not show up for the job offer I'd taken and returned to the Congressman's office." Pltf's Dep. at 239:14-16.

**Plaintiff's Response:**

Plaintiff objects to this proposition as immaterial to Plaintiff's claims.

    23.    Plaintiff did not return to work after she sent the May 14, 2006 email to Congressman Alexander. Plaintiff's Responses to Defendant's Requests for Admissions No. 11 (Attachment 3).

**Plaintiff's Response:**

Disputed.

See Plaintiff's responses to paragraphs 13 and 17.

Respectfully Submitted,

Michael J. Hoare [D.C. Bar #206979]
MICHAEL J. HOARE, P.C.
1101 14th Street, N.W.
Washington, D.C. 20005
mjh@michaeljhoare.com
(202) 408-7901
(202) 408-7903 (fax)
Attorney for Plaintiff Elizabeth Scott

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of August, 2007, I caused to be served, by email, a copy of the foregoing upon:

Russell F. Gore
Office of the House Employment Counsel
1036 Longworth House Office Building
Washington, DC 20515-5532
Russell.gore@mail.house.gov

_____
Michael J.  Hoare