IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELIZABETH SCOTT<br><br>          Plaintiff,<br><br>v.<br><br>OFFICE OF RODNEY ALEXANDER,<br>Member, U.S. House of Representatives<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:06CV01661<br>)  (CKK) (AK)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S SUPPLEMENTAL COMPLAINT**

Defendant Office of Congressman Rodney Alexander, Member, United States House of Representatives ("the Office" or "Defendant"), through undersigned counsel, hereby files its Reply Brief in support of its Motion to Dismiss.[1]

**I.  Because Courts Should Eschew Constitutional Adjudication Whenever Possible, This Court Should Consider Whether To Grant Summary Judgment On Counts I and IV Before Considering The Impact Of The Speech Or Debate Clause on These Claims**

Defendant's initial motion noted that, by considering and granting summary judgment as to Counts I and IV in the first instance, the Court could avoid adjudicating whether and to what extent Counts I and IV could proceed under the Speech or Debate

---

[1] On July 12, 2007, Defendant filed a single motion which sought dismissal of Count III, and summary judgment as to Counts I and IV of Plaintiff's Supplemental Complaint. Despite the interrelated nature of these arguments, Plaintiff chose to file two separate opposition briefs. Accordingly, to respond appropriately to Plaintiff's opposition arguments, Defendant has responded to each of her briefs separately and is filing a separate reply in support of its summary judgment request contemporaneously with this reply brief.

1

Clause. *See* Deft's Initial Memo. at p. 2-3, n.1; p. 15, n. 16; and p. 41, n. 31. Rather than substantively addressing this point, Plaintiff simply asserted that Defendant's request for summary judgment was improper at this time.

The Supreme Court has made clear that if a federal court can resolve a claim on non-Constitutional grounds -- and thereby *avoid* the need to address whether and how the claim may be barred under the Speech or Debate Clause -- the court *should* resolve the claim on the non-Constitutional ground. *See Hutchinson v. Proxmire*, 443 U.S. 111, 122-123 (1979) (Speech or Debate case where Court reiterates rule that if adjudication of Constitutional questions can be eschewed by resolving a claim on summary judgment, courts should generally proceed to do so and avoid addressing Constitutional questions).[2] This Court should thus consider Defendant's request for summary judgment as to Counts I and IV before assessing whether and how the Speech or Debate Clause impacts those counts. This is particularly appropriate where, as here, denials of Speech or Debate Clause immunity are immediately appealable. *See Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 4, n. 1.

## II.  The Speech or Debate Clause Bars Plaintiff's Retaliation Claim (Count III)

In its moving papers, Defendant explained that the Clause bars Plaintiff's retaliation claim for two independent (although related) reasons. First, the decision to

---

[2]  "Our practice is to avoid reaching constitutional questions if a dispositive non constitutional ground is available." *Hutchinson*, 443 U.S. 111 at 122. "A federal court is directed to avoid deciding matters on constitutional grounds when the matter may be resolved on another basis. 'If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.'" *U.S. House of Representatives v. U.S. Dep't of Commerce*, 11 F. Supp. 2d 76, 104 (D.D.C. 1998) (citations omitted).

remove Plaintiff from the position of Scheduler was itself a legislative act immune from challenge under the Clause's immunity prong. Therefore, the retaliation claim is barred on jurisdictional grounds. *See* Deft's Initial Memo at 15-21. Second, and alternatively, Defendant explained that the retaliation claim is barred under the Clause's evidentiary prong as articulated by the *Fields* plurality: under the *McDonnell-Douglas* burden shifting framework, Plaintiff cannot challenge Congressman Alexander's articulated legitimate reason for her removal "without 'drawing into question' the legislative activities and motivations for those activities asserted by the affiant [Congressman Alexander] – matters into which the Speech or Debate Clause prohibits judicial inquiry." *Fields*, 459 F.3d at 15-16; Deft's Initial Memo at 22-27. Plaintiff's Reply focuses almost exclusively on the first rationale and misstates the *Fields* holding. *See* Pltf's Opp. Ct. III at 2-11[3]. Her discussion of the second rationale is limited and, while mentioning the evidentiary framework articulated in *Fields*, does not apply it, nor does she substantively respond to Defendant's arguments. *See* Pltf's Opp. Ct. III at 11-14.

