UNITED STATES DISTRICT COURT
for the District of Columbia

| | |
|---|---|
| ELIZABETH B. SCOTT, | ) |
| Plaintiff, | ) Civil Action No. 1:06CV01661 |
| | ) (CKK/AK) |
| v. | ) |
| Office of Congressman RODNEY ALEXANDER, | ) |
| Defendant. | ) |

**PLAINTIFF'S LIST OF REDACTED DOCUMENTS
FILED UNDER SEAL**

The pleadings filed in this matter on August 24, 2007 contained the following redactions:

1. Plaintiff's Response to Defendant's Statement of Material Facts Not In Dispute
    (Page 6, portion of paragraph (u))

2. Plaintiff's Opposition to Defendant's Motion for Summary Judgment
    (Page 9, last sentence of first paragraph)

3. Declaration of Elizabeth Scott
    (Page 2, portion of paragraph 9)

4. Plaintiff's Exhibit 3

Copies of the foregoing documents are filed herewith without the redactions.

**RECEIVED**

AUG 2 7 2007

1

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Respectfully submitted,

*/s/ Michael J. Hoare*

Michael J. Hoare [D.C. Bar #206979]
MICHAEL J. HOARE, P.C.
1101 14th Street, N.W., Suite 710
Washington, D.C. 20005
mjh@michaeljhoare.com
(202) 408-7901
(202) 408-7903 (fax)
Attorney for Plaintiff Elizabeth Scott

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27th day of August, 2007, I caused to be served, by email, a copy of the foregoing Plaintiff's List of Redacted Documents Filed Under Seal upon Defendant's counsel:

> Russell F. Gore
> Office of the House Employment Counsel
> 1036 Longworth House Office Building
> Washington, DC 20515-5532
> Russell.gore@mail.house.gov

*/s/ Michael J. Hoare*

two District Representatives, she was subjected to a tangible employment act by Royal Alexander who removed Plaintiff from her position as Scheduler and transferred her to the lesser position of staff assistant with lesser duties and responsibilities (Pltf.'s Declaration, ¶ 15).

(r)  Royal Alexander reportedly pursued one of Plaintiff's female coworkers for dates and told her that there were "too many women in the office." (Pltf's Depo. (Pltf.'s Exh. 3) at 207/23-24).

(s)  Plaintiff was present with the female coworker when Royal Alexander said that she too had "very sexy legs." (Id. at 285/5-7).

(t)  Plaintiff was uncomfortable also with the environment because when she reported to Congressman Alexander's Press Secretary, Adam Terry, that one of Defendant's married colleagues, a Member of the House of Representatives, had approached her for a date (id. at 204/21-206/12), Mr. Terry, after conferring with Congressman Rodney Alexander (id. at 205/6-10), conveyed to Plaintiff the Congressman's uncertainty about what could be done (id. at 205/13-18) and conveyed Congressman Alexander's belief that it was not "anything that needed addressing" (id. at 247/11-13).

(u)  Plaintiff was uncomfortable too with information she had been told by one of the District Representatives (among others) about an affair Congressman Alexander had with a then incumbent female staffer (id. at 248/4-250/3).

9.  Plaintiff testified that the alleged conduct identified at paragraph 8(a)-8(e) of this Statement of Material Facts Not in Dispute is the full extend of the alleged conduct Plaintiff claims constituted sexual harassment. Pltf.'s Dep. At 158:25; 159:1-9; *see also* Pltf.'s Dep at 153-159; 285-288.

**Plaintiff's Response:**

Disputed.

Plaintiff incorporates herein by reference as though fully set out her response to the Defendant's Statement of Material Facts No. 8.

10.  On Friday, May 12, 2006, Royal Alexander informed Plaintiff that she was being

6

       two District Representatives, she was subjected to a tangible employment act by Royal Alexander who removed Plaintiff from her position as Scheduler and transferred her to the lesser position of staff assistant with lesser duties and responsibilities (Pltf.'s Declaration, ¶ 15).

