UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELIZABETH SCOTT,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE OF RODNEY ALEXANDER,<br>Member, U.S. House of Representatives,<br><br>    Defendant. | Civil Action No. 06–1661 (CKK) |

**MEMORANDUM OPINION**
(December 3, 2007)

This is an employment case brought pursuant to the Congressional Accountability Act of 1995 by Elizabeth Scott, who was employed in the Office of Congressman Rodney Alexander. Currently before the Court is Defendant's [27] Motion to Dismiss Count III of Plaintiff's Supplemental Complaint ("Complaint") and Defendant's [26] Motion for Summary Judgment as to Counts I and IV of the Complaint. After a thorough review of the Parties' submissions and exhibits attached thereto, applicable case law, statutory authority, and the record as a whole, the Court shall grant Defendant's [27] Motion to Dismiss, and deny without prejudice Defendant's [26] Motion for Summary Judgment, for the reasons set forth below.

**I. BACKGROUND**

*A.    Factual Background*

Plaintiff began working as an intern in the Office of Congressman Rodney Alexander (the "Office") in the fall of 2005.[1] *See* Pl.'s Suppl. Compl. ¶ 5. In November 2005, Plaintiff was

---

[1] Defendant's Motions concern only three of the five Counts asserted in Plaintiff's Complaint. The Court shall provide a factual background only as it relates to the three Counts at

hired into a full-time paid position in the Office as a Scheduler for Congressman Alexander ("the Congressman"). *Id.* ¶ 6. Plaintiff alleges that the Office's Chief of Staff, Royal Alexander (the "Chief of Staff"), "engaged in a course of misconduct with respect to Plaintiff that included, among other things, inappropriate sex-based comments, ogling and touching." *Id.* ¶ 7. According to Plaintiff, Defendant removed her as Scheduler and transferred her to a lesser position "at least in part because she resisted the misconduct referenced above and complained of possible sex discrimination." *Id.* ¶ 10. Thereafter, Plaintiff claims the working conditions became so intolerable that she felt compelled to quit her job at the Office. *Id.* ¶ 11.

      Plaintiff filed a four-count Complaint against the Office on September 27, 2006: Count I, sexual harassment (alleging the Chief of Staff sexually harassed her); Count II, discrimination (alleging male and female employees were paid differently because of their sex); Count III, retaliation (alleging her removal as Scheduler was retaliation against her); and Count IV, constructive discharge (alleging working conditions became so intolerable Plaintiff felt compelled to quit her job). *Id.* ¶¶ 15-24. Plaintiff filed a "supplemental" Complaint on December 28, 2006, adding a fifth Count for post-employment retaliation (alleging the Office retaliated against her when the House of Representatives's Office of the Chief Administrative Officer recouped an overpayment it had inadvertently made to Plaintiff in her final paycheck). *Id.* ¶¶ 25-32. Plaintiff asserted these claims under the Congressional Accountability Act of 1995, 2 U.S.C. §§ 1301-1438 ("CAA"), which confers on certain legislative employees the rights and remedies drawn from various labor and employment statutes, including the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. *See Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 4-5 (D.C. Cir.

---

issue.

2006), *cert. denied* and *appeal dismissed*, – U.S. –, 127 S. Ct. 2018 (2007). The CAA also includes an anti-retaliation provision prohibiting an employing office from retaliating against an employee because the employee opposed or reported a practice made unlawful by the CAA. *Id.*

