IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
ELIZABETH SCOTT                               )
                                              )
Plaintiff,                                    )
                                              )
v.                                            )
                                              )    Civil Action No. 1:06CV01661
OFFICE OF RODNEY ALEXANDER,                   )    (CKK/AK)
U.S. House of Representatives                 )
                                              )
Defendant.                                    )
                                              )
_____      )

## JOINT DISCOVERY PLAN

On December 4, 2007, the Court issued an order requiring the parties to submit a joint

discovery plan that identified "the remaining discovery that needs to be completed, including the

identities of any individuals who are to be deposed, and indicate any discovery issues that need to

be resolved."  The parties identify their respective positions below.

### PLAINTIFF'S POSITION

Pending before the Court are Plaintiff Scott's claims of sexual harassment, sex

discrimination with respect to wages/benefits, constructive discharge and retaliation with respect

to the manipulation of Plaintiff Scott's account at the Congressional Federal Credit Union

Plaintiff timely initiated discovery via Rules 30, 33 and 34 but, because of the discovery

stay, has not taken any depositions nor pursued any motions to compel.

Defendant initially asserted a stay of discovery in correspondence to U.S. District Judge

Colleen Kollar-Kotelly of May 25, 2007, wherein at page 1 Defendant asserted ". . . Defendant

Office of United States Representative Rodney Alexander, hereby notifies the Court that Representative Alexander expressly asserts the Speech or Debate Clause privilege to its fullest extent as a bar to the further litigation of the above-referenced lawsuit." Defendant asserted in that same correspondence at page 2 that ". . . any further discovery in this case is now automatically stayed pending this Court's review of Defendant's motion to dismiss." Relying on the foregoing assertions, Defendant, inter alia, refused to provide to Plaintiff those documents concerning its investigation by the law firm of Mintz Levin regarding Plaintiff's allegations of sexual harassment, which documents Defendant had represented to Magistrate Judge Kay would be available to Plaintiff no later than May 28, 2007. Defendant filed its motion seeking, among other things, "to discuss stay of discovery" on May 31, 2007. That stay was lifted with Judge Kollar-Kotelly's ruling of December 3, 2007. As of this date, Plaintiff has not received any of the documents concerning the Mintz Levin investigation.

A.    **DEPOSITIONS**

    *1.    Sexual Harassment*

Without access to the Mintz Levin documents (and a possible Mintz Levin witness) Plaintiff is unable to specify which depositions will be required in connection with her claim of sexual harassment.

Plaintiff anticipates the use of Rule 30(b)(6) depositions as a possible alternative to taking multiple depositions pursuant to Rule 30(a)(1). It may be possible, for example, after a review of the Mintz Levin investigative documents and a 30(b)(6) deposition of Mintz Levin and/or Defendant, certain out-of-town depositions can be eliminated or abbreviated as they relate to Plaintiff's claims of sexual harassment.

Based on Plaintiff's understanding, the following depositions may be required:

| | |
|---|---|
| Randall Robertson | Mintz Levin Investigator |
| Linda Blount | District Director, Monroe Office of Rodney Alexander |
| Tommie Seaton | District Director, Alexandria Office of Rodney Alexander |
| Danielle Savoy | Former Staff Assistant/Scheduler, Office of Rodney Alexander |
| Nancy Alexander | Spouse of Congressman Rodney Alexander |
| Rodney Alexander | Congressman |

2.    *Sex Discrimination with respect to wages/benefits*

Plaintiff anticipates the use of a Rule 30(b)(6) deposition to identify facts/documents

relevant to this claim.

*Constructive Discharge*

Plaintiff anticipates the use of a Rule 30(b)(6) deposition and a deposition of Rodney

Alexander and possible others to identify facts/documents relevant to this claim.

Retaliation/Congressional Federal Credit Union.

Plaintiff anticipate the use of a Rule 30(b)(6) deposition to determine the circumstances

of the manipulation of Plaintiff's bank account.  Depending on what happens at the 30(b)(6)

depositions, Plaintiff may be required to conduct Rules 30(a)(1) depositions of the following

individuals:

| | |
|---|---|
| Barbara Burkhalter | Associate Administrator, Office of Finance and Procurement, Office of Chief Administrator and Officer, U.S. House of Representatives |
| Teddy Hathaway | House Finance Officer and Bookkeeper for Defendant Rodney Alexander |
| Rose Miller | House Finance Office |

Christopher Bottomly          Congressional Federal Credit Union

Peter Rydel-Johnston          Congressional Federal Credit Union Member Service
                              Representative

## B.    DISCOVERY - RULES 33, 34 AND 36

Plaintiff anticipates Rule 36 will be used to establish facts as and authority of documents

relevant to her claims.

Plaintiff reserves her option to submit additional Rule 33 and 34 discovery requests as

appropriate within the discovery period.

## C.    DISCOVERY ISSUES

### 1.    *The Mintz Levin documents*

Plaintiff requested these documents in March 2007.  On May 3, 2007, Defendant objected

to producing those documents and represented that Defendant's counsel was "assessing the

application of . . . applicable privileges."  Defendant promised to "complete its assessment of

these privilege issues . . . within the next few weeks."  It did not do so.  Thereafter, Defendant

represented that it would provide the information and documents no later than May 28, 2007.

Plaintiff has not received any information or documents concerning this important matter.

These documents should be made available forthwith.  Any documents withheld should be

identified in a privilege log.

### 2.    *Day Planner*

Plaintiff believes she made personal notes in this calendar but cannot remember the

specifics of whatever personal notes she may have entered.  She left the Day Planner at her desk.

Defendant has refused to provide Plaintiff access to the item.

At the December 4, 2007 hearing before Judge Kollar-Kotelly, the Court suggested that

Defendant redact the activities Defendant claimed privileged and allow Plaintiff to review the remainder for whatever value it may have.  Transcript, p. 22-23.

     *3.*    *Documents concerning the Congressional Federal Credit Union claim*

In May 2007, Defendant refused to produce any documents concerning the allegations in Plaintiff's Supplemental Complaint to the effect that Defendant retaliated against Plaintiff when it caused a "hold" to be placed on Plaintiff's account and thereafter, without authorization, withdrew Plaintiff's monies from that account.  Whatever documents Defendant have concerning Plaintiff's account are long overdue and should be produced forthwith.