> A. Responding To Defendant's Argument That The Immunity Prong Of The Clause Bars Her Retaliation Claim, Plaintiff's Argument That Personnel Decisions Can Never Be Legislative Acts Immune From Challenge Under The Speech or Debate Clause Represents An Unwarranted and Unconstitutional Extension Of Fields

After devoting much of the first half of her brief to a discussion of the backdrop of Supreme Court cases interpreting the Speech or Debate Clause and the D.C. Circuit's decision in *Fields*, Pltf's Opp. Ct. III at 3-7, Plaintiff makes her first substantive argument – *i.e.*, that personnel decisions can never be legislative acts immune under the Clause.

---

[3] Plaintiff's Opposition brief addressing Speech or Debate dismissal is referred to herein as "Pltf's Opp. Ct. III." Plaintiff's separate Opposition to Defendant's request for summary judgment is referred to herein as "Pltf's Opp."

*See also* Pltf's Opp. Ct. III at 7, 8 ("'managing office personnel' did not make the list" of the types of actions that are legislative acts; "[p]ersonnel decisions (such as the decision to demote Ms. Scott) are not legislative acts"). In this Circuit at least, Plaintiff's argument is much too broad.

In *Fields,* the D.C. Circuit explained that it had been explicitly asked to decide this very question and seven of the eight judges declined to provide an answer. *See* Deft's Initial Memo at 14 (second bullet) and also 11-13. Furthermore, the necessary implication of the *Fields* plurality's discussion of this very issue strongly indicates that it believed that *some* personnel decisions will qualify as legislative acts immune from challenge under the Clause.[4] *See* Deft's Initial Memo. at 11, 12; *Fields*, 459 F.3d at 9-10.[5] Accordingly, on what Plaintiff defines as "[t]he issue in this case . . . whether the Clause should be construed to reach routine personnel decisions," Pltf's Opp. Ct. III at 2, the D.C. Circuit in *Fields* has essentially said that the answer depends on the specific circumstances.[6]

---

[4]  Plaintiff does not address Defendant's explanation of this "some personnel decisions" language in the *Fields* decision.

[5]  The Supreme Court has yet to rule upon the extent to which personnel decisions may be legislative acts. *See* Deft's Initial Memo at 12, n 14.

[6]  Plaintiff's assertion that "Congress itself – in passing the Congressional Accountability Act – determined that the Clause does not extend to such activities [hiring and firing of staff]," Pltf's Opp. Ct. III at 2, is perplexing at best (emphasis in original). Indeed, the CAA explicitly provides that it does not waive privileges or immunities under the Speech or Debate Clause. *See* 2 U.S.C. § 1413 (the "authorization to bring judicial proceedings . . . shall not constitute a waiver . . . of the privileges of any Senator or Member of the House of Representatives under article I, section 6, clause 1, of the Constitution") (emphasis added). While Plaintiff's misunderstanding might simply be due to a misreading of the statutory text, it becomes even more perplexing in light of the D.C. Circuit's statement in *Fields* that the "Accountability Act therefore does nothing to a Member's Speech or Debate Clause immunity, and we must determine how that

Plaintiff asserts that Congressman Alexander's affidavit fails to establish that his decision to remove Plaintiff as Scheduler was a legislative act. She claims that the affidavit purportedly "highlights the actions that Ms. Scott assisted Defendant in performing" Pltf's Opp. Ct. III at 7, n.3. And, simply because "Ms. Scott's duties were tangentially related to" legislative acts, Plaintiff asserts, "does not render the act of demoting her a 'legislative act.'" Pltf's Opp. Ct. III at 11. This is an incorrect reading of *Fields*' holding and Congressman Alexander's affidavit.