(r)    Royal Alexander reportedly pursued one of Plaintiff's female coworkers for dates and told her that there were "too many women in the office." (Pltf's Depo. (Pltf.'s Exh. 3) at 207/23-24).

(s)    Plaintiff was present with the female coworker when Royal Alexander said that she too had "very sexy legs." (Id. at 285/5-7).

(t)    Plaintiff was uncomfortable also with the environment because when she reported to Congressman Alexander's Press Secretary, Adam Terry, that one of Defendant's married colleagues, a Member of the House of Representatives, had approached her for a date (id. at 204/21-206/12), Mr. Terry, after conferring with Congressman Rodney Alexander (id. at 205/6-10), conveyed to Plaintiff the Congressman's uncertainty about what could be done (id. at 205/13-18) and conveyed Congressman Alexander's belief that it was not "anything that needed addressing" (id. at 247/11-13).

(u)    Plaintiff was uncomfortable too with information she had been told by one of the District Representatives (among others) about ████████████████████████ ████████████████████████████████████████.

9.    Plaintiff testified that the alleged conduct identified at paragraph 8(a)-8(e) of this Statement of Material Facts Not in Dispute is the full extend of the alleged conduct Plaintiff claims constituted sexual harassment. Pltf.'s Dep. At 158:25; 159:1-9; *see also* Pltf.'s Dep at 153-159; 285-288.

**Plaintiff's Response:**

Disputed.

Plaintiff incorporates herein by reference as though fully set out her response to the Defendant's Statement of Material Facts No. 8.

10.    On Friday, May 12, 2006, Royal Alexander informed Plaintiff that she was being

6

Alexander had been removed from the office for a period of time to separate him from one of Plaintiff's female coworkers with whom it was believed he had a sexual relationship (id. at 207/11-18). Thus, Plaintiff understood that in all likelihood, Congressman Alexander knew of Royal Alexander's sex based behavior in his office (Pltf's Declaration, ¶ 8). Plaintiff had complained to Congressman Alexander's Press Secretary, Adam Terry, that one of Congressman Alexander's colleagues in the House of Representatives had asked her for a date, which Plaintiff considered inappropriate as he was married (SMF No. 8, Pltf's Response, ¶ (t)). She requested that Mr. Terry convey her concern to the Congressman. Mr. Terry returned to Plaintiff to advise that Congressman Alexander did not believe the situation needed addressing (id. at 247/11-13). Plaintiff was concerned also that the Congressman was known to have had a relationship with a female on his staff (SMF No.8, Pltf's Response, ¶ (u)).

When Plaintiff complained to Congressman Alexander's female District Representatives regarding Royal Alexander's behavior, the District Representatives agreed Mr. Alexander's conduct was inappropriate (SMF No. 8, Pltf's Response,¶ (o)), but one ultimately counseled against bringing the matter to Congressman Alexander's attention because he had a very busy schedule (id. at 256/14-257/9).

Defendant relies primarily upon Akonji v. Unity Healthcare, Inc. No. Civ. A. 05-2102, 2007 WL 1207194 (D.D.C. Apr. 24, 2007) and Carter v. Greenspan, 304 F. Supp. 2d 13, 25 (D.D.C. 2004) to illustrate what is not severe misconduct. In Akonji there were "five discreet acts over a two-year period as well as infrequent inappropriate comments and staring." In Carter, the female harasser was alleged to have subjected the male Plaintiff to three incidents; caressed his knee, placed her breast on his arm and her fingers on his buttocks. Plaintiff's experience are

9

Alexander had been removed from the office for a period of time to separate him from one of Plaintiff's female coworkers with whom it was believed he had a sexual relationship (id. at 207/11-18). Thus, Plaintiff understood that in all likelihood, Congressman Alexander knew of Royal Alexander's sex based behavior in his office (Pltf's Declaration, ¶ 8). Plaintiff had complained to Congressman Alexander's Press Secretary, Adam Terry, that one of Congressman Alexander's colleagues in the House of Representatives had asked her for a date, which Plaintiff considered inappropriate as he was married (SMF No. 8, Pltf's Response, ¶ (t)). She requested that Mr. Terry convey her concern to the Congressman. Mr. Terry returned to Plaintiff to advise that Congressman Alexander did not believe the situation needed addressing (id. at 247/11-13).