    B.    *Procedural Background*

The Court held an Initial Scheduling Conference with the Parties on March 16, 2007. Defendant advised the Court that the Supreme Court was expected to hear arguments in *Office of Senator Mark Dayton v. Hanson*, an appeal of the D.C. Circuit's en banc decision discussing the Speech or Debate Clause of the United States Constitution, Art. I § 6 ("Speech or Debate Clause" or "Clause") in the context of CAA claims.[2] *See* Def.'s Mot. to Dismiss and for Summ. J. at 5. Defendant further advised the Court that *Hanson* could have a direct impact on the present case. *Id.* The Court instructed the Parties to notify the Court after the Supreme Court issued its decision in *Hanson*, and if necessary, the Court would order the Parties to brief issues related to the Speech or Debate Clause at that time. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. 1 at 2-3 (March 16, 2007 hearing transcript). In the interim, the Court ordered discovery to begin but declined Defendant's request to set a briefing schedule for Summary Judgment Motions. *Id.* at 2 ("I would ask that you not just simply file motions [prior to the end of discovery]. You need to contact the court . . . what happens is, especially motions for summary judgment, is the other side usually [files a Motion under Fed. R. Civ. P.] 56(f) . . . So I would ask that you not file something before discovery is done.").

The Parties exchanged interrogatories and discovery requests immediately following the

---

[2] The direct appeal was taken pursuant to 2 U.S.C. § 412, part of the CAA. The underlying D.C. Circuit decision, *Fields v. Office of Eddie Bernice Johnson*, was a consolidation of two cases. Because Fields did not appeal the D.C. Circuit decision, the Supreme Court styled the case name after the second of the consolidated cases, *Office of Senator Mark Dayton v. Hanson*.

hearing. *See* Def.'s Mot. to Dismiss and for Summ. J. at 5 n.7. Defendant indicates that the Parties have provided some (but not all) of their interrogatory responses, document productions, and requests for admission. *Id.* On May 21, 2007, Defendant took Plaintiff's deposition, wherein Plaintiff was questioned about the conduct underlying the allegations in her Complaint. Plaintiff apparently had a difficult time answering Defendant's questions, reportedly using the expression "I don't recall at this time" (or some variation thereof) approximately five hundred and three (503) times.[3] *See* [32] Def.'s Reply to Pl.'s Opp'n at 3-6. According to Defendant, Plaintiff's testimony establishes that she cannot prove certain elements of her sexual harassment (Count I) and constructive discharge (Count IV) claims. *See* Def.'s Mot. to Dismiss and for Summ. J. at 28 & n. 26.

The Supreme Court issued its decision in *Hanson* on May 21, 2007, dismissing the appeal for lack of jurisdiction under the CAA and, after construing the appeal as a petition for a writ of certiorari, denying the petition. *See Office of Senator Mark Dayton v. Hanson*, – U.S. –, 127 S. Ct. 2018, 2020 (2007). The Supreme Court's dismissal of the case confirmed that the D.C. Circuit's *Fields* decision set forth the governing principles in this Circuit with respect to the Speech or Debate Clause in the context of CAA claims. Accordingly, Defendant notified the Court that the Congressman "expressly asserts the Speech or Debate Clause privilege to its fullest extent as to bar further litigation" of the present suit. Def.'s [24] Mot. for Status Conf. at 2. The Court ordered the Parties to brief the impact of the Speech or Debate Clause on the instant case. *See* Minute Order dated May 31, 2007. After conferring with this Court, Magistrate Judge Alan Kay, to whom all discovery-related matters had been assigned, ordered a stay of

---

[3] The Court did not independently verify this number during its review of the deposition transcript. Plaintiff did not, in any event, refute this point in its submissions to the Court.

discovery pending a ruling on the Speech or Debate Clause motions. *See* Minute Order dated June 8, 2007.

On July 12, 2007, Defendant filed a Motion to Dismiss Count III of Plaintiff's Complaint based on the Speech or Debate Clause. Defendant also filed a Motion for Summary Judgment on Counts I and IV of the Complaint based on Plaintiff's deposition testimony. Plaintiff filed an Opposition to each Motion on August 24, 2007, and requested relief from the Court pursuant to Fed. R. Civ. P. 56(f), arguing that Plaintiff did not have the opportunity to complete necessary discovery. Defendant filed Replies to each Opposition on September 18, 2007, and claimed for the first time in the Reply that the Speech or Debate Clause applied to Counts I and IV (the claims on which Defendant had brought its Motion for Summary Judgment).