## DEFENDANT'S POSITION

1.    <u>Remaining discovery.</u>  Defendant anticipates that it will need little additional discovery.  At present, Defendant anticipates issuing no additional written discovery, taking four short depositions (as discussed below), and seeking to compel Plaintiff's production of responses to three written discovery requests which Plaintiff has heretofore not answered (as discussed below).  Defendant reserves the right to seek additional discovery during the remaining discovery period as it deems developments necessitate.

2.    <u>Identities of Individuals to Be Deposed</u>: Defendant anticipates deposing Plaintiff's current employer, Plaintiff's two sisters (who allegedly overheard a comment that Plaintiff contends is inappropriate), and possibly a 30(b)(6) witness from Loyola University in New Orleans regarding Plaintiff's work towards and receipt of an MBA.  Defendant presently anticipates that the deposition of Plaintiff's employer will last between one and three hours, that the depositions of Plaintiff's sisters will last approximately one hour each, and that the 30(b)(6) deposition will last between one and two hours.  Defendant also reserves the right to examine

witnesses Plaintiff deposes.[1]

      3.    <u>Discovery Issues to be Resolved: Defendant's Position.</u>

      A.    <u>Compelling Responses to Plaintiff's Outstanding Written Discovery</u>:  Defendant long ago requested, but still has not received, the following written discovery from Plaintiff.

      (1)    Plaintiff has failed to complete supplementation of her response to Interrogatory No. 13 (seeking information regarding job search efforts) as directed by Judge Kay during a May 16, 2007 teleconference with counsel.

      (2)    Plaintiff has failed to provide her educational transcripts, in response to Interrogatory No. 15 and as directed by Judge Kay during a May 16, 2007 teleconference with counsel.

      (3)    Plaintiff has failed to provide any documentation regarding the alleged bounced check, insufficient fund fees, other fees, or other damages she claims to have experienced as a result of the conduct alleged at count V, despite having been directed to do so during the May 16, 2007 teleconference with Judge Kay.[2]

      B.    <u>Order Regarding Scope of Questioning at Depositions</u>.

      Prior to the stay of discovery in May, Plaintiff's counsel indicated that there were certain

---

    [1]    Plaintiff asserts, supra, that "[w]ithout access to the Mintz Levin documents (and a possible Mintz Levin witness) Plaintiff is unable to specify which depositions will be required in connection with her claim of sexual harassment."  Defendant notes that in her August 24, 2007 Rule 56(f) affidavit – upon which the Court granted Plaintiff's request for additional discovery as to the sexual harassment claim – Plaintiff professed no such inability.  See, e.g., Declaration at & 5.

    [2]    These are the written discovery issues Defendant presently anticipates need resolution.  Other issues exist but, at this time, Defendant does not believe the benefit of receiving the information justifies the effort and resources required to pursue them.  Depending on discovery developments (e.g., new facts Plaintiff suddenly recalls), Defendant reserves the right to pursue these other issues.

areas of questioning he intended to pursue at depositions with respect to Counts I and IV. The District Court made clear, however, in its December 3, 2007 Memorandum Opinion and on the record at the December 4, 2007 Status Conference, that its denial of summary judgment as to Counts I and IV was so that Plaintiff could explore those specific areas which she testified to in her Rule 56(f) declaration. Therefore, future discovery as to Counts I and IV is narrowly circumscribed. *See* copy of transcript of December 4 Status Conference (attached hereto as Exhibit A) at 5-8. The Court suggested, and Defendant requests, that counsel discuss these areas with the Court at the January 31 conference. Exhibit A at 10.

###### C.    Discovery Plaintiff Seeks

As for the four areas of discovery Plaintiff identified in her Rule 56(f) affidavit, two of them – depositions Plaintiff contends she needs -- will be resolved when Plaintiff takes those depositions. As to the Day Planner, at the December 4 status conference, the Court directed Plaintiff's counsel to provide Defendant's counsel with further information regarding the Day Planner. See Exhibit A at 22. Plaintiff's counsel has not done so. Accordingly, and to prepare this discovery plan, Defendant's counsel requested that information again in an email to Plaintiff's counsel two weeks ago; however, Plaintiff's counsel did not respond to that email until yesterday stating: "[w]ithout access to the day planner, Ms. Scott is unable to identify any specifics." Defendant anticipates that the final area – the Mintz Levin documents – will be resolved at or before the January 31 conference.[3]

---

[3]    Plaintiff asserts, supra, that in May 2007, Defendant refused to produce documents related to the alleged "hold." This is incorrect. First, Plaintiff has not issued a document request for such documents. Second, Defendant nonetheless did produce such documents on May 3, 2007 in response to Plaintiff's generic request for documents related to her claims. See Defendant's response to Request No. 1 at page 8, identifying DEF01167-DEF01247 and describing those documents as "documents received from and sent to the Office of Finance and Procurement ('OFP') regarding Plaintiff's pay in the summer of 2006 and related subsequent

Respectfully submitted,                          Respectfully submitted,


By_____                       By_____
Michael J. Hoare, D.C. Bar #206979               Russell H. Gore, D.C. Bar # 449231
MICHAEL J. HOARE, P.C.                           Gloria J. Lett, D.C. Bar # 293365
1101 14th Street, N.W.                            Kimberly Carey Williams, VSB # 41325
Washington, D.C. 20005                           U.S. House of Representatives
(202) 408-7901                                   Office of House Employment Counsel
Attorney for Plaintiff Elizabeth Scott           1036 Longworth House Office Building
                                                 Washington, D.C.  20515
                                                 (202) 225-7075
                                                 Attorneys for Defendant
                                                 Office of Rep. Rodney Alexander


DATED:  January 23, 2008.

_____

communications").

# EXHIBIT A


COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIZABETH SCOTT,

        Plaintiff,

      vs.

RODNEY ALEXANDER,

        Defendant.

CA No. 06-1661
Washington, DC
December 4, 2007
9:35 a.m.