To be sure, *Fields* rejected the absolute presumption in *Browning v. Clerk, United States House of Representatives*, 789 F.2d 923 (D.C. Cir. 1986), that a personnel decision affecting an employee who performed legislative duties was *always* a legislative act. Specifically, *Fields* found *Browning* overinclusive, noting that because "a legislative aide may be discharged because of budgetary cutbacks" does not mean the personnel decision was a legislative act simply because the aide performed legislative duties. *Fields*, 459 F.3d at 11. Plaintiff would expand this analysis, however, and wrongly asserts that *Fields* established a rule that an employee's duties are thus henceforth completely irrelevant to the analysis of whether a personnel decision affecting her is a legislative act. Far from it, *Fields* indicates that there are situations where a Member's reasons for a personnel decision are inextricably intertwined with his legislative motivations and legislative acts. *See* Initial Memo at 21; *Fields*, 459 F.3d at 14 ("interactions with legislative staff . . . may form part of the basis for personnel actions . . . . [and] are often part of the due functioning of the legislative process").

---

immunity operates in suits under the Act." *Fields*, 459 F.3d at 8. Similarly, Plaintiff's assertion that "Defendant argues that . . . the Speech or Debate Clause of the United States Constitution prohibits inquiry into the acts of a Member of Congress," Pltf's Opp. Ct. III at 1, is, at best, a disingenuously overbroad mischaracterization.

Congressman Alexander's *Fields* affidavit demonstrates the integral legislative nexus. He expected Plaintiff to

> ". . . speak with other offices in coordinating my schedule, exercise independent judgment regarding my attendance at often-conflicting meetings and events, and to notify me in a timely manner of any changes or updates to the time, date or venue of Committee meetings, legislative meetings, and other meetings and events. I expect the Scheduler to perform these functions with due regard to ensuring that I am present and on time for Committee meetings and votes. In addition, I expect the Scheduler to be integral to the functioning of the daily activities of my office, as other employees rely on the schedule to fulfill their roles in supporting me in my legislative and other activities . . ."

Affidavit of Congressman Alexander at ¶ 4 (attached as Exhibit A to Defendant's July 12, 2007 memorandum).

However, despite Congressman Alexander's expectations, Plaintiff "scheduled [him] to attend Committee meetings at the wrong starting times and/or with the wrong location identified . . . [scheduled him] to leave a Committee meeting that was underway to attend another meeting, only to arrive at the location to find no one present, and [scheduled him] at multiple locations at the same time." *Id.* at ¶ 9.[7] These actions interfered with his ability to perform his legislative activities and Congressman Alexander testified that he "perceived these and other similar errors were the result of Elizabeth's lack of attention to detail and a lack of appropriate concern for the importance of my timely attendance at Committee meetings and other events." *Id.*

Congressman Alexander "was worried that if Elizabeth remained my Scheduler, she would make similar errors going forward and that I might miss important votes and

---

[7] While not necessary for resolution of this motion, one cannot help but sympathize with Congressman Alexander's assessment of Plaintiff's performance and her inattention and lack of care after reading Plaintiff's 503 instances of inability-to-recall at her deposition. *See* Deft's contemporaneously-filed Reply in support of its request for summary judgment.

6

fail to ensure that key provisions of the appropriations legislation, such as earmarks, were maintained." *Id.* at ¶ 10. Congressman Alexander's "concerns about Elizabeth's performance were inextricably intertwined with [his] concerns about their effect on [his] ability to perform [his] legislative duties." *Id.* Therefore, Congressman Alexander "decided to remove Elizabeth Scott as Scheduler because, among other things, I believed she was interfering with my ability to attend Committee and subcommittee meetings in a timely manner and I could not afford to risk missing such meetings or votes during the busy mark-up period." *Id.* at ¶12. Congressman Alexander "instructed my then-chief of staff, Royal Alexander, to remove Elizabeth Scott as Scheduler." *Id.*