████████████████████████████████████████████
████████████████████

When Plaintiff complained to Congressman Alexander's female District Representatives regarding Royal Alexander's behavior, the District Representatives agreed Mr. Alexander's conduct was inappropriate (SMF No. 8, Pltf's Response, ¶ (o)), but one ultimately counseled against bringing the matter to Congressman Alexander's attention because he had a very busy schedule (id. at 256/14-257/9).

Defendant relies primarily upon Akonji v. Unity Healthcare, Inc. No. Civ. A. 05-2102, 2007 WL 1207194 (D.D.C. Apr. 24, 2007) and Carter v. Greenspan, 304 F. Supp. 2d 13, 25 (D.D.C. 2004) to illustrate what is not severe misconduct. In Akonji there were "five discreet acts over a two-year period as well as infrequent inappropriate comments and staring." In Carter, the female harasser was alleged to have subjected the male Plaintiff to three incidents; caressed his knee, placed her breast on his arm and her fingers on his buttocks. Plaintiff's experience are

9

Tommie Seaton and Danielle Savoy. I reasonably expect that were I to review what they have to say regarding Royal Alexander and matters relating to his behavior vis a vis me and other females in the office, that review would likely refresh my memory regarding Mr. Alexander's behavior.

6. I believe it would likely refresh my memory regarding Mr. Royal Alexander's conduct were I to review what he and Congressman Alexander have to say regarding these matters.

7. I understand that the Defendant retained the firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo to interview other persons in Congressman Alexander's office regarding my claims and Royal Alexander's behavior. I reasonably expect that were I to review the results of that investigation, including the particulars of witness interviews, that my memory would likely be refreshed about such matters.

8. The reasons stated in my counsel's correspondence of June 9, 2006 to Congressman Alexander's attorneys accurately stated my feelings at that time and my concerns with returning to that office. I made the decision to avoid Congressman Alexander's office on or about June 8, 2006. At some point I recognized that Congressman Alexander likely had information and knowledge about Royal Alexander's sex based behavior in his office with my coworker, but failed to curtail Royal Alexander's behavior.

9. In addition to the reasons stated in the correspondence of June 9, 2007, I understood that Congressman Alexander had an extramarital relationship with a female on the staff. That made a difference to me as I was complaining about inappropriate sex based behavior.

10. I went through Adam Terry to communicate with Congressman Alexander about another member of the House of Representatives who was married, but asked me out on a date. I was led

2

were I to review what he and Congressman Alexander have to say regarding these matters.

7.   I understand that the Defendant retained the firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo to interview other persons in Congressman Alexander's office regarding my claims and Royal Alexander's behavior. I reasonably expect that were I to review the results of that investigation, including the particulars of witness interviews, that my memory would likely be refreshed about such matters.

8.   The reasons stated in my counsel's correspondence of June 9, 2006 to Congressman Alexander's attorneys accurately stated my feelings at that time and my concerns with returning to that office. I made the decision to avoid Congressman Alexander's office on or about June 8, 2006. At some point I recognized that Congressman Alexander likely had information and knowledge about Royal Alexander's sex based behavior in his office with my coworker, but failed to curtail Royal Alexander's behavior.

9.   In addition to the reasons stated in the correspondence of June 9, 2007, I understood that ███████████████████████████████████████████████████████ That made a difference to me as I was complaining about inappropriate sex based behavior.

10.   I went through Adam Terry to communicate with Congressman Alexander about another member of the House of Representatives who was married, but asked me out on a date. I was led

2