## II.  DISCUSSION

   A.   *Motion to Dismiss Plaintiff's Retaliation Claim (Count III)*

Defendant argues that Plaintiff's retaliation claim must be dismissed because the Speech or Debate Clause of the United States Constitution (1) provides immunity for the Congressman's decision to remove Plaintiff as his Scheduler, or in the alternative, (2) prevents Plaintiff from proving an essential element of her retaliation claim. The Speech or Debate Clause states, in relevant part:

> The Senators and Representatives shall . . . in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

The Supreme Court has explained that the Speech or Debate Clause provides immunity for all conduct by a Member of Congress ("Member") that consists of core legislative acts, such

as speaking, debating, voting, and similar activities undertaken in chambers or in committee. *See United States v. Brewster*, 408 U.S. 501, 526 (1972). The Clause also "protects against inquiry into acts that occur in the regular course of the legislative process or into the motivation for those acts." *Id.* at 525. Where the Clause is construed to reach matters occurring in the regular course of the legislative process, such acts "must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972).

In *Fields v. Office of Bernice Johnson*, the D.C. Circuit set forth a two-step framework for determining whether the Speech or Debate Clause requires dismissal of a claim under the CAA. 459 F.3d 1 (D.C. Cir. 2006) (en banc). The first step requires the Court to determine whether the pleadings expressly predicate liability on a legislative act. The Speech or Debate Clause "operates as a jurisdictional bar when 'the actions upon which [a plaintiff seeks] to predicate liability [are] 'legislative acts.'" *Fields*, 459 F.3d at 13 (quoting *Doe v. McMillan*, 412 U.S.306, 318 (1973)).

Even if a challenged decision under the CAA is not itself considered a legislative act pursuant to the first step of the *Fields* analysis, "inquiry into the motivation for [that decision] may require inquiry into legislative acts." *Id.* at 14. Accordingly, under the second step of the *Fields* analysis, a court must consider whether the plaintiff's claim should be dismissed under the Clause's "evidentiary privilege," which prevents a Member from having to answer questions "in a deposition, on the witness stand, and so forth . . . regarding legislative activities." *Id.* (quoting *Gravel v. United States*, 408 U.S. 606, 616 (1972)). In making this determination, the Court

should review an affidavit submitted by "an individual eligible to invoke the Speech or Debate Clause recounting facts sufficient to show that the challenged personnel decision was taken because of the plaintiff's performance of conduct protected by the Speech or Debate Clause." *Id.* at 16. If the claim "does not inquire into legislative motives or question conduct part of or integral to the legislative process, or if the district court determines that the asserted activity is not in fact part of or integral to the legislative process, then the case can go forward." *Id.* If the court does find that a claim inquires into legislative motives or conduct integral to the legislative process, the Court must apply the evidentiary privilege of the Clause to bar such inquiry.[4] *Id.* at 16-17.

> 1. Whether Plaintiff can establish a prima facie claim of retaliation without predicating liability on a legislative act

The first step of the *Fields* framework requires the Court to determine whether Plaintiff's retaliation claim predicates liability on a legislative act. Plaintiff claims she "was demoted from her position as Scheduler in retaliation for her complaints of sexual harassment in the office." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 7. The Court must therefore consider whether Plaintiff's demotion is fairly characterized as a legislative act.

Prior to *Fields*, the D.C. Circuit followed a rule that an Office's personnel decisions were "legislative acts" if the employee's job responsibilities were related to the legislative process. *See Browning v. Clerk, United States House of Representatives*, 789 F.2d 923, 931 (D.C. Cir.