_____

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:

MICHAEL J. HOARE, ESQUIRE
Michael J. Hoare, P.C.
1101 14th Street, N.W.
Suite 710
Washington, DC  20005
(202) 408-7901

For the Defendant:

RUSSELL HAYES GORE, ESQUIRE
GLORIA LETT, ESQUIRE
U.S. House of Representatives
1036 Longworth House
    Office Building
Washington, DC  20515
(202) 225-7075

Court Reporter:

Lisa M. Hand, RPR
Official Court Reporter
U.S. Courthouse, Room 6505
333 Constitution Avenue, NW
Washington, DC  20001
(202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                    P R O C E E D I N G S
 2          THE COURT:  Good morning, everyone.
 3          MR. GORE:  Good morning, Your Honor.
 4          MR. HOARE:  Good morning.
 5          COURTROOM DEPUTY:  Civil case 06-1661, Elizabeth
 6   Scott versus Rodney Alexander.  Counsel, would you please come
 7   forward and identify yourself for the record.
 8          MR. HOARE:  Good morning, Your Honor, I'm Michael
 9   Hoare representing Ms. Scott.
10          THE COURT:  Good morning.
11          MR. GORE:  Good morning, Your Honor, I am Russell
12   Gore along with my colleague, Gloria Lett.
13          MS. LETT:  Good morning, Judge.
14          THE COURT:  Good morning.
15          MR. GORE:  Representing the Office of Congressman
16   Rodney Alexander, and seated at counsel table is Adam Terry
17   who is Chief of Staff for Congressman Alexander.
18          THE COURT:  Okay.  All right.  I've ruled on the
19   Speech or Debate Clause.  I dismissed Count 3.  Denied without
20   prejudice Counts 1 and 4.  And I've lifted the stay of
21   discovery, and I set out certain parameters as to Count 1 and
22   4, they are general ones, but in terms of the claims and
23   talking to people.
24          So, what remains of discovery?  What date will we
25   set out and are there going to be expert -- I entered the
```

1    order March 16th, it was to end at that point on

2    September 14th.  I entered the stay -- or I guess it was

3    Magistrate Judge Kay that did -- on June 8th, so there were

4    about three months left out of the six months, is that about

5    right of what need?

6                MR. HOARE:  June 8th and I think discovery would

7    have closed on September 14th.

8                THE COURT:  Right.  So, how much extra time do you

9    need for discovery, and do you know generally what it is?

10               MR. HOARE:  What we were able to do --

11               THE COURT:  You need to talk into the microphone so

12   we make sure we get a record.

13               MR. HOARE:  Excuse me.  Thank you.  As of June 8th

14   when discovery was closed last time, we had spent considerable

15   effort in arranging a discovery schedule because, as we talked

16   even this morning, there are four or five depositions that

17   have to be taken in Louisiana, and these people live in

18   different places within Louisiana, and it's going to require

19   more than four or five days to depose those people.  And

20   getting their schedules in sync with the lawyers' schedules

21   was a task last time, I anticipate it's going to be a task

22   this time, and it took us some time to do that.

23               I say all of that to suggest that we need more than

24   the remaining time in the period of discovery.  We need more

25   than three months to get that done.

1          THE COURT:  Have you all finished in your written

2  discovery, I mean, have they been sent out, have you gotten

3  responses, is that done, is it really just depositions at this

4  point?  I know you got some issues relating to documents --

5          MR. HOARE:  We're going to need a motion --

6          THE COURT:  -- don't talk at the same time, she

7  can't take it down.  Besides the depositions and it looks like

8  there's some documents at issue.  Are there any interrogatory

9  issues that are still out there?

10         MR. HOARE:  There are no interrogatory issues that

11  I'm familiar with presently, there are document requests that

12  have to be pursued with a motion to compel.

13         MR. GORE:  From the defendant's perspective there

14  are some interrogatory issues that were sort of stayed.  As I

15  recall, Judge Kay had directed the plaintiff to supplement

16  interrogatory responses and the supplementation by a certain

17  date was not sufficient.  So, I believe there will be

18  interrogatory issues and documents issues on our end, all of

19  that was stayed, but I'm not at this point aware of whether

20  from the defendant's perspective other than what's --

21  issues -- what's already been propounded being adequate that

22  we will be propounding based on what we now know, any

23  additional written discovery.

24         THE COURT:  Are there likely to be any experts in

25  this case?

1          MR. HOARE:  I don't think so.

2          MR. GORE:  And we don't believe so either, Your

3     Honor.

4          THE COURT:  Okay.  What I would like to suggest is

5     perhaps an end date, and we can either do -- I can have you

6     either do a discovery plan within that, or it may be useful,

7     frankly, to -- as you leave here get on the calendar for

8     Magistrate Judge Kay to discuss discovery because it sounds

9     like you've got some issues, reading between the lines here.

10    And it might be useful to perhaps set up a status with him to

11    figure out how he wants to have -- whether he wants them

12    briefed or whether he wants a discussion orally or how he

13    wants to do it before you move to motions to compel, it may be

14    possible -- I mean, that may be the way to go, but it may be

15    useful if he's got some time coming up to frankly appear in

16    front of him and discuss what appears to be in contention, I

17    mean, the rest you can schedule yourselves.

18         MR. GORE:  Your Honor, if I may address, the

19    proposal sounds good with a couple qualifications that I'd

20    like to address.  Some of the discovery issues in this case,

21    and of course, I don't know exactly what plaintiff's counsel

22    is going to inquire into in depositions, but clearly your

23    order has circumscribed discovery in a number of respects.

24    So, I guess the first -- and also because a number of these

25    depositions will be taking place in Louisiana and possibly

1    Alabama as well.  As we have that issue -- if a party has to

2    move for a protective order or something, then what court is

3    it that's going to address the discovery issues with the issue

4    of your order circumscribing discovery and then the Speech or

5    Debate issues that are there as well.

6              So, I think that it might be helpful, if it would

7    be acceptable to the Court, if we could get also a better

8    sense for what additional depositions the plaintiff seeks to

9    take because that will identify whether some of these issues

10   may ultimately have to come back to you for interpretation of

11   your order on what's allowable in discovery.

12             THE COURT:  Well, I tried to make the point -- I

13   mean, obviously the one count is -- 3 has been dismissed.

14   Some of them weren't even subject to the motion for summary

15   judgment and those I don't think raise any issues.  So, you're

16   really left with 1 and 4.

17             MR. GORE:  Correct.

18             THE COURT:  And it would seem to me any inquiry of

19   people would have to be what it is that they observed or what

20   somebody told them.  Otherwise, that's -- I mean, in terms --

21   and it would be around what she's claiming occurred,

22   allegedly.  Which doesn't get into, it seems to me, what

23   the -- for instance, for the congress person -- the

24   congressman, it would be, you know, if he was either told

25   something by her, if she made complaints to him, I'm just

1    doing this off the top of my head, but complaints, or if he

2    observed anything or if somebody else ever said anything to

3    him about this.  I mean, it seems to me in terms of her

4    hostile work environment that it would be whatever she says

5    occurs and then she's obviously looking for support in the

6    sense of whether other people would have observed, as I

7    understood the plaintiff's pleadings, or what somebody would

8    have either told him, either she or somebody else within the

9    office.  And that seems to me to be the key areas in terms of