Despite the clear language in this affidavit, Plaintiff asserts that any decision involving her status was "tangential" to legislative acts. She furthers this assertion by suggesting that Defendant's argument would immunize a Member from liability for speeding or driving under the influence if he was driving to get to a vote. Obviously, driving or otherwise arriving at the Capitol is a precondition for a Member to be able to vote (similar to the fact that eating in order to sustain oneself so he or she has the physical energy to be able to vote is also a precondition to vote). The analogy fails for the simple reason that just because something bears some existential nexus to voting, does not necessarily mean that that something is "part of, or integral to, the due functioning of the legislative process." *Fields*, 459 F.3d at 12.[8]

---

[8] However, even physical actions necessary to vote might be protected by the Clause in some cases. *See Fields*, 459 F.3d at 11, n.16 (citing *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880) (protecting the "act of voting, whether it is done vocally or by *passing between the tellers*") (emphasis added). Similarly, it is conceivable that traveling could be a legislative act (*e.g.*, traveling on a Congressional delegation to Iraq; traveling to an alternate location to vote in the event of an emergency). Just as the *Fields* Court declined to delineate the outer scope of what acts may be legislative under the Clause and

As reflected by his *Fields* affidavit, Congressman Alexander's reliance on Plaintiff in order to perform his legislative functions was more than a precondition to his ability to perform a legislative act. Congressman Alexander perceived her as integral to his ability to vote or attend Committee meetings. He relied on her to use discretion and judgment to coordinate, arrange and manage his and his office's entire schedule. In other words, Plaintiff's "day-to-day work . . . [was] critical to the Member's performance," *Gravel v. United States*, 408 U.S. 606, 616-617 (1972), and he perceived her performance as such. Thus, when Plaintiff would schedule the Congressman to attend Committee meetings, and then direct him in error to leave such a meeting (and potentially miss votes), her actions were far more integral to the due functioning of the legislative process than the mechanical operation of a car. Indeed, Plaintiff would ask the Court to equate a Member's deciding to sell his old car and buy a new, more reliable automobile in the hopes that the new car would facilitate his arriving at the Capitol on time, with Congressman Alexander's decision to remove her as Scheduler.[9] In most conceivable cases, the decision to replace a car will not have a close and integral nexus to the legislative process. On the other hand, removing an employee because that employee's

---

limited itself to the facts before it, so too should this Court decline Plaintiff's invitations to determine whether the Clause applies to these inapposite hypotheticals. Such a determination has little, if any bearing, on whether litigation of Plaintiff's removal as Scheduler is barred by the Clause.

[9]    The analogy fails for another reason. The decision to drive to get to the Capitol to vote is different than the decision to drive drunk or to drive in excess of the speed limit. Even if driving to get to the Capitol to vote could, in some cases, conceivably have a legislative nexus, *see* n. 8, *supra*, it is hard to imagine how the very different decision to drive drunk could have any legislative nexus.

actions directly impact the Member's ability to perform his legislative duties *does* have that integral nexus.[10]

Finally, Plaintiff argues that the Supreme Court's decision in *Forrester v. White*, 484 U.S. 219 (1988) is directly controlling on the issue of whether a personnel decision is a legislative act. Plaintiff asserts that the "simple substitution of 'legislative' for 'judicial' in the *Forrester* holding" demonstrates the point. *See* Pltf's Opp. Ct. III at 9. This "simple substitution" argument demonstrates its fatal flaw. In *Forrester,* the Supreme Court determined that personnel decisions made by a state judge were administrative, not judicial, and therefore declined to apply common law judicial immunity to a judge's personnel decisions. The Court stated that "[r]unning through our cases . . . is a 'functional' approach to immunity questions *other than those that have been decided by express constitutional . . . enactment.*" 484 U.S. at 224 (emphasis added). The Court thus noted a distinction between common law immunity -- for which it had used a "functional approach" -- and constitutionally-mandated Speech or Debate Clause immunity, which it described as a "species of such legal protection [which] is beyond challenge." 484 U.S. at 224.