---

[4] As described more fully below, the Circuit Court in *Fields* did not provide a majority opinion discussing the effect of the evidentiary privilege. Judge Randolph's four-judge plurality opinion suggested that the "action most likely must be dismissed," although it did not reach the issue of whether such a case could move forward if the plaintiff seeks to use evidence unrelated to the legislative acts (such as direct evidence of discrimination or evidence that at the time of discharge the Member offered a different reason for the personnel decision). *Fields*, 459 F.3d at 16. The plurality and concurring opinions all agreed that "the question of what precisely the Clause precludes is best resolved on a case-by-case basis." *Id.* at 18 (Tatel, J., concurring).

1986). The D.C. Circuit expressly rejected the *Browning* precedent in *Fields*. 459 F.3d at 11-13. The Circuit Court held that the *Browning* rule was "overinclusive" and that "an employee's duties test is too crude a proxy for protected activity." *Id.* at 11. The Circuit Court identified several personnel decisions that lacked even a tangential nexus to legislative acts, such as the "[f]iring of an aide for falsifying expense reports, or disciplining an assistant for harassing others in the office . . . ." *Id.* In place of the *Browning* rule, the court established the two-step framework described above, and held that the relevant immunity inquiry focused on whether the decision at issue was a core legislative act. *Id.* at 13 (considering whether the actions alleged to form the basis for liability required inquiry into "'how [the Member] spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation'" of the [CAA]) (quoting *United States v. Brewster*, 408 U.S. 501, 526 (1972)).

The Circuit Court applied this analysis to the claims brought by Beverly Fields, the Chief of Staff who brought suit against the Office of Eddie Bernice Johnson. The Court explained that Fields "alleges that the Office of Representative Johnson discriminated against her because of her race and gender and retaliated against her when she objected to discriminatory treatment of her co-worker . . . and when she filed a complaint with the Office of Compliance." *Id.* at 16. The Circuit Court held that these allegations did not seek "to predicate liability on protected conduct." *Id.* Accordingly, the Circuit Court held that the Speech or Debate Clause did not provide immunity for Field's claims.

The same analysis applies in the instant case. Plaintiff has brought a claim for retaliation under the CAA – one of the claims asserted by Fields. Plaintiff alleges that she was demoted from her Scheduler position in retaliation for her complaints about the Office's Chief of Staff. That claim in no way requires inquiry into "how the [Congressman] spoke, how he debated, how

he voted, or anything he did in the chamber of in committee" to establish a violation of the CAA. *See Fields*, 459 F.3d at 13 (quoting *Brewster*, 308 U.S. at 526).

Defendant argues that the *Fields* decision left open the possibility that some personnel decisions could be considered legislative acts. *See* Def.'s Mot. to Dismiss and for Summ. J. at 11; *Fields*, 459 F.3d at 10 (rejecting the holding in *Browning* and stating that "[w]e agree that *some* personnel decisions would not qualify") (emphasis added). The Court agrees with Defendant that *Fields* did not foreclose the possibility that a personnel decision *could* constitute a legislative act.[5] If this were not the case, the Circuit Court's listing of specific examples of personnel decisions that are not legislative acts would be meaningless (as all personnel decisions would be treated similarly), 459 F.3d at 11, and the Court's choice of words ("some personnel decisions would not qualify" as legislative acts), *Id.* at 10, would be directly contradicted. Nevertheless, just as in *Fields*, Plaintiff's retaliation claim predicates liability on conduct that does not constitute core legislative activities. Even if a personnel decision could constitute a legislative act in some instances, the Court does not find on this record that Plaintiff's demotion is such an instance.[6]

---

[5] The Court notes that the *Fields* decision did not provide any examples of personnel decisions that a court could properly characterize as a legislative act. Perhaps one such example is provided in *Bastien v. Office of Senator Ben Nighthorse Campbell*, where the Tenth Circuit implies that a committee resolution directing a discriminatory action against an employee may be considered a legislative act. 390 F.3d 1301, 1315 (10th Cir. 2004).