10   the actual claims that she's made in both 1 and 4.

11            MR. GORE:  And from the defendant's --

12            THE COURT:  Do you see it going beyond that?  I

13   know there's some tangential issues, but in terms of core

14   issues of her claims, I mean, she's the one making the

15   complaint, so whatever it is that she's saying about them.

16   And then the discovery, as I understood it, was to find out

17   whether she had discussed things with people, what was said

18   about that, what they observed if they were around during

19   these instances that she claims something occurred.

20            So, it's either whatever they were told or whatever

21   they saw, but it's all going to be within -- you know, as I

22   understand it, all of this occurred within the office, am I

23   correct?

24            MR. HOARE:  That's correct.

25            THE COURT:  So it would have been whatever occurred

1   in the office.

2           MR. GORE: Your Honor, that is helpful, I would

3   say, and before we can get anything specific, some of this is

4   subject to protective order, so I would like to avoid getting

5   into specifics at least in this particular forum. But there

6   were a number of issues that have been raised both in

7   discussions with counsel and at other times regarding other

8   areas. I mean, if I'm hearing Your Honor correctly, what

9   you're saying is issues as far as behavior by the former Chief

10  of Staff, Royal Alexander, that she observed or talked to

11  people about.

12          But there were other issues that were, at best,

13  tangential that there was a -- there have been some

14  suggestions that were going to be explored that really are

15  irrelevant and tangential and would be solely for the purpose

16  of harassing, and that's really what we're getting at here.

17          THE COURT: You know, I did not deal with -- that's

18  what I said, the papers hinted at various things, I didn't

19  deal with them specifically because they weren't briefed

20  enough and we hadn't had enough of a discussion about them. I

21  set out what I thought in terms of what -- plaintiff was

22  claiming they needed additional, I guess, discovery related to

23  was around the claims themselves. Now, if there's other

24  evidence that plaintiffs want to pursue that they think is

25  related in some way, that I think may or may not need to be

1    briefed.   That may need to be more specifically set out.

2              That's why I suggested, frankly, either you can set

3    out a discovery plan that would -- and the more I think about

4    it, I may do a combination.  A discovery plan that sets out

5    generally what depositions you want done, et cetera.  The

6    scope of some of this is what I think seems to be at issue,

7    probably less than actually what the depositions are.  I know

8    there's some issues relating to the investigation that I think

9    there were requests about, and I don't know where that is.

10             But certainly if there are issues that come up

11   during the depositions, I'm going to be starting in trials in

12   January so I may not be around, but Magistrate Judge Kay --

13   and they generally do this, they will take care of issues

14   during depositions as long as you notify them if you -- if

15   it's possible that something is going to come up then they

16   will -- if you notify them to make sure that they are aware

17   and they are around as well, they then can answer questions

18   and they can certainly consult with me as well because I will

19   be around, I'm not going away or anything starting in January,

20   but I do have some trials coming up.  So, I will not -- I

21   won't be quite as easy, which is why I have some of these

22   discovery things sent to the magistrate judges because it

23   moves along faster.

24             But I think I would do that to set out who you want

25   to talk to and what you think is left, if nothing else, to

1   identify the issues.  I do think you should probably have some

2   status with the magistrate judge about the issues that you

3   think are out there still in contention to see whether they

4   should be actually -- you know, you need to do a briefing on

5   them in terms of what information, what you've called a

6   tangential.  You know, what's the purpose of this and what

7   does it go to in terms of the claims that are there, or any

8   scope issues which can be -- he may want to discuss them

9   orally and not need something in writing or he may want

10  something in writing.

11          But I think instead of just moving forward with it,

12  filing motions to compel, it may be better to actually have a

13  discussion with him.  So, part of it would be whether he's got

14  some time, we can probably call down and see if you all are

15  available within the next -- I don't know whether before the

16  holiday it's actually realistic either for you or for him or

17  whether you'd be doing it at the beginning of the year.

18          From your perspective would you need, say, the next

19  two weeks roughly or say the rest of the December to figure

20  out what to identify sort of both issues as well as what the

21  scope would be and then set something up with him in January?

22          MR. HOARE:  I think that would be helpful.

23          MR. GORE:  We agree.

24          THE COURT:  Okay.  Because I think if you identify

25  them and then talk to him, he can then set out how he wants

1   them presented to him or to me, if it turns out it's something

2   that he feels needs to -- the Speech and Debate stuff probably

3   should be just sent back to me, but the rest of it I think

4   falls into I think more of evidentiary kind of issues in terms

5   of what this actually goes to.  I did note one thing, and I

6   don't know whether it's accurate or not, one of the pleadings,

7   the defense pleadings, indicated that there were some

8   discussions that appear to be part of settlement, so you do

9   need to take some care about that.  There are some minor rare

10  exceptions for settlement, but frankly it didn't look -- I

11  couldn't quite figure out how they would fit for this.

12          But at any rate, it seems to me the scope of it is

13  such that I think that on the remaining claims you should be

14  able to do it without stepping on the Speech or Debate Clause

15  issues.  So, we should be able to do a limitation, and then

16  the rest it seems to be more evidentiary issues as to whether

17  they actually go to prove anything or how you would use the

18  evidence.

19          So, I would -- I'd like to set sort of an outside

20  date today and then we can move this around, but at least have

21  some goal, and then I'll set a date for you to come back so

22  this doesn't sort of -- this case doesn't -- isn't sort of

23  left hanging in the air.  So, if we had sort of a discovery

24  closure date, assuming you actually start to do anything

25  additional in January, how much time do you need?  I mean,

1   you'll be working for the rest of this month figuring out what

2   you need to do, but in terms of actually doing it, let's say

3   you start in January some time.

4           MR. HOARE:  Well, it depends --

5           THE COURT:  You need to talk into the microphone,

6   I'm sorry.  And what your schedules are, too.

7           MR. HOARE:  Starting in January, without the

8   documents that I think are necessary, such as the

9   investigation that was conducted by the congressman's office

10  before suit was filed, the client's -- the plaintiff's

11  calendar, which the congressman still has and refuses to

12  surrender, those are going to require resolution, and they are

13  going to expedite the depositions.  I don't see that as

14  productive to schedule the depositions before plaintiff

15  resolves those issues.

16          THE COURT:  And that may be what you want to set

17  out.

18          MR. GORE:  If I could just say, Your Honor, those

19  issues will include Speech or Debate issues because both the

20  Mintz Levin documents as well as the calendar do reflect

21  issues that would come within the Speech or Debate Clause.

22          THE COURT:  Let me just ask, in terms of

23  investigation, is there a way of -- I don't know how it was

24  conducted or if there's a report or what there is, are there

25  statements or what does it consist of?