*Fields* explicitly mentioned *Forrester* and recognized the tension its analysis had created. *Fields*, 459 F.3d at 7-8. However, had *Forrester's* holding been capable of "simple substitution," as Plaintiff asserts, then the D.C. Circuit would have been able to resolve *Fields* rather easily by simply incorporating *Forrester* and applying its holding to

---

[10] Defendant submits that the history and text of the Clause, and due regard for the principle of separation of powers, require that this Court give substantial deference to Congressman Alexander's testimony regarding his perceptions of how Plaintiff's actions and his decision to remove her were integral to his ability to perform his legislative duties.

legislative employees under the CAA. That the D.C. Circuit instead marched in a completely different, and much more complex direction, shows that it understood that *Forrester's* relevance was limited in the Speech or Debate Clause context.

*Forrester's* functional approach is inapplicable for one simple, but very important reason. Judicial immunity is judge-made; the Speech or Debate Clause is an express Constitutional provision. *Forrester* dealt with common law immunity applicable to state judges and non-federal legislators which is, inherently, judicially-developed and malleable. Speech or Debate Clause immunity, to the contrary, is explicit in the text of the Constitution and not subject to judicial revision.[11] Plaintiff's effort to effect a "simple substitution" between "legislative" and "judicial" would eviscerate the fact that the Speech or Debate Clause is an "express constitutional . . . enactment." *Forrester,* 484 U.S. at 224.[12]

For the reasons stated in Defendant's moving papers, and herein, the decision to remove Plaintiff from the Scheduler position was a legislative act and Count III should be dismissed for lack of jurisdiction under the immunity prong of the Speech or Debate Clause.

---

[11] While the Supreme Court has clearly looked to its Speech or Debate Clause analysis in assessing common law legislative and judicial immunity, the reverse analogy is inappropriate. That A may be relevant to defining B does not mean that B necessarily establishes the contours of A.

[12] Defendant notes that the Tenth Circuit in *Bastien v. Office of Senator Ben Nighthorse Campbell*, 390 F.3d 1301 (10th Cir. 2004) appears to have decided that Congressional personnel decisions are rarely, if ever, legislative acts. However, the Tenth Circuit's *Bastien* decision eviscerates the immunity component of the Clause and *Fields* rightly did not completely embrace it in all respects. Additionally, the Third Circuit purported to interpret *Fields* in *Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328 (3rd Cir. 2006) asserting that *Fields* had adopted *Forrester's* functional approach. As explained above, the Third Circuit's interpretation overstates and misunderstands the extent to which *Fields* was controlled by *Forrester*.

> B. *Alternatively, Plaintiff's Retaliation Claim Should Be Dismissed Under The Evidentiary Framework Established In Fields And Discussed By Defendant In Its Moving Papers; Plaintiff's Two-And-A-Half Page Argument To The Contrary Ignores The Fields Framework And Should Be Rejected*

At pages 22-27 of its Initial Memo, Defendant explained that, if the Court does not agree that Plaintiff's removal from the position of Scheduler was a legislative act, her retaliation claim should nonetheless be dismissed pursuant to the Clause's evidentiary prong and the framework articulated by the plurality in *Fields*.

In her discussion of this alternative argument, at Pltf's Opp. Ct. III at 11-14, Plaintiff does not substantively address the basic evidentiary framework established by the plurality in *Fields*. Rather, after identifying the generic *McDonnell-Douglas* standards, Plaintiff's argument devolves into a somewhat difficult to follow rehashing of the first section of the brief – *i.e.,* that, she claims, personnel decisions are not legislative acts. *See* Pltf's Opp. Ct. III at 13 (lines 10-12), 14 (lines 3-5). Plaintiff concludes by asserting summarily: "[t]he fact remains that, in the process of proving that Defendant's stated criticisms of Ms. Scott's performance are pretextual (or 'unworthy of credence'), it will not be 'necessary to inquire into how [Defendant] spoke, how he debated, how he voted, or anything he did in the chamber or in committee." Pltf's Opp. Ct. III at 14. Plaintiff offers *no* analysis or argument for this conclusion and fails to address Defendant's detailed explanation at pages 24-26 of its initial Memorandum that anticipated and refuted this conclusion.