[6] Defendant also argues that *Browning* merely removed the presumption that a personnel decision was a legislative act depending on an employee's job responsibilities, but it did not remove the employee's responsibilities as a consideration in the analysis. *See* [31] Def.'s Reply to Pl.'s Opp'n at 5. Even assuming *arguendo* that this were true, the plaintiff in *Fields* was the Chief of Staff of Representative Johnson's office, and the parties agreed that the plaintiff was "deeply involved in a wide array of Representative Johnson's legislative work." *Fields*, 459 F.3d at 5. If Field's job responsibilities were considered by the Circuit Court but deemed insufficient to implicate the Speech or Debate Clause, so too must Plaintiff's Scheduling responsibilities in the instant case.

2. <u>Whether Plaintiff can prove her claim of retaliation without inquiring into legislative acts or the motivation for performance of legislative acts</u>

Step two of the *Fields* framework requires the Court to consider whether proof of Plaintiff's retaliation claim may require "inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *Brewster*, 408 U.S. at 525. *See also Fields*, 459 F.3d at 14 ("the fact that Fields and Hanson are able to plead prima facie cases under the [CAA] without violating the Speech or Debate Clause does not mean the Speech or Debate Clause in no way hinders their suits."). If such inquiry is required, the Speech or Debate Clause provides an evidentiary privilege that "may preclude some relevant evidence in suits under the [CAA]." *Fields*, 459 F.3d at 14. The D.C. Circuit explained the context in which the evidentiary privilege could arise in a discrimination claim brought under the CAA:

> Liability for discriminatory personnel decisions rests not on the fact that action was taken ("you can't *fire* me"), nor on the duties of the employee against whom action was taken ("you can't fire the chief of staff"), but on the reason that action was taken ("you can't fire me *for that reason*). But what happens when the action was motivated by the employee's participation in the legislative process?
>
> * * *
>
> Suppose a plaintiff sues a Member's personal office claiming her discharge violated the [CAA]. Suppose further that she is able to make out a prima facie case of discrimination of one form or another. If the employing office produces evidence – by affidavit, for example – that the personnel decision was made because of the plaintiff's poor performance of conduct that is an integral part of 'the due functioning of the [legislative] process,' then for the plaintiff to carry her burden of persuasion, she must 'demonstrate that the proffered reason was not the true reason for the employment decision.' In many cases, the plaintiff would be unable to do so without 'draw[ing] into question' the legislative activities and the motivations for those activities asserted by the affiant – matters into which the Speech or Debate Clause prohibit inquiry.

459 F.3d at 15-16 (citations omitted).

Plaintiff's retaliation claim operates in the same way as the discrimination claim described by the Circuit Court in *Fields*. To establish a prima facie case of retaliation, Plaintiff must show that she engaged in protected activity, that her employer took an adverse action, and that there is a causal nexus between the protected activity and the adverse action. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). Defendant must then "articulate some legitimate, non-retaliatory reason for the adverse action." *Id.* at 529. "Once the defendant proffers the requisite explanation, the plaintiff must 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for retaliation.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Plaintiff claims that "she was demoted from her position as Scheduler in retaliation for her complaints of sexual harassment in the office." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 7. The Congressman claims, by affidavit, that Plaintiff "was interfering with [his] ability to attend committee and subcommittee meetings in a timely manner" based on errors she had made in the Congressman's schedule in April and early May 2006.[7] Def.'s Mot. to Dismiss and for Summ. J. Ex. A ¶¶ 9, 12. Specifically, the Congressman asserts that the Scheduler in his Office must not only "administratively note [his] schedule on a calendar," but also "arrange [his] schedule, speak with other offices in coordinating [his] schedule, and exercise independent judgment regarding [his] attendance at often-conflicting meetings and events, including legislative meetings, committee meetings, and votes." *Id.* ¶ 4. In April and early May 2006, the Congressman asserts

---

[7] The Congressman specifically refers to his affidavit as a *Fields* affidavit, and indicates that it is submitted solely for the purpose of asserting the protections of the Speech or Debate Clause.

that he was

> directly impacted by several scheduling errors that [he] attributed to [Plaintiff]. These included my being scheduled to attend committee meetings at the wrong starting times and/or with the wrong location identified, my being scheduled to leave a Committee meeting that was underway to attend another meeting, only to arrive at the location to find no one present, and my being scheduled at multiple locations at the same time.