```
 1            MR. GORE:  What we have from -- and I haven't
 2    looked at it in great detail for a few months, but we have
 3    handwritten notes from interviews of individuals and we also
 4    have typed summaries of interviews of individuals, as well as
 5    bills, transmittal documents, things of that nature.  There
 6    are references in those that we now need to assess, obviously,
 7    in light of your ruling as well as in light of subsequent
 8    rulings, the Rayburn case in August by the D.C. Circuit and
 9    the case by Judge Bates earlier last month.  But I believe
10    that there are references in both the -- in those notes to
11    matters that would be covered by the Speech or Debate Clause.
12            THE COURT:  Is it something that can be redacted?
13    I mean, I think there is one way of doing this, is to redact
14    portions that get into the issues that I set out in Count 3.
15    I mean, if you can redact some of those issues so that they
16    get to what she claims is the hostile work environment, based
17    on sexual harassment, and that don't get into other things.
18    There may be a way, I mean, I'd go back and look at it and
19    see.
20            I don't know whether you're making an objection, I
21    couldn't tell from the papers, to handing it over, period; or
22    whether there was material in it that you didn't think was
23    appropriate to be handed over.
24            MR. GORE:  I believe at this point, Your Honor, and
25    we were, because of the way the process was set up, we were
```

1   evaluating both of those.  I believe at this point that we're

2   not objecting to produce the materials per se, what we are,

3   though, there is material in those documents that would be

4   covered by -- some of it may be covered by a privilege and

5   then -- so, I do believe it can be redacted, but Speech or

6   Debate -- and I would just identify, for instance, that it's

7   not simply references to Count -- the issues in Count 3 that

8   we would be contending are covered by Speech or Debate, but

9   for instance, a reference to -- even if it has nothing to do

10  with Count 3, but a reference to the congressman's schedule

11  could very well be covered by Speech or Debate.

12          THE COURT:  I just meant that it should give you

13  sort of a road map to some degree in terms of the discussion

14  in Count 3.  I mean, one way of doing it potentially would be

15  to do almost like the model of a privilege log so that

16  somebody can take a look at it and figure out what it is and

17  whether there can be some debate without actually revealing

18  it.  From your perspective you're claiming it's -- well, if

19  it's a straight privilege then you should do a privilege log,

20  but if you're talking about the Speech or Debate Clause

21  implications then you could do it like a privilege log

22  indicating why, and at least it could be -- there could be

23  some discussion about it.  Mr. Hoare may or may not agree with

24  you based on the discussion, but at least it would move it

25  along in terms of going through and redacting it, if there are

15

1   portions of it --

2           I mean, presumably if there's something in the

3   investigation that says that somebody observed what Ms. Scott

4   claims happened between she and Mr. Alexander, then it seems

5   to me that that is probably not going to -- isn't going to

6   fall into these privileges, there may be other things where it

7   would.

8           MR. GORE:  And I agree.

9           THE COURT:  It's not Congressman Alexander, it's his

10  Chief of Staff.

11          MR. GORE:  No relation.

12          THE COURT:  I understand.  I mean, that's -- if you

13  had something like that, I mean, presumably somebody talked to

14  people as to what they observed as to whether there were

15  comments or whether there were any actions on the part of a

16  staff member.  That, it seems to me, probably would not -- I

17  don't see how that would implicate the Speech and Debate.

18          MR. GORE:  And the way you've described it, that's

19  not what I -- we agree, it would be, for instance, if somebody

20  is talking about issues that would relate to errors that the

21  plaintiff made in scheduling the congressman.

22          THE COURT:  Well, that I've taken care of.

23          MR. GORE:  Those would be the kinds of things

24  that -- there might be a sentence, and again, part of this is

25  from memory, having looked at these some time ago.  But there

16

1  might be a sentence in a long litany of this is what so and so

2  said, that the sentence itself would be redacted but the

3  surrounding material wouldn't, that's the kind of -- I just

4  wanted to make sure that the Court was clear, that's the kind

5  of material we're talking about.

6          THE COURT:  Well, I think the easiest way of doing

7  it is -- if you're not arguing per se that the report

8  shouldn't be provided, then it's really a matter of looking

9  through it and figuring out what if any portion should be

10  redacted.  If you're going to redact it then I would just -- I

11  would do it in the context of a model like a privilege log

12  because then we can -- Mr. Hoare can figure out whether this

13  appears to be or at least make some argument if he wants to as

14  to -- either the Magistrate Judge or I will make a decision as

15  to whether or not this should be redacted or not.

16          I think if you just give either Magistrate Judge

17  Kay or I a redacted version and an unredacted version without

18  sort of an explanation of why you think this should not be

19  provided, it's not going to be helpful.  And that's why I

20  suggest -- we may need that in addition, but it would be

21  suggested.  And a privilege log would be certainly short

22  enough and it may narrow any areas of dispute.

23          MR. GORE:  That's acceptable, Your Honor.

24          THE COURT:  Just as a model.  The calendar -- it's

25  not clear to me, somewhere in the papers it made it sound as

1    if this was a personal calendar.

2              MR. HOARE:  It was a personal calendar.

3              THE COURT:  Is it a calendar that she used to

4    schedule the congressman's schedule?

5              MR. GORE:  Your Honor, there's apparently a -- the

6    calendar that I'm aware of is not a personal calendar and it

7    has the congressman's schedule in it.  So, if Mr. Hoare -- I

8    have to say I disagree because I've looked at this calendar

9    and it's not a personal calendar.  As a scheduler, obviously,

10   there may be some personal material, you know, it might be the

11   congressman's schedule and it might say her dentist

12   appointment or something of that nature, that's just a

13   hypothetical.  But the calendar is not unless -- unless

14   Mr. Hoare is thinking of something that I've never seen, is

15   not a personal calendar.

16             THE COURT:  Well, presumably, maybe Mr. Hoare --

17   does this have on it -- is it a calendar that has only what

18   her appointments are or is it a calendar that has maybe some

19   personal things that she has put on, but that is the

20   congressman's calendar?

21             MR. HOARE:  It's her calendar, she purchased this

22   calendar.

23             THE COURT:  I don't care who purchased it, what I'm

24   asking is what is the content?

25             MR. HOARE:  It contains both.  I haven't seen the

1   document, but she used to log some of her personal stuff on it

2   and some of her office stuff on it.

3           THE COURT:  Is it handwritten, I mean, is it a

4   paper calendar?

5           MR. HOARE:  Yes.

6           THE COURT:  Is this the only calendar that was used

7   to schedule for the congressman?

8           MR. GORE:  No.  No.  The congressman's schedule was

9   kept in a number of ways by the plaintiff.  From what I've

10  been able to tell by -- again, some of this is just reviewing

11  what we have left of her work product that she left with the

12  office when she left on the 12th.  There is this booklet

13  that's a calendar that has the congressman's schedule, this

14  paper booklet, it was also kept on the office's Outlook --

15  Microsoft Outlook server, whatever the calendar is called that

16  was accessible to the office.

17          And there were also -- she would also have, there

18  were various individual -- for instance, if the congressman

19  had a meeting with constituents or the congressman had a

20  hearing or something, she might in some cases put together

21  even another document that was put in a folder regarding that

22  meeting or regarding whatever that might be.  So, the

23  schedule, for lack of a better word, was kept in duplicate

24  form in a number of areas.

25          THE COURT:  Now --

1          MR. GORE:  There's not -- I've not seen anything

2     that would be this personal calendar that Mr. Hoare apparently

3     is referring to.

4          THE COURT:  Mr. Hoare, without looking at it -- and

5     this isn't something I'm going to be able to provide off the

6     top of my head much help here, but it does seem to me that