Plaintiff's only concession is in the conclusion section of her brief where she asserts that she will not question Defendant regarding anything "done during the course of an actual vote or hearing." Pltf's Opp. Ct. III at 14. This cramped and narrow reading of the Clause's limitation on Plaintiff's ability to inquire is inconsistent with *Fields* and

the D.C. Circuit's recent decision in *United States v. Rayburn House Office Building,* No. 06-3105, 2007 WL 2275237 (D.C. Cir. Aug. 3, 2007).[13] Specifically, to attempt to show that her removal as Scheduler was retaliatory (or, as discussed in Section III below, that it was a tangible action representing the culmination of her harassment claim), Plaintiff will necessarily have to attempt to rebut and call into question Congressman Alexander's assertions for the legitimate reasons for her removal. *Fields,* 459 F.3d at 15-16. That is, for a jury to believe that the decision to remove her was retaliatory (or was an act of sexual harassment), the jury will have to disbelieve the legitimate reasons Congressman Alexander has articulated for his removal decision. In her efforts to attempt to challenge as pretextual Congressman Alexander's conclusion that she needed to be removed as Scheduler, Plaintiff would need to argue that the legislative concerns Congressman Alexander identified in his affidavit were not the real reasons for his decision. Thus, Congressman Alexander might be required to identify Committee meetings he attended (or did not attend), legislation he voted on (or missed a vote on), the relative importance of a particular vote or Committee meeting versus another meeting, and the like, and to justify the significance of Plaintiff's errors to his ability to perform his legislative functions. Such factors obviously require reference to legislative acts.[14]

---

[13] Not surprisingly, Plaintiff does not mention this decision in her August 24, 2007 brief.

[14] Congressman Alexander might not only be questioned directly regarding these matters in discovery, but Defendant might be required to affirmatively introduce evidence of such matters in order to further substantiate its legitimate reason for Plaintiff's removal. Indeed, employer-defendants typically seek to provide evidentiary support, beyond an affidavit, to buttress the reason(s) articulated for a challenged personnel decision. Such evidentiary support often enhances the likelihood that the articulated reason(s) will survive the plaintiff's challenge. A Member of Congress cannot be required to choose between preserving the Speech or Debate Clause by foregoing the

In *Rayburn House Office Building*, a case involving the search by the Executive Branch of a Member's office, the D.C. Circuit elucidates the broad scope of the Clause's "non-disclosure privilege:"

> Documentary evidence can certainly be as revealing as oral communications-even if only indirectly when, as here, the documents in question . . . do not detail specific congressional actions. But indications as to what Congress is looking at provide clues as to what Congress is doing, or might be about to do-and this is true whether or not the documents are sought for the purpose of inquiring into (or frustrating) legislative conduct or to advance some other goals. [T]he legislative process is disrupted by the disclosure of legislative material, regardless of the use to which the disclosed materials are put. The bar on compelled disclosure is absolute . . . and there is no reason to believe that the bar does not apply in the criminal as well as the civil context . . . exchanges between a Member of Congress and the Member's staff or among Members of Congress on legislative matters may legitimately involve frank or embarrassing statements; the possibility of compelled disclosure may therefore chill the exchange of views with respect to legislative activity. This chill runs counter to the Clause's purpose of protecting against disruption of the legislative process.

*Rayburn,* 2007 WL 2275237 at *6 (internal quotations and citations omitted).