*Id.* ¶ 9.

The Congressman states that the timing of these errors was especially significant because the Appropriations committee and its subcommittees were engaged in the legislative process called a "mark-up," where the committee and subcommittees debate, revise, and vote on the appropriations bills to fund the federal government for the next fiscal year. *Id.* ¶ 8 ("Mark-up is often extremely time-sensitive; votes occur frequently and often occur relatively unexpectedly and quickly."). The Congressman states that he was worried that Plaintiff, during the mark-up period, "would make similar errors going forward and I might miss important votes and fail to ensure that key provisions of the appropriations legislation, such as earmarks, were maintained. My concerns about [Plaintiff's] performance were inextricably intertwined with my concerns about their effect on my ability to perform my legislative duties." *Id.* ¶ 10.

The Supreme Court has held that activities related to House committees may be considered legislative. *See Brewster*, 408 U.S. at 526 (acknowledging legislative acts as occurring "in the chamber or in committee"). The activities implicated by the errors allegedly made by Plaintiff – missed committee hearings and votes, or the motivations for missing hearings or votes – appear to be the type of activities that are integral to the legislative process. *See United States v. Helstoski*, 442 U.S. 477, 489 (1979) ("The Clause protects 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for

those acts.' It 'precludes any showing of how [a legislator] acted, voted, or decided.'") (citations omitted). In order for Plaintiff to prevail on her claim of retaliation, she will necessarily have to show that the Congressman's explanation for Plaintiff's demotion is pretextual, and refute the Congressman's representations that he failed to attend all or part of one or more committee meetings on account of Plaintiff's errors, and explore the reasons behind why the Congressman failed to attend such meetings. Although Plaintiff argues that her "case would not require impermissibly questioning anything that Defendant may have done during the course of an actual vote or hearing," Opp'n to Pl.'s Mot. to Dismiss at 14, whether the Congressman missed or attended an actual vote or hearing, and the reasons why he may have attended or missed an actual vote or hearing, are inquiries that impermissibly relate to the legislative process. Accordingly, the Court finds that Defendant has asserted, through the Congressman's affidavit, legitimate, non-retaliatory reasons for Plaintiff's demotion that are protected from inquiry by the Speech or Debate Clause.

   3. <u>Whether Plaintiff's retaliation claim should be dismissed because the evidentiary privilege prevents Plaintiff from proving an element of her claim</u>

  The D.C. Circuit did not explain how the evidentiary privilege applied to the claims brought by the plaintiffs in *Fields*, choosing to leave that issue for the district courts to consider. *Fields*, 459 F.3d at 16-17. Judge Randolph, writing for a four-judge plurality, suggested that the evidentiary privilege would, in most cases, result in dismissal of a plaintiff's CAA claim because it would leave the plaintiff unable to rebut the non-discriminatory reasons advanced by the defendant. *Id.* at 16. The plurality expressly found that it "need not decide today whether a case in which the plaintiff uses evidence unrelated to legislative acts – such as direct evidence of discrimination or evidence that at the time of the discharge the Senator offered a different reasons

for the employment action . . . requires more questioning of defendant's legislative motives that the speech or Debate Clause allows." *Id.* at 16-17.  Two of the concurring opinions likewise left open the question of how the evidentiary privilege should be applied to a plaintiff's claims. *See Id.* at 18 (Rogers, J., concurring); *id.* (Tatel, J., concurring).  Accordingly, this Court must determine whether application of the evidentiary privilege should result in dismissal of Plaintiff's retaliation claim.