7     perhaps you can identify what it is that you want from it.  I

8     think there is an issue about handing over his schedule,

9     frankly, in the context of where the issue of her being the

10    scheduler and what happened in Count 3 is no longer at issue,

11    precisely what it is that she needs from it, and maybe you can

12    work something out.  But this one I think you're going to have

13    to talk to the Magistrate Judge and maybe bring the document

14    in so people can figure it out.  But you, also, Mr. Hoare,

15    need to be more specific about what you want from it or what

16    she thinks she is going to, I believe refresh her recollection

17    is what she said in her depositions, I mean, what is it about

18    it that would help?  Did she put notes on it in some way that

19    would indicate, you know, incidents or something, I mean,

20    what, do you know?

21         MR. HOARE:  I can't respond because I haven't seen

22    the document.

23         THE COURT:  But that's not what I'm asking.  She

24    should know what's on it.  In other words, if she's indicating

25    she thinks it's going to refresh her memory, based on what?

1    Did she write down something that would trigger for her that

2    an incident occurred, or you know, is it -- what is it about

3    it that's going to refresh her memory than just getting all of

4    it, which includes the congressman's material.  And I have

5    concerns, frankly, about having dismissed Count 3 where -- in

6    terms of she doesn't need it in the context of, you know,

7    trying to remember whether she did or did not make mistakes.

8    It would be a matter of looking at whether or not she can

9    remember, you know, what she's claiming Royal Alexander did or

10   said to her.  Is there something about this calender that

11   refreshes it?  What is it about it?  And maybe you can work

12   something out so that she can get a portion of it or it can be

13   redacted or something.  Do you know?

14         MR. HOARE:  I don't know.  My sense is that she was

15   looking to review the calendar as a global document, reflected

16   her effort in the office and her communications with other

17   people and her observations regarding other people.

18         THE COURT:  Well, one of the questions would be as

19   to whether there actually are any observations on it, I mean,

20   without knowing what's on it -- and I think -- I think the

21   first thing would be to find out from her what she thinks is

22   on it that is going to be helpful, what she's looking for and

23   for you to take a better look at what it is to see whether

24   personal things can be separated out from things that you

25   would view as really relating to the congressman, particularly

1    where Count 3 is no longer an issue.

2            MR. GORE:  Well, Your Honor, if I could address

3    that.  This is sort of one of issues we've been trying to find

4    out about and I would identify that.  I have looked through

5    this document, obviously we all keep notes in different ways

6    so I can't fully understand -- I don't recall seeing anything

7    of any nature that would suggest relating to any type of

8    alleged harassment.  Obviously, you know, it's Ms. Scott's

9    writing and Ms. Scott's notations, but I didn't see anything

10   of that nature.

11           But I would say -- and this is where we're having a

12   little bit of difficulty.  Ms. Scott was asked ten ways to

13   Sunday at her deposition about what was out there, what

14   else -- and she could not recall, she testified to that under

15   oath.  So, it seems to me she's also now testified under oath

16   that this document would refresh her recollection.  It seems

17   to me she has to do something more than say, well, I just need

18   to see the global document because it might help me before

19   this kind of material is turned over in any format.  I mean,

20   we're not talking about attorneys here speculating, we're

21   talking about a witness who was questioned for seven hours

22   about this and other topics and could not recall virtually

23   anything.  And we're talking about her then two months later

24   submitting a declaration where she says -- all of a sudden now

25   I remember this document, somehow it will refresh my

1   recollection.

2           THE COURT:  Well, I think Mr. Hoare has a point in

3   the sense that we need something from her that's going to

4   indicate what it is that's going to help her figure out

5   because while we're here -- now that Count 3 is off the table,

6   what's left is these claims of the sexual harassment.  So,

7   what is it about the calendar?  I would also look and see

8   whether a version of it can be done that would redact, you

9   know, what's on there of the congressman so that she can look

10  at her own personal notes otherwise and see if there's

11  anything in there that is cryptic that she would understand.

12  I mean, depending on what she says she thinks is on there

13  that's going to be helpful.

14          MR. HOARE:  I'll have to review --

15          THE COURT:  If she's written something down or done

16  something else, or if there's a particular event and she

17  doesn't remember the date, you know, I mean, there are

18  different ways of doing it.  Looking at the deposition,

19  frankly, she didn't indicate something that would make it easy

20  to figure out what it is about the document that is going to

21  help, so I think you need to go back to her and have some

22  discussion about it.

23          This one is a little harder for me unless it's a

24  way of splitting it apart, in terms of letting her get -- you

25  know, if she's got personal notes or personal things that she

1   went to or did that have nothing to do with what the

2   congressman was doing, then it is seems to me you can give

3   them a redacted version and see if that's at all useful, if

4   that's what she's really looking for.

5       MR. HOARE:  I'll find out.

6       THE COURT:  Okay.  All right.  So, we're back to --

7   roughly, how long do you think you need?  I'd like to set a

8   date and a status date, sort of a discovery closure, and if

9   the turns out to be more complicated then, you know, we'll do

10  something different, but I don't want to leave here without

11  having some dates.  So, I would want an outside date and then

12  I'll set a status for after that, assuming all discovery is

13  done by then.

14      MR. GORE:  Your Honor, from the defendant's

15  perspective, we don't believe that there's that much more to

16  do, obviously we filed the motion for summary judgment.  While

17  further issues may come up, depending upon what Mr. Hoare

18  pursues, it would seem to me that we don't need a huge amount

19  of time, but I do know that Mr. Hoare has a number of

20  depositions he wants to take.  So I would really in some ways

21  defer to his suggestion and see what his suggestion is as far

22  as timing.

23      THE COURT:  All right.  Mr. Hoare, what about from

24  your perspective?

25      MR. HOARE:  I may need as much as four months,

1  assuming that the documents that I have asked for are going to

2  be available to me.

3          THE COURT:  Let me suggest then -- why don't I make

4  it -- why don't I make it the end of May.  The discovery

5  closure is May 30th, and that should give you enough time, but

6  by some miracle you finish earlier, it never happens, but if

7  for some reason you do, you can always contact chambers and I

8  can move it up.  Let me set a status date, which I'll do in

9  the first week of June, it will have to be the second week.

10  How about June 13th at 10:30, it's a Friday.

11          MR. GORE:  I know that's fine for me at this point.

12          THE COURT:  Mr. Hoare, anybody else?

13          MR. HOARE:  I expect that's fine.

14          THE COURT:  All right.  And what I would ask is

15  that you do a discovery plan so you -- what you would do is

16  you'd set out what it is that needs to be done, and you may

17  not have actual dates, but you could at least check and see

18  whether the witnesses you want to depose, when they're

19  available so you get some sense of their availability, but

20  identify who they are, what's left of discovery.  And then

21  identify what you view, after talking to each other, this

22  should be a joint one, what you view as issues that need to be

23  resolved, in other words, these contention issues, which is --

24  one is this calendar and the other obviously is the

25  investigation report, and if there's some other things,

1  identify them so that they are out there and the Magistrate

2  Judge will know which ones to deal with.

3           Let me set -- let me call -- are you all available

4  in January?  What I'd like to do while you're here is call

5  down to the Magistrate Judge's chambers and see if we can set

6  a date.

7           MR. HOARE:  Did you say January?

8           THE COURT:  Yes.

9           MR. HOARE:  Sure.

10          MR. GORE:  Yes.

11          THE COURT:  You're not in trials or something.

12  It's 3030.  Dorothy, 3030.