The non-disclosure privilege under the Clause thus extends to evidence which, while not expressly referring to congressional actions, could nonetheless give "clues" into what Congress (or Congressman Alexander) was looking at, or planning to do, or considering. *Rayburn* thus emphasizes that the material protected from disclosure or inquiry by the Clause is not narrowly limited only to what Congressman Alexander "may have done during the course of an actual vote or hearing" as Plaintiff asserts. It is much broader – protecting from disclosure the reference to legislative acts or motivations for such acts – and even exchanges with staff on legislative matters. *Id.* Plaintiff has not

---

ability to introduce such evidence affirmatively, or waiving his Speech or Debate Clause protections by offering such evidence. *See Fields*, 459 F.3d at 16 ("In such a case, if the evidence ultimately bore out the affiant's account of the plaintiff's discharge, then the very inquiry leading to that conclusion would be unconstitutional.")

offered any substantive response to Defendant's explanation that she must refer or question Congressman Alexander regarding such acts and motivations in order to attempt to establish pretext. Her complete failure to do so should be viewed as a concession of Defendant's argument on this point (Deft's Initial Memo. at 22-26) and Count III should be dismissed.

### III.  Counts I and IV Must Be Dismissed Under The Speech Or Debate Clause

In her sworn August 24, 2007 Rule 56(f) declaration and her Response to Defendant's Statement of Material Facts Not in Dispute (hereinafter Plaintiff's "SMF Response"), Plaintiff asserts that the circumstances of her removal as Scheduler are relevant not only to Count III (the retaliation claim), but are relevant to her ability to establish Counts I and IV. Specifically, Plaintiff asserts in her declaration: "[a]fter I complained about Royal Alexander's behavior, I was transferred by him from my position as Scheduler to that of a Staff Assistant which was a lesser position with different duties and responsibilities." *See* Plaintiff's August 24, 2007 Declaration at ¶ 15. Then, in Plaintiff's separate SMF Response, Plaintiff identifies facts that she asserts are "*crucial*" to her ability to oppose summary judgment as to Counts I and IV. *See* Pltf's SMF Response at p. 1, line 4. Among these facts, Plaintiff asserts, is that the alleged hostile environment included "a tangible employment act by Royal Alexander who removed Plaintiff from her position as Scheduler and transferred her to the lesser position of staff assistant with lesser duties and responsibilities." Pltf's SMF Response at p. 4, 6 and ¶ 8(q). Plaintiff has thus now affirmatively represented that her removal as

Scheduler is an *essential* component – the "tangible" result – of the conduct that underpins her hostile environment and constructive discharge claims.[15]

With her removal as Scheduler now clearly front and center to Counts I and IV, these claims now stand in the same posture for purposes of the Speech or Debate Clause analysis as does Count III. For the same reasons discussed in Section II(A) above - because the decision to remove Plaintiff as Scheduler was a legislative act - any claim for which reference to this legislative act is required is barred under the immunity prong of the Clause. Alternatively, as explained in Section II(B), any effort to challenge or call into question the reasons Congressman Alexander articulated for the decision to remove her as Scheduler (*e.g.*, to show pretext or to show that the real reason for the decision was a tangible act of harassment or a deliberate effort to make Plaintiff's working conditions intolerable) are barred under the Clause's evidentiary prong. Therefore, Counts I and IV cannot be adjudicated without violating the Speech or Debate Clause and they should be dismissed.[16]

---

[15] As explained in Defendant's Reply brief in Support of its Request for Summary Judgment, Plaintiff's deposition testimony confirms that her constructive discharge claim is simply a regurgitation of her hostile environment claim.

[16] Additionally, Plaintiff's Rule 56(f) declaration filed in support of her opposition to Defendant's summary judgment request asserts that a 2006 Day Planner and documents received or generated as part of the Office's investigation of her harassment allegations might assist her in recalling facts she could not recall at her deposition. *See* Pltf's (summary judgment) Opp. at 3-5; Plaintiff's August 24, 2007 Declaration at ¶¶ 4, 7. She contends that she requires this evidence in order to establish facts relevant to Counts I and IV. The 2006 Day Planner, however, contains information regarding the Congressman's schedule – including explicit references to legislative acts (*e.g.*, Appropriations committee meetings). Similarly, some documents that were generated and received as part of the investigation of Plaintiff's allegations reflect the Congressman's schedule and errors that Plaintiff made in that regard. Because these documents contain references to legislative acts, they are immune from discovery under the Speech or Debate Clause. *Rayburn House Office Building*, 2007 WL 2275237, at *6. The fact that

## IV. Conclusion

For the foregoing reasons and as set forth in Defendant's moving papers, Defendant respectfully requests that the Court dismiss Counts I, III and IV and issue an order precluding Plaintiff from inquiring about her removal as Scheduler, legislative acts, or any other matters relevant to Counts I, III and IV in the future discovery and litigation of this case.