In the present matter, the Court need not provide a bright-line answer to the question left open by the Circuit Court.  Plaintiff has not argued in her submissions that there exists any evidence contrary and unrelated to the Congressman's stated reasons for Plaintiff's demotion that would not require an inquiry into the legislative acts described above.  Nor has the Plaintiff suggested that additional discovery would reveal such evidence.  Instead, Plaintiff only argues that the "Speech or Debate Clause's narrow confines do not mandate its application to this case, either as a facial challenge or as a matter of evidentiary privilege." Pl.'s Opp'n to Def.'s Mot. to Dismiss at 14.  Because this statement and Plaintiff's supporting arguments provide no assertion that independent evidence related to Plaintiff's demotion exists or that it may be uncovered with further discovery, and because the evidentiary privilege of the Clause prevents Plaintiff from refuting the Congressman's stated reasons for her demotion, the Court shall dismiss Count III of Plaintiff's Complaint.

      B.      *Summary Judgment as to Counts I and IV*

Defendant moved for Summary Judgment on Counts I and IV of Plaintiff's Complaint following Plaintiff's deposition but prior to the close of discovery.  Although Defendant acknowledges that the Parties had not completed discovery, *see* Def.'s Mot. to Dismiss and for Summ. J. at 28 n. 26, Defendant argues that Plaintiff's deposition testimony and her inability to

recall facts underlying the allegations in her Complaint demonstrate that her claims of sexual harassment and constructive discharge (Counts I and IV, respectively) must fail, and that no amount of further discovery would allow Plaintiff to prove the elements of these claims.  *Id.*

Summary judgment "ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'" *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)). Under Federal Rule of Civil Procedure 56(f), a court "may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989); *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1175 (D.C. Cir. 1981).  "[T]he purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Dickens v. Whole Foods Market Group, Inc.*, Civ. No. 01-1054, 2003 WL 21486821, at *2 n.5 (D.D.C. Mar. 18, 2003) (citing *Celotex Corp.*, 477 U.S. at 326, 106 S.Ct. 2548).  The district court has discretion in determining whether it should permit additional discovery before the motion for summary judgment is resolved.  *Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002).

A party seeking the protection of Rule 56(f) "must state by affidavit the reasons why he is unable to present the necessary opposing material." *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington*, 699 F.2d 1274, 1278 n.6 (D.C. Cir. 1983); *but see First Chicago Int'l*, 836 F.2d at 1380 (holding that filing an affidavit is not essential to preserve Rule 56(f) contention as long as the district court was alerted to the need for further discovery).  In this case,

Plaintiff has submitted a Declaration with her Summary Judgment Opposition, and she specifically requests Rule 56(f) relief. *See* Aug. 24, 2007 Aff. of Elizabeth B. Scott (hereinafter "Pl.'s Decl."). The party seeking additional discovery bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the motion. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999). It must also show a reasonable basis to suggest that discovery might reveal triable issues of fact. *Carpenter v. Fed. Nat'l Mortgage Ass'n*, 174 F.3d 231, 237 (D.C. Cir. 1999).

In the instant case, Plaintiff argues that additional discovery "would likely refresh [her] memory regarding [the Chief of Staff's] behavior," and identifies four such areas: (1) a Day Planner that Plaintiff used while in the Office that she has not received in discovery; (2) the statements of four persons with whom Plaintiff discussed the Chief of Staff's conduct; (3) the statements of the Congressman and the Chief of Staff; and (4) the results of an investigation undertaken by Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, a law firm that interviewed persons in the Office regarding Plaintiff's claims and the Chief of Staff's behavior.[8] *See* Pl.'s Decl. ¶¶ 3-7. According to Plaintiff, this additional discovery is necessary to prove her claims. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 3-6. Based on Plaintiff's Declaration and the fact that Plaintiff has had an insufficient amount of time to conduct discovery prior to imposition of the stay in this case, the Court finds that Plaintiff is entitled to discovery pursuant to Fed. R. Civ. P. 56(f).[9]

---

[8] The Court expresses no view in this Opinion as to whether Plaintiff is entitled to this discovery or as to other discovery-related matters. The Court does note, however, that any subjects learned during settlement discussions, *see* [32] Def.'s Reply to Pl.s' Opp'n at 18, would not generally be a proper focus of discovery.