13          MR. GORE:  From our perspective we'd probably want

14  to do it after -- probably the last two weeks of January.

15          THE COURT:  What I'd ask is -- Dorothy, if you

16  would --

17  OFF THE RECORD

18          THE COURT:  Let me see what his schedule is like.

19          MR. GORE:  Your Honor, may I ask, and I don't know

20  that Mr. Hoare will have a problem with this, but I'll mention

21  it now.  I suspect that among the additional issues that will

22  be there for us, sort of a resolution before Judge Kay, will

23  be some issues that we would contend are -- both sides

24  actually might very well contend are covered by the protective

25  order.  Would it be acceptable for us to agree that there

1    could be -- either that could be filed under seal or there

2    could be an addendum that is filed under seal.

3          THE COURT:  Sure.  Or you could do -- you can do a

4    redacted versus an unredacted version if you want, so that the

5    unredacted I would get and it would also be filed under seal,

6    and the redacted one would be on the public record.  It would

7    seem to me that some of these things are not going to need to

8    be under seal, and our Court of Appeal's direction to us is

9    have very limited materials sealed.

10         So, I think it would be best to do a redacted one

11   on the public record, I mean, identify who you are going to

12   depose isn't going to be an issue.  Identifying the issues may

13   be covered under the protective order, and that I don't have

14   any problem, file it under seal, and that will not be on the

15   public record.  But that the unredacted version will come to

16   the Magistrate Judge and me.

17         MR. GORE:  Thank you.

18         COURTROOM DEPUTY:  He can do it any time the week

19   of the 28th, 10:30 in the morning or 3:00 in the afternoon.

20         THE COURT:  Okay.  So, what's good for you?

21         COURTROOM DEPUTY:  10:30 in the morning or 3:00 in

22   the afternoon.

23         MR. HOARE:  Wednesday, did you say?

24         COURTROOM DEPUTY:  Any time that week.

25         THE COURT:  The week of the 28th, the 28th is a

1  Monday.

2          MR. GORE:  We're fairly open, so I would defer to

3  Mr. Hoare.

4          MR. HOARE:  Thursday or Friday of that week.

5          THE COURT:  How about the 31st then.  How about

6  January 31st, and then the question is, do you want it at

7  10:30 or at 3:00?

8          MR. HOARE:  10:30.

9          THE COURT:  Does that work for you?

10          MR. GORE:  That's fine, Your Honor.

11          THE COURT:  All right.  Okay.  So, the only thing I

12  don't have at this point is your joint discovery plan.  Can

13  you get it done, say, by -- we can give a little more time

14  here, say the 11th or even the 18th of January.

15          MR. GORE:  Of January?  The 18th would be our

16  preference.

17          THE COURT:  Okay.  That will give him an

18  opportunity and me to look at it.  In terms of date we'll do

19  an order, but the discovery closure at this point would be

20  May 30th of '08.  You'll have a meeting with Magistrate Judge

21  Kay January 31st at 10:30 to discuss how you're going to go

22  forward with any disputed issues and discovery.  You will have

23  filed by January 18th a joint discovery plan that can be

24  redacted and an unredacted version if it has protected

25  material in it that indicates what needs to be done in

1    discovery, and then identifies any issues that need to be

2    resolved after you talk to each other and try to narrow them.

3    And then you'll be back in front of me on June 13th at 10:30.

4    I think that's it.  Anything else?

5         MR. GORE:  There was one question that I wanted to

6    raise, well, actually two.  I take it that at the June 13th --

7    at that point there will be a discussion about the timeline

8    for us renewing our motion for summary judgment.

9         THE COURT:  Yes.  At that point you will have

10   completed all the discovery and then we can discuss a schedule

11   if they're going to be further dispositive motions, we'll

12   discuss a schedule at that point.  You'll have all of the

13   discovery at that point, so it will also be if there are some

14   issues that impact the Speech or Debate Clause, then they can

15   be carved out and we can see what's left or, you know, if it

16   covers everything, however it works out, or you may have other

17   arguments.

18        MR. GORE:  And then I had one other point that I

19   needed to sort of address to get the Court's opinion on this

20   and Mr. Hoare's.  In reviewing the Court's decision yesterday

21   there was a reference to -- obviously Counts 1 and 4 remain in

22   the case.

23        THE COURT:  Right.

24        MR. GORE:  The defendant had moved in its reply for

25   dismissal on Speech or Debate grounds.  The reason that this

1    is an issue is because we're evaluating whether or not there

2    is any need at this point to appeal this because of the Speech

3    or Debate Clause.  We need to know -- the reason that that was

4    made in the reply was that in the opposition brief the

5    plaintiff asserted that the removal of scheduler was a crucial

6    element of Count 1 and Count 4, and I understand the Court's

7    opinion had a footnote that said, we don't know what she's

8    going to articulate.

9              From our perspective, if the plaintiff is now

10   saying that her removal as scheduler is irrelevant to -- given

11   the Court's ruling to Count 1 and Count 4, then we don't need

12   to pursue any further, at this point, whether to appeal on

13   that issue, but we don't know that, and that's why we raised

14   that issue in our reply.

15             THE COURT:  Well, let me find out from Mr. Hoare

16   and then I'll give an explanation on my end.  Mr. Hoare,

17   what's your view in terms of the question that he has asked as

18   to whether you see the removal as impacting Count 1 or Count

19   4?  Count 1 is the hostile work environment, which I believe

20   I'm right about that.

21             MR. HOARE:  That's correct.

22             THE COURT:  Yeah, okay.  That one is not clear to

23   me how her being moved from the scheduler position and what

24   was occurring around that has anything to do with this, but

25   you know, you didn't complete discovery and it wasn't fully

1    briefed, so frankly, that was part of the issue to not have a

2    continuation of that, but to let the discovery go forward.

3    But do you see in Count 1 something to do with the -- with her

4    position as a scheduler and then being moved --

5            MR. HOARE:  I don't think --

6            THE COURT:  -- in terms of a hostile work

7    environment?

8            MR. HOARE:  I don't think the removal or transfer

9    from one job to the other is essential to the sexual

10   harassment claim.

11           THE COURT:  That's Count 1.

12           MR. HOARE:  Right.

13           THE COURT:  Now, let's talk about Count 4, which I

14   think is the --

15           MR. HOARE:  -- constructive discharge.

16           THE COURT:  Constructive discharge.

17           MR. HOARE:  Yeah, that claim has a lot of aspects

18   to it, there was a lot of things going on at that point.

19           THE COURT:  But the only question he's asked, I

20   mean, looking at the materials, there are different arguments,

21   let's put it that way about that, as to what has been put

22   forward by the plaintiff.  But in terms of the actual issue of

23   her being -- why she was moved, since Count 3 is no longer in

24   there, does that implicate it in some way?

25           MR. HOARE:  That's not essential to her

1    constructive discharge claim.

2          THE COURT:  Does not essential mean that you at

3    this point -- the way I left it is that if for some -- the way

4    I would do this is -- if you view it as not essential, I

5    presume you're not going to pursue it, if for some reason you

6    change your mind then we need to have a discussion about it,

7    let's put it that way, does that work?

8          MR. HOARE:  Yes.

9          THE COURT:  At this point we'll view this as not

10   part of these claims unless he goes back and says otherwise.

11         MR. GORE:  I guess what I would ask, Your Honor, is

12   if something occurs in discovery to suggest that Mr. Hoare

13   intends to refer to or going into any issue involving the

14   removal, would we at that point be able to come back and --

15         THE COURT:  Yeah, I don't have a problem with

16   raising -- you know, if, as you pursue this, something comes

17   up that appears to be involved in the Speech or Debate, to

18   come back, you know, to the Court on it.  My suggestion would

19   be to talk about it to make sure it's actually needed and not

20   something inadvertent.  It seemed to me, based on the limited

21   knowledge I have about what the evidence is on it, that

22   reading the papers -- it seemed to me you could exclude that

23   and proceed on these claims without getting into at all about

24   her being the scheduler, what occurred with the congressman or

25   anything else.