Respectfully Submitted,

By /s/ Russell H. Gore
Russell H. Gore, D.C. Bar # 449231
Gloria J. Lett, D.C. Bar # 293365
Kimberly Carey Williams, VSB # 41325[17]
U.S. House of Representatives
Office of House Employment Counsel
1036 Longworth House Office Building
Washington, D.C. 20515
(202) 225-7075
Attorneys for Defendant
Office of Rep. Rodney Alexander

DATED: September 18, 2007

---

Plaintiff has now testified by Rule 56(f) declaration that these documents are essential to her ability to establish Counts I and IV is an additional factor indicating that the prosecution of these claims is inextricably intertwined with evidence protected by the Clause.

[17] Appearing by LCvR 83.2(e) and 2 U.S.C. § 1408(d).

## TABLE OF CONTENTS

I. Because Courts Should Eschew Constitutional Adjudication Whenever Possible, This Court Should Consider Whether To Grant Summary Judgment on Counts I And IV Before Considering The Impact of the Speech Or Debate Clause On These Claims ...................................................................................................1

II. The Speech Or Debate Clause Bars Plaintiff's Retaliation Claim (Count III) ...................................................................................................2

    A. *Responding To Defendant's Argument That The Immunity Prong Of The Clause Bars Her Retaliation Claim, Plaintiff's Argument That Personnel Decisions Can Never Be Legislative Acts Immune From Challenge Under the Speech or Debate Clause Represents An Unwarranted and Unconstitutional Extension of Fields* ...................................................................................3

    B. *Alternatively, Plaintiff's Retaliation Claim Should Be Dismissed Under the Evidentiary Framework Established In Fields And Discussed By Defendant In Its Moving Papers; Plaintiff's Two-And-A-Half Page Argument To The Contrary Ignores The Fields Framework And Should Be Rejected* ......................11

III. Counts I and IV Must Be Dismissed Under The Speech Or Debate Clause ...............................................................................14

IV. Conclusion ...........................................................................................................16

## TABLE OF AUTHORITIES

*Cases*

*Bastien v. Office of Senator Ben Nighthorse Campbell*,
  390 F.3d 1301 (10th Cir. 2004) ..................................................................................10

*Browning v. Clerk, United States House of Representatives*, 789 F.2d 923
  (D.C. Cir. 1986) ..........................................................................................................5

*Fields v. Office of Eddie Bernice Johnson*,
  459 F.3d 1 (D.C. Cir. 2006) ................................................................2, 3, 4, 5, 6, 7, 9, 11, 12

*Forrester v. White*, 484 U.S. 219 (1988) ..........................................................................9, 10

*Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*,
  469 F.3d 328 (3rd Cir. 2006) ....................................................................................10

*Gravel v. United States*, 408 U.S. 606 (1972) ......................................................................8

*Hutchinson v. Proxmire*, 443 U.S. 111 (1979) .....................................................................2

*Kilbourn v. Thompson*, 103 U.S. 168 (1880) .......................................................................7

*U.S. House of Representatives v. U.S. Dep't of Commerce*, 11 F. Supp. 2d 76
  (D.D.C. 1998) .............................................................................................................2

*United States v. Rayburn House Office Building*,
  No. 06-3105, 2007 WL 2275237 (D.C. Cir. Aug. 3, 2007) ..........................12, 13, 15

*Statutes*

2 U.S.C. § 1413 ......................................................................................................................4