[9] Defendant asks the Court to strike Plaintiff's Declaration and find that the statements included therein are inconsistent with those Plaintiff made at her deposition. *See* [32] Def.'s

The Court shall deny Defendant's Motion for Summary Judgment without prejudice, lift the stay in this case, and allow discovery to resume. Consistent with this Opinion, Plaintiff shall be precluded from seeking discovery or otherwise inquiring about the Congressman's reasons for removing Plaintiff as Scheduler. The proper focus of the remaining discovery for Counts I and IV appears to be the conduct that other individuals may have observed at times relevant to the Complaint, and what Plaintiff may have told others about such conduct.

  C.  *Defendant's Additional Claims on Reply*

One final issue remains. In Defendant's Reply to Plaintiff's Opposition, Defendant for the first time argues that the Speech or Debate Clause should apply to Counts I and IV of Plaintiff's Complaint.[10] *See* [31] Def.'s Reply to Pl.'s Opp'n at 14. Defendant did not make these claims in its original Motions where it had limited its assertion of the Speech or Debate Clause to Plaintiff's retaliation claim (Count III). Defendant's new claims are not properly before the Court and have not been fully briefed by the Parties. It is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief. *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992); *Golden Pacific Bancorp v. Clarke*, 837 F.2d 509, 513 (D.C. Cir. 1988).

Notwithstanding the improper posture of Defendant's new claims, the Circuit Court has held that the Speech or Debate Clause provides a "jurisdictional bar" to suit when a Plaintiff predicates liability on a legislative act. *Fields*, 459 F.3d at 13 (describing the first step of the

---

Reply to Pl.'s Opp'n at 3. Whether Plaintiff has made (or will make) statements that conflict with her deposition testimony is an issue that is more appropriately resolved after discovery has been completed and after the Parties have properly briefed the issue.

 [10] Defendant's argument is that "Plaintiff asserts that the circumstances of her removal as Scheduler are relevant not only to Count III (the retaliation claim), but are relevant to her ability to establish Counts I and IV." [31] Def.'s Reply to Pl.'s Opp'n at 14.

*Fields* framework described above). The Court finds, however, that Plaintiff's sexual harassment claims and constructive discharge claims are not predicated on a legislative act for the same reasons set forth in section II.A.1, *supra*. The Court expressly declines to consider step two of the *Fields* framework (the evidentiary privilege) because the present record is insufficiently developed with respect to whether the Speech or Debate clause implicates Plaintiff's sexual harassment and constructive discharge claims (either in whole or in part).[11] If it appears, following discovery, that these claims implicate the Speech or Debate Clause, Defendant may so argue at that time.

### III.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendant's [27] Motion to Dismiss Count III and DENY WITHOUT PREJUDICE Defendant's [26] Motion for Summary Judgment on Counts I and IV. Plaintiff's retaliation claim (Count III of Plaintiff's Complaint) shall be dismissed. The discovery stay shall be lifted, and Plaintiff shall be precluded from seeking discovery or otherwise inquiring about the Congressman's reasons for removing Plaintiff as Scheduler. The proper focus of the remaining discovery for Counts I and IV appears to be the conduct that other individuals may have observed at times relevant to the Complaint, and what Plaintiff may have told others about such conduct. The Parties shall be prepared to discuss a new discovery schedule at the status hearing scheduled for December 4, 2007, before this Court.

Date:    December 3, 2007

                                           */s/*
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge

---

[11] For example, it is unclear what evidence Plaintiff will ultimately want to use to prove these claims.