```
 1              But I don't know the case as well as the two of

 2   you, but it seemed to me -- and based on what Mr. Hoare has

 3   said, at least at this point, he agrees with that.  Now, if

 4   you change your mind let us know and we'll have a discussion

 5   about it, but at least going forward it doesn't seem to be

 6   implicated.  And, frankly, part of the reason I -- instead of

 7   having more -- I could have ordered more briefing, I mean, the

 8   option when you get it in the reply is you don't raise new

 9   arguments there, or you basically have people do more

10   briefing.

11              It seemed to me that more briefing would have been

12   required because I certainly couldn't make a decision without

13   it, and I was afraid we'd get back into the issue of the

14   discovery.  So, looking at it without understanding fully his

15   issues, it seemed to me that you could do these two claims,

16   and I touched on it very briefly or maybe too obliquely, you

17   could do these two claims without really stepping and getting

18   into the issue of being the scheduler and what occurred and

19   why, according to the congressman, he moved her.  So, if we

20   can stay out of that, and if you decide you can't, then come

21   back and we'll discuss it.

22              MR. GORE:  Thank you.

23              THE COURT:  I mean, Count 1 was the more obvious

24   one -- I mean Count 3, excuse me, was a more obvious one in

25   terms of clearly what was involved with it.  Count 1 and 4
```

1   were less so.  It seemed to me that there was other conduct

2   that really was at issue.  And as you progress, I mean, if it

3   turns out there is a problem, come back.  And then at the end

4   I would expect you would raise whatever all -- all your

5   arguments, discovery is done, you can raise whatever arguments

6   you want at that point in terms -- that you think legally

7   would dispose of the claims and I'll set the schedule at that

8   point.  Okay.  Anything else?

9             MR. GORE:  No.

10            MR. HOARE:  Not from plaintiff.

11            THE COURT:  Okay.  And if for some reason you

12  resolve the case, do let me know.

13            MR. GORE:  Thank you, Your Honor.

14            THE COURT:  If you resolve it in principle, let me

15  know, because then what I'll do is issue an order dismissing

16  it without prejudice for whatever period of time you need to

17  fully write it up or resolve it, and you don't have to do any

18  more work on the case.  Otherwise, you can't give yourself

19  sort of a stay in the meantime.  All right.  Parties are

20  excused.

21  HEARING CONCLUDED AT 10:20 a.m.

22

23

24

25

1                    C E R T I F I C A T E

2              I, Lisa M. Hand, RPR, certify that the

3    foregoing is a correct transcript from the record of

4    proceedings in the above-titled matter.

5

6

7

8              _____

9              Lisa M. Hand, RPR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25